PANISH SHEA & BOYLE LLP
BRIAN J. PANISH, State Bar No. 116060
   *panish@psblaw.com*
ROBERT S. GLASSMAN, State Bar No. 269816
   *glassman@psblaw.com*
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
Telephone: 310.477.1700
Facsimile: 310.477.1699

**(Pending Admission *Pro Hac Vice*)**
SALTZ, MONGELUZZI, BARRETT & BENDESKY, P.C.
Robert J. Mongeluzzi, PA Bar #36283
   *rmongeluzzi@smbb.com*
Jeffrey P. Goodman, PA Bar #309433
   *jgoodman@smbb.com*
E. Douglas DiSandro, Jr., PA Bar #316834
   *ddisandro@smbb.com*
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Phone:  (215) 496-8282
Fax:  (215) 496-0999

Attorneys for CLAIMANT, SHRUTI
DEOPUJARI, et al.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF TRUTH AQUATICS, INC. and GLEN RICHARD FRITZLER and DANA JEANNE FRITZLER, individually and as Trustees of the FRITZLER FAMILY TRUST DTD 7/27/92 as owners and/or owners *pro hac vice* of the dive vessel *CONCEPTION*, OFFICIAL NUMBER 638133, FOR EXONERATION FROM OR LIMITATION OF LIABILITY | Case No. 2:19-cv-07693 PA (MRWx) **ANSWER OF CLAIMANT, SHRUTI DEOPUJARI, individually and as the Personal Representative of the Estate of SANJEERI DEOPUJARI, deceased, TO LIMITATION PLAINTIFFS' FIRST AMENDED COMPLAINT FOR EXONERATION FROM OR LIMITATION OF LIABILITY, WITH CLAIMS AGAINST LIMITATION PLAINTIFFS** |

Claimant, Shruti Deopujari, individually and as the Personal Representative of

the Estate of Sanjeeri Deopujari, deceased (hereinafter "Claimant"), by and through her

undersigned counsel, hereby appears within the time period specified by this Honorable

1  Court to present her existing and contingent claims and hereby answers the First
2  Amended Complaint of Truth Aquatics, Inc. and Glen Richard Fritzler and Dana Jeanne
3  Fritzler, individually and as Trustees of the Fritzler Family Trust DTD 7/27/92
4  (hereinafter collectively the "Limitation Plaintiffs") as Owners and/or Owners *pro hac*
5  *vice* of the dive vessel *Conception*, official Number 638133, for Exoneration From or
6  Limitation of Liability (hereinafter the "First Amended Complaint") pursuant to Rule
7  F(5) of the Supplemental Rules for Certain Admiralty and Maritime Claims, and in
8  support thereof, alleges upon information and belief as follows in response to each
9  allegation of the petitioning Limitation Plaintiffs:

## **ANSWER**

11      1.      The allegations contained in Paragraph 1 of the First Amended Complaint
12  contain conclusions of law to which no responses are required, and they are therefore
13  denied.

14      2.      The allegations contained in Paragraph 2 of the First Amended Complaint
15  are denied for lack of sufficient information to justify a belief therein.

16      3.      To the extent the allegations contained in Paragraph 3 of the First
17  Amended Complaint contain conclusions of law to which no responses are required,
18  they are denied.   The remaining allegations contained in Paragraph 3 of the First
19  Amended Complaint are denied for lack of sufficient information to justify a belief
20  therein.

21      4.      It is admitted that thirty-three passengers and one crew member died as a
22  result of the fire that broke out on the vessel on September 2, 2019.  The remainder of
23  the allegations contained in Paragraph 4 of the First Amended Complaint are denied for
24  lack of sufficient information to justify a belief therein.

25      5.      Claimant admits that he has not filed any lawsuit or claim against the
26  Limitation Plaintiffs arising out of the fire of September 2, 2019.  The remainder of the
27  allegations contained in Paragraph 5 of the First Amended Complaint are denied for
28  lack of sufficient information to justify a belief therein.

2

6.      The allegations contained in Paragraph 6 of the Complaint are denied for lack of sufficient information to justify a belief therein.

7.      The allegations contained in Paragraph 7 of the First Amended Complaint are denied for lack of sufficient information to justify a belief therein.

8.      The allegations contained in Paragraph 8 of the First Amended Complaint are denied for lack of sufficient information to justify a belief therein.

9.      The allegations contained in Paragraph 9 of the First Amended Complaint are denied for lack of sufficient information to justify a belief therein.

10.     Denied.  It is specifically denied that the *Conception* was seaworthy.  By way of further response, the *Conception* lacked sufficient means of ingress and egress, its captain failed to properly implement required watch policies and procedures at all times on the *Conception*, and the *Conception* failed to have an adequate fire suppression and detection system.  The remainder of the allegations contained in Paragraph 10 of the First Amended Complaint contain conclusions of law to which no responses are required, and they are therefore denied.

11.     It is admitted that the *Conception*'s voyage commenced on August 31, 2019 with thirty-three passengers and six crewmembers.  The remaining allegations contained in Paragraph 11 of the First Amended Complaint contain conclusions of law to which no responses are required, and they are therefore denied.

12.     Denied in part; admitted in part.  The allegations contained in Paragraph 12 of the First Amended Complaint are denied for lack of sufficient information to justify a belief therein.  The allegations contained in Paragraph 12 of the First Amended Complaint also contain conclusions of law to which no responses are required, and they are therefore denied.  It is admitted only that, as a result of the fire onboard the *Conception*, its thirty-three passengers and one crewmember died.

13.     The allegations contained in Paragraph 13 of the First Amended Complaint are denied for lack of sufficient information to justify a belief therein.

14. The allegations contained in Paragraph 14 of the First Amended Complaint are denied for lack of sufficient information to justify a belief therein.

15. Denied. It is specifically denied that the *Conception* was seaworthy. By way of further response, the *Conception* lacked sufficient means of ingress and egress, its captain failed to properly implement required watch policies and procedures at all times on the *Conception*, and the *Conception* failed to have an adequate fire suppression and detection system. The remainder of the allegations contained in Paragraph 15 of the First Amended Complaint contain conclusions of law to which no responses are required, and they are therefore denied.

16. The allegations contained in Paragraph 16 of the First Amended Complaint contain conclusions of law to which no responses are required, and they are therefore denied. It is specifically denied that Limitation Plaintiffs are entitled to exoneration from or limitation of liability for the losses and damages arising out of the *Conception* fire.

17. The allegations contained in Paragraph 17 of the First Amended Complaint are denied for lack of sufficient information to justify a belief therein.

18. The allegations contained in Paragraph 18 of the First Amended Complaint contain conclusions of law to which no responses are required, and they are therefore denied.

19. The allegations contained in Paragraph 19 of the First Amended Complaint are admitted.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

4

ANSWER OF CLAIMANT, SHRUTI DEOPUJARI, individually and as the Personal Representative of the Estate of SANJEERI DEOPUJARI, deceased

1  / / /

2  / / /

3

## CLAIMANT'S AFFIRMATIVE DEFENSES

4

### FIRST DEFENSE

5

6

7  The allegations of the First Amended Complaint fail to state a claim upon which relief may be granted.

8

9

### SECOND DEFENSE

10

11  Claimant reserves the right to challenge the Limitation Plaintiffs' alleged interest in the *Conception* and/or the alleged valuation of the Vessel.

12

13

### THIRD DEFENSE

14

15  The limitation fund is inadequate and the First Amended Complaint should be dismissed because Limitation Plaintiffs have failed to deposit "a sum equal to the amount or value of the owner's interest in the Vessel" or adequate security for the Vessel.

16

17

18

19

### FOURTH DEFENSE

20

21  The limitation fund is inadequate and the First Amended Complaint should be dismissed because Limitation Plaintiffs have failed to deposit adequate security for the Vessel identified in the First Amended Complaint.

22

23  / / /

24  / / /

25

26

### FIFTH DEFENSE

27

28  Limitation Plaintiffs, or certain of them, are not a proper party plaintiff under the

---

5

Case No. 2:19-cv-07693 PA (MRWx)

Shipowner's Limitation of Liability Act and should be dismissed from the action.

## SIXTH DEFENSE

Limitation Plaintiffs are not entitled to Limitation of Liability in the instant case because at all times pertinent herein, the *Conception* was operated in a willful, wanton, and reckless manner or, in the alternative, the conduct and actions which lead to Claimant's injuries and damages took place with the privity and knowledge of the owners, managing owners, owners *pro hac vice*, and/or operators of the *Conception*.

## SEVENTH DEFENSE

Limitation Plaintiffs are not entitled to Limitation of Liability in the instant case because at all relevant times, the *Conception* was known by the owner and/or owner *pro hac vice* to be unseaworthy and that unseaworthiness caused and/or contributed to Claimant's injuries and damages.

## EIGHTH DEFENSE

The incident and resulting damages which are the subject of Limitation Plaintiffs' First Amended Complaint were caused by the fault, negligence, breach of warranty, statutory and regulatory violations of Limitation Plaintiffs, their agents, servants, contractors, and/or employees, all of which was within the privity and knowledge of Limitation Plaintiffs and, therefore, Limitation Plaintiffs' prayer for a decree of exoneration from liability must be denied.

## NINTH DEFENSE

The incident and resulting damages which are the subject of Limitation Plaintiffs' First Amended Complaint were caused by the unseaworthiness of the *Conception* and the negligence of the Vessel's crew and shoreside management, and, therefore, Limitation Plaintiffs' prayer for a decree of exoneration from liability must

be denied.

## TENTH DEFENSE

Limitation Plaintiffs' First Amended Complaint for Exoneration From or Limitation of Liability contains vague and ambiguous statements which are objectionable under Federal Rule of Civil Procedure 12(e), and Claimant seeks more definite statements of the allegations, regardless of the nature, manner and extent of the Answer and Claim herein.

## ELEVENTH DEFENSE

The events culminating in the injuries and damages of Claimant were the result of negligence, fault, or want of due care on the part of Limitation Plaintiffs and/or those for whom Limitation Plaintiffs are responsible, and/or the unseaworthiness of the *Conception*, all of which was within the privity and knowledge of Limitation Plaintiffs, for which the First Amended Complaint for Exoneration From or Limitation of Liability should be denied.

## TWELFTH DEFENSE

The events culminating in the injuries and damages sustained by Claimant were not the result of any negligence, fault, or want of due care on the part of Claimant or Claimant's decedent.

## THIRTEENTH DEFENSE

In filing this Answer and Claim, Claimant specifically reserves all rights to pursue all available claims in federal court.

## FOURTEENTH DEFENSE

Claimant specifically reserves all rights to pursue all available claims and no part

of this Answer and Claim shall be construed to be a waiver of these rights.

## FIFTEENTH DEFENSE

Claimant specifically reserves the right to pursue all available claims in State Court, pursuant to the "Savings to Suitors" clause, 28 U.S.C. § 1333, for resolution of any and all issues beyond a determination of whether admiralty jurisdiction exists and whether limitation is required.

## SIXTEENTH DEFENSE

Claimant presently lacks sufficient knowledge or information to formulate all affirmative defenses that may ultimately prove to be applicable herein and reserve the right to later assert additional affirmative defenses in the event that additional facts become known to them that would justify the assertion of additional defenses.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

ANSWER OF CLAIMANT, SHRUTI DEOPUJARI, individually and as the Personal Representative of the Estate of SANJEERI DEOPUJARI, deceased

## CLAIM ON BEHALF OF SHRUTI DEOPUJARI, individually and as the
## Personal Representative of the Estate of SANJEERI DEOPUJARI, deceased,

## AGAINST LIMITATION PLAINTIFFS

Specifically reserving all rights and defenses asserted herein, Answering Claimant hereby demands a jury trial and make this claim pursuant to Rule F(5) of the Supplemental Rules for Admiralty or Maritime Claims against Truth Aquatics, Inc. and Glen Richard Fritzler and Dana Jeanne Fritzler, individually and as Trustees of the Fritzler Family Trust DTD 7/27/92, as owners, owners *pro hac vice*, operators and alleged owners and operators of the vessel *Conception* (the "Vessel") and in support thereof aver as follows:

1.     Claimant, Shruti Deopujari, is an adult citizen of Virginia.

2.     Claimant, Shruti Deopujari, is the duly appointed Personal Representative of the Estate of Sanjeeri Deopujari, deceased.

3.     Claimant brings this claim for damages arising from the death of Sanjeeri Deopujari, individually and on behalf of decedent's beneficiaries, Satish Deopujari and Sandhya Deopujari, pursuant to California Code of Civil Procedure §§ 377.30 and 377.60.

4.     On or about September 2, 2019, Sanjeeri Deopujari, deceased, was a passenger onboard the Vessel.

5.     At all times material hereto the Limitation Plaintiffs owned, maintained, equipped, controlled, and operated the Vessel.

6.     On Monday, August 31, 2019, the *Conception* departed the Port of Santa Barbara with Sanjeeri Deopujari, along with six crew members and thirty-two other passengers onboard, for a three-day voyage.

/ / /

/ / /

/ / /

9



7.   The *Conception* was a seagoing vessel.

8.   There were three decks on the Vessel:  the wheel house and captain's quarters were located on the vessel's uppermost deck or sun deck, the galley and kitchen were situated at the forward end of the main dive deck, and the sleeping quarters were located beneath the main deck, in a below-deck space.

The commentary on the diagram is that of the creator of the diagram **and is not offered as evidence** in this pleading.

9.   The Vessel was equipped with an onboard electrical system that was powered by diesel generators.

10.   The Limitation Plaintiffs permitted and encouraged crew members and passengers to use this electrical system to charge cell phones, laptops, digital cameras,

ANSWER OF CLAIMANT, SHRUTI DEOPUJARI, individually and as the Personal Representative of the Estate of SANJEERI DEOPUJARI, deceased

video cameras, strobe lights, GoPros, underwater-scooter power packs, and numerous other lithium-battery-powered electronics.

11.     The Limitation Plaintiffs equipped the Vessel's galley, located directly above the passenger accommodations, with a battery-charging station that included power strips where the numerous electronic devices would be charged each night.

12.     At all times relevant hereto, Claimant's decedent and the Vessel's other passengers were asleep in the Vessel's sleeping quarters, directly below the battery charging station.

13.     Some time in the early morning hours of September 2, 2019, a fire started in or near the galley and spread throughout the Vessel, burning the Vessel to the water line, and killing Claimant's decedent and all of the other passengers below deck.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

Case No. 2:19-cv-07693 PA (MRWx)

ANSWER OF CLAIMANT, SHRUTI DEOPUJARI, individually and as the Personal Representative of the Estate of SANJEERI DEOPUJARI, deceased

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24



25    14.    Upon information and belief, the fire was caused, at least in part, by the

26  lithium battery powered equipment that the Limitation Plaintiffs permitted and

27

28  encouraged to be charged and stored in the Vessel's galley, directly above the

ANSWER OF CLAIMANT, SHRUTI DEOPUJARI, individually and as the Personal Representative of the Estate of
SANJEERI DEOPUJARI, deceased

passenger accommodations where Claimant's decedent and the Vessel's other passengers were sleeping.

15.     Upon information and belief, a year before the fire onboard the Vessel, the Limitation Plaintiffs experienced a lithium-battery-caused fire aboard the Vessel's sister ship, the *Vision*.

16.     The Limitation Plaintiffs failed to report this fire for further investigation, failed to perform safety risk assessments after this fire, and failed to warn the Vessel's crew and passengers about the risk of fire caused by lithium batteries.

17.     Despite having actual knowledge of the dangers posed by lithium batteries, the Limitation Plaintiffs ignored these dangers and continued to encourage the Vessel's crew and passengers to continue charging and storing lutetium batteries in the galley's charging station.

18.     Despite having actual knowledge of the dangers posed by lithium batteries, the Limitation Plaintiffs failed to implement proper policies and procedures to ensure that devices with lithium batteries were properly handled while onboard the Vessel.

19.     At all times relevant hereto, the Vessel failed to have watchmen patrolling throughout the Vessel during the night time.

20.     Due to the lack of the night watch, the fire went undetected until it was too late.

/ / /

/ / /

ANSWER OF CLAIMANT, SHRUTI DEOPUJARI, individually and as the Personal Representative of the Estate of SANJEERI DEOPUJARI, deceased

21.     In the aftermath of this horrific fire, the Vessel's owner, Glen Fritzler, lied and stated that a watchman was on rotation at the time of the fire, but in a different area of the Vessel.

22.     After the fire broke out on the Vessel, Claimant's decedent and the Vessel's other passengers were unaware of the fire that broke out until it was too late due to the Vessel's inadequate and defective fire alarm and fire detection systems.

23.     Due to the defective design of the Vessel, there were only two means of egress for Claimant's decedent and for the passengers sleeping below deck.

24.     This condition rendered the Vessel unseaworthy.

25.     When the fire broke out, both means of escape led directly to the galley – the place where the fire originated and was burning out of control – preventing Claimant's decedent and the Vessel's other passengers from escaping.

26.     As result of the unseaworthy and defective nature of the Vessel, Claimant's decedent was caused to suffer an agonizing and painful death by burning and suffocation.

27.     The unseaworthy and defective nature of the Vessel, and specifically the inadequacy of the means of egress, was within the privity and knowledge of the Limitation Plaintiffs.

28.     As a direct and proximate result of the Limitation Plaintiffs' carelessness, negligence, gross negligence, recklessness, and complete disregard for the welfare of their crew members and their passengers and as a result of the unseaworthiness of the

14

Vessel, Claimant's decedent's life was taken from her and Claimant has been caused to sustain damages as a result of the fatal and catastrophic injuries suffered by Claimant's decedent as a result of this tragedy.

29.    In addition to the Limitation Plaintiffs, other actors may have caused and/or contributed to this tragedy and the damages sustained by the victims of the Vessel's fire.

## COUNT I – WRONGFUL DEATH & SURVIVAL ACTION

**CLAIMANT v. TRUTH AQUATICS, INC. and GLEN RICHARD FRITZLER and DANA JEANNE FRITZLER, individually and as Trustees of the FRITZLER FAMILY TRUST DTD 7/27/92**

30.    Claimant incorporates herein by reference all preceding paragraphs of this Claim as if fully set forth herein.

31.    On or about September 2, 2019, the Limitation Plaintiffs owned and operated the Vessel and had a duty to act reasonably, to ensure their vessel was seaworthy, to develop and implement proper safety policies, procedures, and training, to properly oversee their fleet, and to obey and otherwise ensure compliance with all waterway and boating rules and standards while operating the Vessel.

32.    The Limitation Plaintiffs' breach of that duty resulted in the death of Claimant's decedent.

33.    The Limitation Plaintiffs themselves, as well as by and through their respective agents, servants, workmen and employees, were negligent, careless, grossly

negligent and reckless both generally and in the following particular respects, all of which was within their privity and/or knowledge:

a. *Failing to implement policies, procedures and training to ensure the safety of people onboard the Vessel;*

b. *Failing to maintain the Vessel in a reasonable manner;*

c. *Failing to properly train its captain;*

d. *Failing to ensure that the captain was properly trained to operate the Vessel;*

e. *Failing to ensure that the captain was properly trained to maintain required watch policies and procedures at all times on the Vessel;*

f. *Failing to have a dead man's switch or similar device to ensure a roving watchman was on duty at all times;*

g. *Failing to have a policy requiring the use of a dead man's switch or similar device to ensure a roving watchman was on duty at all times;*

h. *Failing to implement standard operating procedures;*

i. *Operating the Vessel in a careless and negligent manner in the face of hazards that were within Limitation Plaintiffs' privity and/or knowledge;*

j. *Failing to properly oversee the fleet to ensure that the Vessel was being operated in accordance with company policies and procedures, principles of good seamanship, and in accordance with all applicable laws and regulations;*

k. *Failing to exercise reasonable care under all of the circumstances;*

l. *Failing to equip the Vessel with a properly-functioning electrical system;*

m. *Failing to equip the Vessel with an electrical system that was safe, suitable, and reasonably fit for its intended use;*

ANSWER OF CLAIMANT, SHRUTI DEOPUJARI, individually and as the Personal Representative of the Estate of SANJEERI DEOPUJARI, deceased

n.  Failing to equip the Vessel with a properly-functioning fire detection system;

o.  Failing to equip the Vessel with a fire detection system that was safe, suitable, and reasonably fit for its intended use;

p.  Failing to equip the Vessel with a properly-functioning fire alarm system;

q.  Failing to equip the Vessel with a fire alarm system that was safe, suitable, and reasonably fit for its intended use;

r.  Failing to equip the Vessel with a properly-functioning fire suppression system;

s.  Failing to equip the Vessel with a fire suppression system that was safe, suitable, and reasonably fit for its intended use;

t.  Failing to equip the Vessel with firefighting equipment throughout the Vessel;

u.  Failing to train its captain on the hazards associated with the improper handling and storage of devices with lithium ion batteries;

v.  Failing to ensure that those on the Vessel followed safety standards for the handling and storage of devices with lithium ion batteries;

w.  Allowing the improper handling and storage of devices with lithium ion batteries on the Vessel;

x.  Allowing the improper handling and storage of devices with lithium ion batteries on the Vessel and failing to warn those on the Vessel about the risks;

y.  Being aware of the risk of fires caused by lithium ion batteries and failing to take appropriate and necessary steps to remedy that risk;

z.  Failing to report a prior fire that was caused by lithium ion batteries on the Vessel's sister ship, the Vision, for investigation and failing to report the fire to passengers and crew members on the Vessel;

17                     Case No. 2:19-cv-07693 PA (MRWx)

aa.   *Continuing to allow the improper handling and storage of devices with lithium ion batteries on the Vessel despite having knowledge of the risk of fires caused by lithium ion batteries;*

bb.   *Continuing to allow the improper handling and storage of devices with lithium ion batteries on the Vessel despite having knowledge of the risk of fires caused by lithium ion batteries and failing to warn those on the Vessel about the risks;*

cc.   *Failing to require passengers and crew to charge lithium ion devices in secured fireproof containers;*

dd.   *Failing to have a policy in effect which required passengers and crew to charge lithium ion devices in secured fireproof containers;*

ee.   *Failing to avoid or minimize foreseeable dangers to the passengers and crew resulting from potential fire;*

ff.   *Failing to provide adequate safety equipment;*

gg.   *Failing to provide adequate safety rules;*

hh.   *Failing to provide the fleet with effective safety policies and procedures;*

ii.   *Failing to have properly operating safety equipment on board;*

jj.   *Failing to develop and implement sufficient safety procedures for emergency situations;*

kk.   *Failing to provide passengers and crew members below deck with sufficient means of ingress and egress;*

ll.   *Failing to ensure the means of escape for passengers and crew was sufficient for rapid evacuation in an emergency for the number of persons served;*

mm.   *Failing to provide passengers and crew members below deck with emergency exits that were safe, suitable, properly designed, and sufficient in size and number;*

nn.   *Failing to comply with all requirements of Subchapter T, Small Passenger Vessels, including, but not limited to, 46 CFR §§ 177.500 and 185.410,* et seq.*;*

oo.   Failing to comply with other industry standards and guidelines, including, but not limited to, NFPA 302 Section 4.1.1.2, et seq.;

pp.   Failing to provide adequate maintenance and cure;

qq.   Failing to provide adequate warnings of a known hazard;

rr.   Failing to address the known dangers associated with Vessel;

ss.   Failing to comply with industry standards, customs and practices;

tt.   Operating the Vessel with an obvious dangerous condition;

uu.   Failing to recognize danger and take corrective action;

vv.   Failing to provide adequate means of emergency evacuation;

ww.   Failing to adequately repair and/or maintain the Vessel;

xx.   Failing to timely eliminate known hazards;

yy.   Failing to timely rectify known deficiencies;

zz.   Failing to inspect the Vessel;

aaa.   Failing to incorporate the safety recommendations of the NTSB; and

bbb.   Failing to comply with local, state, and/or federal law.

34.   As a direct and proximate cause of the negligence of the Limitation Plaintiffs, Claimant's decedent was caused to suffer horrific personal injuries, a prolonged period of pain and suffering, and eventual death.

35.   Claimant claims all damages suffered by reason of the death of Claimant's decedent, including without limiting the generality of the following:

a.   The severe injuries to Claimant's decedent that resulted in her excruciating death by burning and suffocation;

b.   The excruciating pain and suffering endured by Claimant's decedent between the time of injury and the time of death;

c.   *Claimant's decedent's anxiety, horror, fear of impending death, mental disturbance, pain, suffering and other intangible losses that she suffered prior to her death;*

d.   *Claimant's decedent's emotional distress, psychological pain and suffering, severe mental anguish, and other psychological, emotional, and mental suffering that she endured as a result of witnessing the injuries caused to other passengers of the Vessel;*

e.   *All other injuries suffered by Claimant's decedent between the time of injury and the time of death;*

f.   *The reasonable value of the loss of love, affection, society, service, comfort, support, right of support, expectations of future support and counseling, companionship, solace and mental support, as well as other benefits and assistance of Claimant's decedent;*

g.   *The loss of future earning capacity suffered by Claimant's decedent that would have inured to the pecuniary benefit of her beneficiaries from the date of her death until the time in the future that she would have lived had she not died as a result of the injuries she sustained;*

h.   *The large and various funeral, burial, estate and administration expenses suffered by reason of Claimant's decedent's death; and*

i.   *The assessment of punitive damages in an appropriate amount to punish or set an example of the Limitations Plaintiffs.*

36.   As a legal result of the aforesaid negligent acts or wrongful acts or omissions, among others, the Limitation Plaintiffs breached the duty of care it owed to Claimant's decedent and Claimant.

37.   The foregoing wrongful acts or omissions occurred as a result of Limitation Plaintiffs' willful and/or arbitrary and/or wanton and/or conscious and/or reckless disregard of their obligations.

/ / /

/ / /

Case No. 2:19-cv-07693 PA (MRWx)

ANSWER OF CLAIMANT, SHRUTI DEOPUJARI, individually and as the Personal Representative of the Estate of SANJEERI DEOPUJARI, deceased

38.     Claimant therefore is entitled to an award of punitive damages, including without limitation, general punitive damages and reasonable attorney's fees and costs against Limitation Plaintiffs.

## **PRAYER FOR RELIEF**

WHEREFORE, Claimant prays for judgment against Truth Aquatics, Inc. and Glen Richard Fritzler and Dana Jeanne Fritzler, individually and as Trustees of the Fritzler Family Trust DTD 7/27/92, as follows:

1.     Damages for medical, funeral, and burial expenses;

2.     Damages for expenses of administration necessitated by reason of injuries causing Claimant's decedent's death;

3.     Damages for pecuniary support that Claimant's decedent would have provided to her beneficiaries during her lifetime;

4.     Damages for services provided or which could have been expected to have been performed in the future by Claimant's decedent;

5.     Damages for loss of earnings and economic loss to Claimant's decedent estate; damages for medical expenses;

6.     Damages for loss of life's pleasures; damages for all loss of income, retirement, and Social Security income as a result of Claimant's decedent's death;

7.     Damages for loss of society, comfort, guidance and tutelage; and damages for pain, suffering, and inconvenience endured by Claimant's decedent prior to her

ANSWER OF CLAIMANT, SHRUTI DEOPUJARI, individually and as the Personal Representative of the Estate of SANJEERI DEOPUJARI, deceased

death, including, but not limited to, physical and conscious pain and suffering, mental and conscious pain and suffering, and the fright and mental suffering attributed to the peril leading to Claimant's decedent's death.

8.     Costs of suit;

9.     Attorney's fees;

10.    Pre-judgment and post-judgment interest as allowed by law;

11.    Punitive damages;

12.    All other relief that this Court deems just and proper.

DATED:  January 13, 2020

/s/Robert  Glassman
PANISH SHEA & BOYLE LLP
Brian J. Panish, State Bar No. 116060
Robert Glassman, State Bar No. 269816
11111 Santa Monica Boulevard, Suite 700
Los Angeles, CA 90025
Phone:  (310) 477-1700
Fax:  (310) 477-1699
panish@psblaw.com
glassman@psblaw.com

AND

(Pending Admission *Pro Hac Vice*)
SALTZ, MONGELUZZI, BARRETT & BENDESKY, P.C.
Robert J. Mongeluzzi, PA Bar #36283
Jeffrey P. Goodman, PA Bar #309433
E. Douglas DiSandro, Jr., PA Bar #316834
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Phone:  (215) 496-8282
Fax:  (215) 496-0999
rmongeluzzi@smbb.com
jgoodman@smbb.com

Case No. 2:19-cv-07693 PA (MRWx)

ANSWER OF CLAIMANT, SHRUTI DEOPUJARI, individually and as the Personal Representative of the Estate of SANJEERI DEOPUJARI, deceased