| | |
|---|---|
| 1 | B. Otis Felder (CSB 177628) |
| 2 | Otis.Felder@wilsonelser.com<br>*CSB Certified Admiralty* |
| 3 | *& Maritime Law Specialist*<br>**WILSON, ELSER, MOSKOWITZ,** |
| 4 | **EDELMAN & DICKER LLP**<br>555 South Flower Street, Suite 2900 |
| 5 | Los Angeles, California 90071<br>Telephone:  (213) 443-5100 |
| 6 | Facsimile:   (213) 443-5101 |
| 7 | Attorneys for Claimant<br>MURATA ELECTRONICS NORTH AMERICA, INC. |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

<u>IN</u> <u>ADMIRALTY</u>

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF TRUTH AQUATICS, INC. AND GLEN RICHARD FRITZLER and DANA JEANNE FRITZLER, individually and as Trustees of the FRITZLER FAMILY TRUSTS DTD 7/27/92 as owners and/or owners pro hac vice of the dive vessel CONCEPTION, OFFICIAL NUMBER 638133, FOR EXINERATION FROM OR LIMITATION OF LIABILITY<br><br>Petitioners,<br><br>AND RELATED COUNTERCLAIMS | Case No.:  2:19-CV-07693 PA (MRWx)<br><br>Hon. Percy Anderson<br><br>Related Cases: 2:21-cv-07065-PA-MRW<br>2:22-cv-00202-PA-MRW<br>2:23-cv-00985-PA-MRW<br><br>**MEMORANDUM OF POINTS & AUTHORITIES BY CLAIMANT MURATA ELECTRONICS NORTH AMERICA, INC. IN SUPPORT OF ITS MOTION TO SET ASIDE CLERK'S ENTRY OF DEFAULT**<br><br>Fed. R. Civ. P. 55(c)<br><br>Hearing Date:  Monday, June 23, 2025<br>Hearing Time: 1:30 p.m.<br>Hearing Dept.: Courtroom 6A<br><br>Action Filed:  9/5/2019<br>Trial Date: TBA |

COMES NOW Claimant MURATA ELECTRONICS NORTH AMERICA, INC. ("MENA") and submits, pursuant to Fed. R. Civ. P., Rule 55(c) and L.R. 7-5(a), its brief Memorandum of Points and Authorities in support of its Motion to set aside a Clerk's Entry of Default (ECF No. 157) so that it may file claims for contribution in these proceedings as provided by *In re Live Life Bella Vita LLC*, 115 F. 4th 1188, 2024 AMC 517 (9th Cir. 2024).



# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. BACKGROUND.................................................................................................. 1

III. DISCUSSION ...................................................................................................... 3

IV. CONCLUSION .................................................................................................... 8



# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. All. Ins. Co. v. Eagle Ins. Co.*,
   92 F.3d 57 (2nd Cir. 1996) .................................................................................... 4

*Brady v. United States*,
   211 F.3d 499 (9th Cir. 2000) .................................................................................. 4

*Ex parte Green,* 286 U.S. 437 (1932) ........................................................................

*Langnes v. Green*,
   282 U.S. 531, 1931 AMC 511 (1931) .................................................................... 7

*In re Live Life Bella Vita LLC*,
   115 F. 4th 1188, 2024 AMC 517 (9th Cir. 2024) .................................... 1, 3, 6, 7

*Matter of Deng*,
   No. 13-02659, 2014 U.S. Dist. LEXIS 46997, 2014 WL 1347380,
   2014 AMC 1295 (N.D. Cal. Apr. 3, 2014) ......................................................... 4, 6

*Meyer v. New England Fish Co. of Oregon*,
   136 F.2d 315, 1943 AMC 823 (9th Cir. 1943) ....................................................... 6

*TCI Grp. Life Ins. Plan v. Knoebber*,
   244 F.3d 691 (9th Cir. 2001) ........................................................................ 4, 5, 6

*Texas Gulf Sulphur Co. v. Blue Stack Towing Co.*,
   313 F.2d 359, 1963 AMC 349 (5th Cir. 1963) ....................................................... 6

*United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*,
   615 F.3d 1085 (9th Cir. 2010) ..................................................................... 3, 4, 5

*VIP Outdoors, Inc. v. Markel Am. Ins. Co.*,
   Case No. 21-5132 TJB, 2021 WL 2550564, 2021 U.S. Dist. LEXIS
   116585, 2021 AMC 281 (W.D. Wash June 22, 2021) .......................................... 7

*Willis ex. rel. Estate of Williams v. Williams Sports Rentals, Inc.*,
   Case No. 2:17-cv-00654-KJM-JDP, 2023 WL 3344092, 2023 U.S.
   Dist. LEXIS 81992, 2023 AMC 280 (E.D. Cal. May 10, 2023) .......... 1, 3, 4, 5, 6

///



**Statutes**

Federal Judiciary Act of 1789, 28 U.S.C. § 1333(1) ............................................. 2, 3

Limitiation of Liability Act, 46 U.S.C. § 30501-11 .................................................. 1

**Rules**

FRCP Rule 55(c) ................................................................................................. 1, 3, 4

FRCP Rule 60(b) ....................................................................................................... 4

Rule F(5) ................................................................................................................ 1, 8



## I. INTRODUCTION

Claimant MURATA ELECTRONICS NORTH AMERICA, INC. ("MENA") requests that this Court set aside the Clerk's default (ECF No. 157) entered August 6, 2020, pursuant to Federal Rules of Civil Procedure, Rule 55(c), which allows the Court to set aside a default for good cause. *Willis ex. rel. Estate of Williams v. Williams Sports Rentals, Inc.,* Case No. 2:17-cv-00654-KJM-JDP, 2023 WL 3344092, 2023 U.S. Dist. LEXIS 81992, *3, 2023 AMC 280 (E.D. Cal. May 10, 2023)(granting motion to set aside June 2017 Clerk Default in Limitation Proceedings almost six years after it was entered to allow contribution claims to be filed against vessel owners). The good cause underlying this request is that neither MENA nor a number of other defendants had meaningful notice of the deadline to either answer Petitioners' Petition under Rule F(5) or make a claim when default was first sought to be entered and did not need to do so until now, having recently been included in state court proceedings that seek to resolve issues of federal maritime law, where the other Counter Claimants waive seeking any rights or remedies under California state law. Without this Court's intervention, MENA as well as others will be deprived of their rights to assert their own claims against Petitioners, including for contribution, through no fault of their own contrary to new authority since the default and recently provided by the Ninth Circuit in considering the possibility of contribution claims. See *In re Live Life Bella Vita LLC*, 115 F. 4th 1188, 2024 AMC 517 (9th Cir. 2024).

## II. BACKGROUND

As summarized in their most recent Joint Semi-Annual Status Report (ECF No. 192) filed January 31, 2025, Petitioners and Counter Claimants provide that this litigation arises from the September 2, 2019 fire aboard the former vessel, *CONCEPTION*. Petitioners Truth Aquatics, Inc., Glen Richard Fritzler, and Dana Jeanne Fritzler filed this action seeking relief under the Limitation of Liability Act ("LOLA"), 46 U.S.C. §§ 30501–11; Counter Claimants filed answers and



1

MENA'S MEMO OF Ps &As IN SUPPORT OF SETTING ASIDE CLERK'S DEFAULT
313378883v.2

counterclaims on behalf of the 33 passengers and crewmember who died aboard the former vessel, a surviving crewmember who sustained personal injuries, and a company that chartered the vessel (collectively, "Counter Claimants").

After Counter Claimants answered Petitioners' pleadings and the parties exchanged initial disclosures, the parties in the action reached a stipulation that stayed the instant action and permitted Counter Claimants to file actions in state court purportedly under the "saving to suitors" clause of the Federal Judiciary Act of 1789, now codified at 28 U.S.C. § 1333(1), premised on the notion that they were going to seek remedies and/or rights only available under state law in a California state court forum, particularly a claimed right to a jury trial. See Order (ECF No. 179.). That Order lifted the Court's Rule F injunction prohibiting "COUNTER CLAIMANTS, as identified in the JOINT STIPULATION, from prosecuting any and all suits, actions, and legal proceedings in any other forum." Id. at p. 1, lns. 26 – p. 2, ln. 2 ("1:26-2:2"). As noted below, however, the Counter Claimants no longer seek any rights or remedies under California law, voiding the purpose of being in state court.  See also Request for Judicial Notice.

As also recently reported, Counter Claimants (as plaintiffs in the state court actions) filed 59 Doe Amendments identifying additional defendants, including MENA, that had not been included in their original counterclaims in these proceeding and asserted that these new defendants are believed to have manufactured and/or sold batteries that were aboard the *CONCEPTION* on the night of the fire.  Joint Semi-Annual Status Report  at 3:10-13 (ECF No. 192).

On October 1, 2024, the Counter Claimants filed a Fourth Amended Master Complaint in state court, which was then corrected on November 5, 2024. Id. at 4:18-22.  Various newly added defendants, including MENA, filed demurrers and/or motion to strike certain allegations.

On April 22, 2025, the Los Angeles Superior Court ("LASC") granted a motion to strike paragraph 23 of the Fourth Amended Master Complaint asserting



liability on a market-share theory. See <u>LASC Order</u>, **Exh. A** to MENA's Request for Judicial Notice, filed separately herewith. The LASC, however, overruled MENA's demurrer, briefly describing both the procedural history in this and its own proceedings. <u>Id</u>. at 9-13. It noted the tension between LOLA and Section 1333(1) of Title 28 of the U.S. Code, referred to as the "saving-to-suits clause" which preserve remedies, such as empaneling juries, available in state courts over some maritime matters. *Id*. at 12 (*citing Bella Vita, supra*, 115 F.4th at 1196). The LASC also took judicial notice, however, that "(**1) Plaintiffs do not seek any rights or remedies under California law in these related proceedings, including but not limited to any California statute**" and "(2) Plaintiffs did not advise the federal court overseeing the limitation proceedings of any other parties under Federal Rules of Civil Procedures [Rule] 19, subdivision (c), of the potential of filing claims against Defendant Murata Electronics North America, Inc. or other entities." <u>Id</u>. at 13 (emphasis added). Upon overruling the demurrer based in part that this Court has exclusive jurisdiction to decide issues affecting the LOLA, including but not limited to filing contribution claims against Petitioners, the LASC directed that the parties answer the newly filed Fourth Amended Master Complaint within 45 days, namely by June 6th.

### III. DISCUSSION

A clerk's entry of default may be set aside for "good cause." Fed. R. Civ. P. 55(c). "To determine good cause, a court must consider three factors: (1) whether the party seeking to set aside the default engaged in *culpable conduct* that led to the default; (2) whether it had *no meritorious defense*; or (3) whether reopening the default judgment would *prejudice* the other party." *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle,* ("*Mesle*"), 615 F.3d 1085, 1091 (9th Cir. 2010) (emphasis added); *Willis ex. rel. Estate of Williams v. Williams Sports Rentals, Inc.,* Case No. 2:17-cv-00654-KJM-JDP, 2023 WL 3344092, 2023 U.S. Dist. LEXIS 81992, \*3, 2023 AMC 280 (E.D. Cal. May 10, 2023).



3
MENA'S MEMO OF Ps &As IN SUPPORT OF SETTING ASIDE CLERK'S DEFAULT
313378883v.2

As the Ninth Circuit has directed, any "judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Mesle.* 615 F.3d at 1091. Although the "good cause" standard is the same that applies to motions to set aside default judgments under Rule 60(b), "the test is more liberally applied in the Rule 55(c) context." *Willis*, 2023 U.S. Dist. LEXIS 81992, *5 (*citing Mesle*, 615 F.3d at 1091 n.1 (internal quotations and citations omitted); *see also Brady v. United States*, 211 F.3d 499, 504 (9th Cir. 2000) (finding district court's discretion is "especially broad" when setting aside entry of default, rather than default judgment). These three concerns are also used in deciding whether to set aside entries of default in LOLA actions. *Willis,* 2023 U.S. Dist. LEXIS 81992, *6 (*citing Matter of Deng*, No. 13-02659, 2014 U.S. Dist. LEXIS 46997, 2014 WL 1347380, at *8, 2014 AMC 1295 (N.D. Cal. Apr. 3, 2014). Here, Petitioners cannot show that the three concerns are implicated so as to have the Court deny setting aside the default.

With respect the first concern as to a lack of ***culpable conduct***, as the *Willis* court explained in setting aside an almost 6-year clerk's default in a LOLA proceeding such as this, a "defaulting defendant acts 'culpably' if he had notice of the lawsuit but intentionally declined to answer." *Willis*, 2023 U.S. Dist. LEXIS 81992, *6 (*citing  TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001), *overruled on other grounds, Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 147 (2001).") Such "'[i]ntentional' conduct in this sense is 'willful, deliberate, or . . . [in] bad faith,' rather than neglectful." *Id.* (*citing TCI Grp.*, 244 F. 3d at 697-98 (quoting *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2nd Cir. 1996)). " "If a party's explanations for its default are consistent with a willful or bad faith failure to respond, the court may refuse to set aside its default." *Id.* (*citing TCI Grp.*, 244 F.3d at 698 (collecting cases).

Here, no such willful conduct to take advantage of Petitioners can be shown by them where MENA had no meaningful notice that it would need to make a



4
MENA'S  MEMO OF Ps &As IN SUPPORT OF SETTING ASIDE CLERK'S DEFAULT
313378883v.2

claim on the Limitation Fund before the default was entered. Counter Claimants did not file any claims against it in these proceedings but waited until *after* filing various amended pleadings in state court well after Petitioner asked this Court to enter a default. MENA had no way of predicting – prior to the clerk's entry of default – that it would need to make a claim against the Petitioners or any other party in these LOLA proceedings. In fact, it was not until a few weeks ago that the LASC even found the Counter Claimants' claims against MENA might be viable, striking one of their schemes of recovery based on a market share theory.

Unless this Court sets aside the default, MENA as well as other claimants will be deprived of rights through no fault of their own having not been provided effective notice of the limitation or given an opportunity to file claims against the vessel owners, given that it as well as many others are either based abroad or outside of California where notice by publication was provided. MENA had no intention of taking advantage of Petitioners and met with them before seeking relief so that they may protect the exclusive jurisdiction of this Court over their claim for limitation. See *Ex parte Green,* 286 U.S. 437 (1932).

Likewise, "[a]ll that is necessary to satisfy the **'meritorious defense'** requirement is to allege sufficient facts that, if true, would constitute a defense." *Willis*, 2023 U.S. Dist. LEXIS 81992, *7 (emphasis added) (*citing Mesle*, 615 F.3d at 1094). This is not an "extraordinarily heavy" burden. *Ibid.* (*citing TCI Grp.*, 244 F.3d at 700). For example, in *Willis, supra,* the district court found sufficient as to this inquiry for the co-renter of a jet-ski, who had been sued by the decedent's mother, to simply assert that he might not be liable as he was not operating nor a passenger on the vessel at the time of the fatal incident when the decedent, not wearing a life, fell off and drowned. *Id.*

Likewise, here, not only does MENA dispute liability, but there has been no evidence proffered by Counter Claimants showing that it had any products on the *CONCEPTION* that caused the fire. Counter Claimants' market share theory



1  was stricken by the LASC, and as the Court is aware, Counter Claimants
2  continue to look to examine the remains of the fire to see if any evidence exists
3  for them to establish not only the cause but also potential liable parties.  As
4  MENA alleges it did not cause the fire, there are facts, if true, amounting to a
5  defense such that the default should be set aside.
6       As to the third consideration regarding *prejudice*, a court may refuse
7  to set aside an entry of default if doing so would unfairly adverse the other party.
8  *Willis*, 2023 U.S. Dist. LEXIS 81992, *7. "To be prejudicial, the setting aside of a
9  judgment must result in greater harm than simply delaying resolution of the case."
10 *Id.* (*quoting TCI Grp*, 244 F.3d at 701). As the court in *Willis, supra,* pointed out,
11 "Only tangible harm, such as the 'loss of evidence,' complication of discovery, or
12 the risk of fraud, will support the denial of a motion to set aside the entry
13 of default." *Id.* (internal quotations omitted). "A party is not prejudiced if forced
14 only to litigate the merits of his case." *Id.*  As in *Willis*, there is no tangible harm
15 here in setting aside the default so that MENA can file a contribution claim,
16 especially considering more recent Ninth Circuit case law especially the right to do
17 so.  See *Bella Vita LLC*, 115 F. 4th at 1198.  Subjecting MENA's contribution
18 claim to Petitioners' assertion of limitation, protects (not harms) Petitioners.  It
19 also protects the Court's exclusive admiralty jurisdiction. *Ex parte Green,* 286 U.S.
20 437 (1932).
21      Indeed, setting aside defaults entered after a Monition period is not unusual,
22 even where a claimant was aware of a limitation action yet failed to appear and
23 make a claim prior to entry of default. As Courts sitting in admiralty have
24 observed: "Admiralty is administered with equitable liberality." *Texas Gulf*
25 *Sulphur Co. v. Blue Stack Towing Co.*, 313 F.2d 359, 362, 1963 AMC 349 (5th
26 Cir. 1963). "[T]he granting or withholding of permission to file claims after the
27 expiration of the monition period is discretionary with the trial court." *Meyer v.*
28 *New England Fish Co. of Oregon*, 136 F.2d 315, 316, 1943 AMC 823 (9th Cir.



6
MENA'S  MEMO OF Ps &As IN SUPPORT OF SETTING ASIDE CLERK'S DEFAULT
313378883v.2

1943). *See also, Guan v. Deng (In re Deng)*, Case No. C13-02659 WHA, 2014 WL 1347380, 2014 U.S. Dist. LEXIS 46997, 2014 AMC 1295 (N.D. Cal. April 3, 2014) (setting aside default of claimants who had been served with notice of the limitation action, but who did not appear); *VIP Outdoors, Inc. v. Markel Am. Ins. Co.*, Case No. 21-5132 TJB, 2021 WL 2550564, 2021 U.S. Dist. LEXIS 116585, 2021 AMC 281 (W.D. Wash June 22, 2021) (setting aside default of claimants whose counsel was aware of the limitation action but misinterpreted the deadlines). Here, no actual notice or opportunity was ever given to MENA to take part in these LOLA proceedings before the default.

As even more support for setting aside the default than the above examples, MENA had no notice of its rights before the default was entered, and neither Petitioners nor the other Counter Claimants named it as party here. Neither the Petitioners nor any of the Counter Claimants alerted the Court before the default of the potential of other claimants, such as MENA, so that that the Court, itself, could also consider the possibility of contribution and other claims as directed by the Ninth Circuit. See *Bella Vita LLC*, 115 F. 4th at 1199 ("Put differently, a district court must evaluate whether a third-party has already asserted such claims, as well as whether there is 'the possibility of any other claim.'")(*citing Langnes v. Green*, 282 U.S. 531, 540, 1931 AMC 511 (1931)).

Indeed, here, there is a serious question of error and collusion among the Petitioners and Counter Claimants in that the basis for seeking to pursue the purely federal maritime claims in state court no longer exists with Counter Claimants acknowledging and the LASC taking judicial notice that they do not seek any rights or remedies under California law, which would include their purported claim to a jury trial only available to them under state law and not in admiralty. See *Bella Vita*, 115 F.4th at 1196 (citations omitted). As all the conditions for setting aside the clerk's default are met, the request "does not represent an 'extreme circumstance'" where a default is appropriate, rather, the default should be set



aside so that "This case should be decided on the merits." *VIP Outdoors, Inc.*, 2021 U.S. Dist. LEXIS 116585, *8.

## IV.  CONCLUSION

MENA and other defendants recently added to the state court proceedings had no meaningful ability to judge whether to had to file a counter claim against Petitioners until the Los Angeles Superior Court refused to sustain its demurrer last month. Accordingly, and based on the arguments above and evidence submitted, MENA respectfully requests this Court to set aside the default entered before it had notice of the deadline or its rights, and so it can itself assert its own claims in this action as required under Rule F(5), protecting the Court's exclusive admiralty jurisdiction.

Respectfully submitted,

Dated: May 23, 2025

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**

By: _____
B. Otis Felder
*CSB Certified Admiralty*
*& Maritime Law Specialist*
Attorneys for Claimant
MURATA ELECTRONICS
NORTH AMERICA, INC.



## L.R. 11-6.2. Certificate of Compliance

The undersigned, counsel of record for Defendant MURATA ELECTRONICS NORTH AMERICA, INC. moving party, certifies that this brief contains 3,219 words, which complies with the word limit of L.R. 11-6.1.

Dated: May 23, 2025

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**

By: _____
B. Otis Felder

