# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Spring Street Courthouse, Department 12

21STCV08121                                                                                     April 22, 2025
**NANCY FIEDLER, et al. vs TRUTH AQUATICS, INC., et al.**                   1:45 PM

Judge: Honorable Carolyn B. Kuhl           CSR: Baila M. Strauss  CSR# 14251
Judicial Assistant: L. M'Greene             ERM: None
Courtroom Assistant: M. Miro               Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s):  No Appearances

Other Appearance Notes: (See Appearances Below)

**NATURE OF PROCEEDINGS:** Hearing on Demurrer - with Motion to Strike (CCP 430.10) to Plaintiffs' Fourth Amended Master Complaint for Failure to State a Claim on Behalf of Doe Defendants; Hearing on Demurrer - without Motion to Strike to Plaintiffs' Fourth Amended Master Complaint and Related Cases by Defendants Murata Electronics North America, Inc.; Hearing on Motion - Other Joinder to Defendant Murata Electronics North America, Inc.'s Notice of Demurrer and Demurrer to Plaintiffs' Fourth Amended Master Complaint for Lack of Jurisdiction on Behalf of OM Digital Solutions Americas, Inc.; Hearing on Motion to Strike Market Share Allegation in Plaintiffs' Fourth Amended Master Complaint on Behalf of Doe Defendants; Further Status Conference

The matter is called for hearing.

Pursuant to Government Code sections 68086, 70044, and California Rules of Court, rule 2.956, Baila M. Strauss CSR# 14251, certified shorthand reporter is appointed as an official Court reporter pro tempore in these proceedings, and is ordered to comply with the terms of the Court Reporter Agreement. The Order is signed and filed this date.

Appearances:

Plaintiffs – Present
John R Hillsman, Gretchen M Nelson, Kevin J Mahoney.

Plaintiffs – LACourtConnect
E. Douglas DiSandro Jr., Todd Abbott, Ilya D. Frangos.

Defendant – Present
Eric C Holmberg, Elaine K Fresch, B Otis Felder, Bradford J DeJardin, Dominique Marangoni-Simonsen, Paul Angelo Calfo, Greg Gilmer, Christopher Chorba, Ray Hartman, Shae McPhee, Neil S Lerner, Hilary Potashner, Juliette Tran, Roark Luskin, Christopher Erich.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
Civil Division
Central District, Spring Street Courthouse, Department 12

21STCV08121                                                                           April 22, 2025
**NANCY FIEDLER, et al. vs TRUTH AQUATICS, INC., et al.**                              1:45 PM

Judge: Honorable Carolyn B. Kuhl          CSR: Baila M. Strauss  CSR# 14251
Judicial Assistant: L. M'Greene           ERM: None
Courtroom Assistant: M. Miro              Deputy Sheriff: None

Defendants – LACourtConnect –
Timothy S Lam, Lori C Chang, Wesley Sze, Tiffany-Paige Hernandez, Adam Wayne, Ryne Krueger, David Vincent Moore, Sima Jonoobi, Gregory K Lee.

Others – LACourtConnect –
Theodore D Poppinga, Cory Itkin, Richard Lesser, Humza Chohan, Hillary D Patton, Robert A Shields, Jasdeep S Atwal, C Prentice Schanz, David Reid, Carl Klein, Gary Scott Pancer, Brendan W Murphy, Danielle C. Rivera, Katharine Perry, Adam Van Korlaar.

The Court issues 2 tentatives previously and counsel acknowledge receipt of them.

The Court and counsel argue the Doe Defendants' Motion to Strike Market Share Allegation in Plaintiffs' Fourth Amended Master Complaint and the Court orders the tentative to stand.

Court's Ruling: The Motion is granted. The court strikes paragraph 23 of the Fourth Amended Master Complaint.

This litigation arises out of a fire aboard the passenger vessel Conception on September 2, 2019, which resulted in the death of multiple passengers. On March 1, 2021, Plaintiff Nancy Fiedler and others filed their Complaint for Wrongful Death, Survival and Punitive Damages. On July 20, 2021, Plaintiffs filed a Master Complaint.

On November 9, 2021, Plaintiffs filed the Amended Master Complaint. On August 31, 2022, Plaintiffs filed the Second Amended Master Complaint (SAMC). The SAMC included allegations against DOE Defendants. The SAMC alleged that certain DOE Defendants "distributed, retailed, rented, and sold the electronic equipment" that was involved with the fire on the Conception. (SAMC, ¶¶ 33, 48.)

On May 20, 2024, Plaintiffs filed their Third Amended Master Complaint. On November 5, 2024, Plaintiffs filed their "Corrected Fourth Amended Master Complaint" (FAMC). The First and Second Causes of Action are alleged against Defendants that were directly involved with the Conception. The Third Cause of Action is brought against all Defendants for "Negligence— Wrongful Death." The Fourth Cause of Action, brought against a large group of Defendants, is for "Strict Products Liability—Wrongful Death." And the Fifth Cause of Action, brought against all Defendants, is a "Survival Action."

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Spring Street Courthouse, Department 12

| | |
|---|---|
| 21STCV08121 | April 22, 2025 |
| **NANCY FIEDLER, et al. vs TRUTH AQUATICS, INC., et al.** | 1:45 PM |

Judge: Honorable Carolyn B. Kuhl     CSR: Baila M. Strauss  CSR# 14251
Judicial Assistant: L. M'Greene      ERM: None
Courtroom Assistant: M. Miro         Deputy Sheriff: None

---

"On the evening of Sunday, September 1, 2019, seventeen passengers made a night dive at Quail Rock on the north side of Santa Cruz Island. That night dive concluded some time before 2200. Once the divers were back onboard CONCEPTION, multiple electronic devices powered by batteries – including but not limited to rechargeable 18650 lithium-ion batteries, non-rechargeable CR 123 lithium batteries, rechargeable Li-90 and Li 90B batteries – were stowed on the tables in the after end of the salon. Many of those devices – including but not limited to underwater flashlights, underwater cameras, GoPro cameras, iPhones, smart phones, cellular phones, headphones, iPads, personal computers, and underwater strobe lights – were plugged into electrical outlets, and left to recharge overnight. There were three electrical outlets located on the port side of the salon with three corresponding electrical outlets on the starboard side. There was also an electrical receptable in the forward starboard side of the salon, near the stairwell." (FAMC, ¶ 110.)

Plaintiffs allege that the Conception fire "was a lithium-fueled fire … that had been sparked and/or critically accelerated by thermal runaway involving rechargeable lithium-ion batteries, non-rechargeable lithium batteries, and/or defective electronic devices powered by lithium-ion batteries which had been stowed in the [Conception's] salon and plugged into an overburdened shipboard electrical system that had been designed, developed, built, installed, inspected, approved, and refurbished without adequate fire detection, mitigation and protection systems … ." (FAMC, ¶ 115.) "Lithium-fueled fires involving rechargeable lithium-ion batteries and non-rechargeable lithium batteries are subject to the phenomenon of 'thermal runaway' and can quickly generate temperatures more than 1000 degrees Fahrenheit." (FAMC, ¶ 116.)

Once the fire had been discovered by the crew shortly after 3:00 a.m., the crew "realized that the fire had accelerated beyond their control and abandoned ship, taking CONCEPTION's fifteen-foot inflatable skiff with them." (FAMC, ¶ 117, italics in original.) The crew was thus unable or unwilling to save the passengers, all but one of whom were "down below in the bunk room where they died from toxic smoke inhalation and/or their burns after trying to fight the blaze with [a] fire extinguisher … ." (FAMC, ¶ 117.)

The FAMC alleges that DOE Defendants "designed, manufactured, assembled, tested, described, packaged, consigned, distributed, rented, retailed, and sold" the "defective battery powered equipment, lithium batteries, and/or lithium-ion batteries" that were involved in the Conception fire. (FAMC, ¶ 115.)

Plaintiffs include the following "market share" allegation as an alternative for proving that Doe Defendants' products were a cause of Plaintiffs' harm:

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
**Civil Division**
Central District, Spring Street Courthouse, Department 12

21STCV08121                                                                                           April 22, 2025
**NANCY FIEDLER, et al. vs TRUTH AQUATICS, INC., et al.**                                              1:45 PM

Judge: Honorable Carolyn B. Kuhl                    CSR: Baila M. Strauss  CSR# 14251
Judicial Assistant: L. M'Greene                     ERM: None
Courtroom Assistant: M. Miro                        Deputy Sheriff: None

---

In the alternative, in the event that a jury, due to the state of the evidence and/or the fungible nature of the defective product, is unable to determine after presentation of the evidence at trial that a Defendant's product proximately caused Plaintiffs' injuries, that Defendant may still be held liable as a party holding a share of the appropriate product market, specifically the market for lithium ion batteries. Lithium-ion batteries are interchangeable among devices of the same type, are often re-marketed and sold under separate brands, and they also contain fungible materials (e.g., lithium, polymers, electrolytes and/or separators) that are usable across different brands and product types and sourced from just a handful of global suppliers. Given the ever-increasing threat posed by lithium-ion batteries and the inherent difficulties in identifying manufacturers of lithium-ion products given the self-destructive nature of thermal runaway events, Defendant may be held liable to the extent of its share of the market for these products.

(FAMC, ¶ 23.)

Doe Defendants now move to strike paragraph 23 of the FAMC on the grounds that the market share allegation is irrelevant, improper, and/or not drawn in conformity with the law. Doe Defendants argue that they cannot be held liable under a market share theory. Doe Defendants argue that Plaintiffs allegations do not satisfy the requirements for imposition of market share liability under California law and that California's market share principles of liability are inapplicable under federal maritime law, which must be applied in this case.

Judicial Notice

Doe Defendants request judicial notice of transcripts of proceedings in this litigation and documents filed in separate litigation. Plaintiffs do not oppose the request. The court grants the request pursuant to Evidence Code section 452, subdivision (d).

Doe Defendants request judicial notice of prior briefing filed in this litigation. Because the document is already properly before this court as a document filed in this litigation, the request for judicial notice is unnecessary.

Discussion

In Sindell v. Abbott Laboratories (1980) 26 Cal.3d 588 (Sindell), the California Supreme Court adopted a theory of market-share liability in a case involving the manufacture of DES. The plaintiff in Sindell brought a putative class action on behalf of women whose mothers were administered DES during pregnancy. (Id. at p. 593.) "DES may cause cancerous vaginal and

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
Civil Division
Central District, Spring Street Courthouse, Department 12

21STCV08121                                                              April 22, 2025
**NANCY FIEDLER, et al. vs TRUTH AQUATICS, INC., et al.**                1:45 PM

Judge: Honorable Carolyn B. Kuhl          CSR: Baila M. Strauss  CSR# 14251
Judicial Assistant: L. M'Greene           ERM: None
Courtroom Assistant: M. Miro              Deputy Sheriff: None

cervical growths in the daughters exposed to it before birth, because their mothers took the drug during pregnancy. The form of cancer from which these daughters suffer is known as adenocarcinoma, and it manifests itself after a minimum latent period of 10 or 12 years." (Id. at p. 594.) "Between 1941 and 1971, defendants were engaged in the business of manufacturing, promoting, and marketing [DES] … ." (Id. at p. 593.)

The plaintiff in Sindell alleged "that [the] defendants [were] jointly liable regardless of which particular brand of DES was ingested by [the] plaintiff's mother because [the] defendants collaborated in marketing, promoting and testing the drug, relied upon each other's tests, and adhered to an industry-wide safety standard. DES was produced from a common and mutually agreed upon formula as a fungible drug interchangeable with other brands of the same product; [the] defendants knew or should have known that it was customary for doctors to prescribe the drug by its generic rather than its brand name and that pharmacists filled prescriptions from whatever brand of the drug happened to be in stock." (Id. at p. 595.)

The Court held that, because "all defendants produced a drug from an identical formula and the manufacturer of the DES which caused plaintiff's injuries cannot be identified through no fault of plaintiff," it was reasonable "to measure the likelihood that any of the defendants supplied the product which allegedly injured plaintiff by the percentage which the DES sold by each of them for the purpose of preventing miscarriage bears to the entire production of the drug sold by all for that purpose." (Id. at p. 611-612.) Thus, under the holding in Sindell, the market-share theory of liability applies only when (1) the product in question is identical and fungible with all other products that could have caused the harm, and (2) the plaintiff, in part because of the large lapse of time, is unable to identify which defendant's product caused the harm because of the nature of the market for that fungible good. Moreover, the Supreme Court made clear that the market-share theory of liability required the plaintiff to join "in the action the manufacturers of a substantial share of the DES which her mother might have taken," so that "shifting the burden of proof to [the] defendants to demonstrate that they could not have made the substance which injured [the] plaintiff" would not be unjust. (Id. at p. 612.)

Application of the market share theory of liability in California has been limited. In Rutherford v. Owens-Illinois, Inc. (1997) 16 Cal.4th 953, 976 (Rutherford), the California Supreme Court, considering the requirements for proof of liability for harms caused by exposure to asbestos, stated: "Only in one circumstance have we relieved toxic tort plaintiffs of the burden of showing exposure to the defendant's product: where hundreds of producers had made the same drug from an identical formula, practically precluding patients from identifying the makers of the drugs they took." The Court noted:

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Spring Street Courthouse, Department 12

| | |
|---|---|
| **21STCV08121** | April 22, 2025 |
| **NANCY FIEDLER, et al. vs TRUTH AQUATICS, INC., et al.** | 1:45 PM |

Judge: Honorable Carolyn B. Kuhl   CSR: Baila M. Strauss  CSR# 14251
Judicial Assistant: L. M'Greene    ERM: None
Courtroom Assistant: M. Miro       Deputy Sheriff: None

---

The majority of courts have refused to extend the doctrine of alternative liability and its burden-shifting rule to asbestos-related latent personal injury actions brought against multiple suppliers of asbestos products. These cases have found the factors which support application of Summers alternative liability and burden shifting readily distinguishable from the facts typically involved in complex asbestos litigation.

(Id. at p. 971.) For multiple reasons, the Court chose to reject "use of a burden-shifting instruction in the asbestos-related cancer context." (Id. at p. 978.) The Court noted, inter alia, that "asbestos cases often have less than the complete set of possible tortfeasors before the court, and do not display the same symmetry of 'comparative fault' or 'indivisible injury' as was the factual case in Summers." (Id.) The Court in Rutherford thus held:

---

1 In their Opposition, Plaintiffs rely on the principles of Summers v. Tice (1948) 33 Cal.2d 80 (Summers) The Court in Summers found it appropriate to shift the burden of proof to two hunters to prove that they had not fired the shot that harmed the plaintiff, given that both hunters had shot negligently in the plaintiff's direction, but it could not be determined which of them had fired the shot that actually struck the plaintiff. The Court in Sindell did rely on principles derived from Summers' "alternative liability" theory in extending liability to manufacturers in certain circumstances where a plaintiff could not demonstrate which manufacturer's product harmed that plaintiff. However, as discussed in the text of this opinion, the theory of market share liability articulated by Sindell is narrowly constrained. Nothing in Sindell suggests that this court is empowered to rely on Summers to extend the market share theory of liability beyond the constraints inherent in Sindell and applied in subsequent cases. Of course here, unlike in Summers, Plaintiffs' market share theory is not based on a theory of relief requiring a showing that a particular Defendant engaged in specific actionable conduct toward Plaintiffs or that a particular Defendant's product was in a location such that it could proximately cause Plaintiffs' harm.

In the context of a cause of action for asbestos-related latent injuries, the plaintiff must first establish some threshold exposure to the defendant's defective asbestos-containing products, and must further establish in reasonable medical probability that a particular exposure or series of exposures was a "legal cause" of his injury, i.e., a substantial factor in bringing about the injury. In an asbestos-related cancer case, the plaintiff need not prove that fibers from the defendant's product were the ones, or among the ones, that actually began the process of malignant cellular growth. Instead, the plaintiff may meet the burden of proving that exposure to defendant's product was a substantial factor causing the illness by showing that in reasonable medical

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Spring Street Courthouse, Department 12

| | |
|---|---|
| 21STCV08121 | April 22, 2025 |
| **NANCY FIEDLER, et al. vs TRUTH AQUATICS, INC., et al.** | 1:45 PM |

Judge: Honorable Carolyn B. Kuhl          CSR: Baila M. Strauss  CSR# 14251
Judicial Assistant: L. M'Greene              ERM: None
Courtroom Assistant: M. Miro                Deputy Sheriff: None

---

probability it contributed to the plaintiff or decedent's risk of developing cancer. The jury should be so instructed.

(Id. at pp. 982-983, internal footnotes omitted; emphasis in original.)

In its Restatement Third of Torts, Product Liability, the American Law Institute refrained from taking a position for or against the market share theory of liability, but explicated the requirements for proof of liability on the basis of that theory. "In deciding whether to adopt a rule of proportional liability, courts have considered the following factors: (1) the generic nature of the product; (2) the long latency period of the harm; (3) the inability of plaintiffs to discover which defendant's product caused plaintiff's harm, even after exhaustive discovery; (4) the clarity of the causal connection between

---

2 There is good reason to believe that Rutherford tacitly overruled or at least severely limited the holding in Wheeler v. Raybestos-Manhattan (1992) 8 Cal.App.4th 1152 (Wheeler), a case on which Plaintiffs repeatedly rely here. Plaintiffs argue that Wheeler is the "most analogous market share liability case to the present one … ." (Pls' Opp., at p. 5.) The same division of the First District Court of Appeal that decided Wheeler voiced certain doubts about Wheeler's "ongoing vitality" in light of the holding in Rutherford. Roughly five years before the Supreme Court issued Rutherford, the court in Wheeler chose to apply market share liability to a case involving manufacturers of brake pads containing asbestos. Given the holding in Rutherford, Wheeler is likely no longer good law. But the holding in Wheeler can also be distinguished. The court there did not determine that the plaintiffs had adequately shown facts allowing for application of market share liability; instead, the court narrowly held that the plaintiffs should be allowed to attempt to provide evidence regarding application of market share liability. (Wheeler, at p. 1158.) More importantly, the facts in Wheeler cannot be analogized to those here. There, unlike here, the product in question was interchangeable (all of the brake pads were "composed solely of chrysotile asbestos fiber"), and there was a likelihood that the plaintiffs "were exposed to the products of any given manufacturer with roughly the same frequency that that manufacturer's brake pads occupied the market." (Id. at pp. 1156, 1158.)

the defective product and the harm suffered by plaintiffs; (5) the absence of other medical or environmental factors that could have caused or materially contributed to the harm; and (6) the availability of sufficient 'market share' data to support a reasonable apportionment of liability." (Rest.3d Torts: Prod. Liab., § 15, cmt. (c).)

Plaintiffs' allegations make it plain that they are not alleging harm from a generic product. The

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Spring Street Courthouse, Department 12

| | |
|---|---|
| 21STCV08121 | April 22, 2025 |
| **NANCY FIEDLER, et al. vs TRUTH AQUATICS, INC., et al.** | 1:45 PM |

Judge: Honorable Carolyn B. Kuhl  CSR: Baila M. Strauss  CSR# 14251
Judicial Assistant: L. M'Greene  ERM: None
Courtroom Assistant: M. Miro  Deputy Sheriff: None

---

FAMC alleges harm from rechargeable and non-rechargeable lithium batteries and from electronic devices powered by lithium-ion batteries. (FAMC, ¶ 115-116.) Those are several components, not one product of a generic nature. Further, the batteries and electronic devices are used in a variety of types of products: "underwater flashlights, underwater cameras, GoPro cameras, iPhones, smart phones, cellular phones, headphones, iPads, personal computers, and underwater strobe lights." (FAMC, ¶ 110.) Plaintiffs have not alleged that the chances of harm that allegedly may be caused by inherently defective lithium-ion batteries (rechargeable and non-rechargeable) is comparable in all batteries or in all end-use products. (Cf., Wheeler v. Raybestos-Manhattan (1992) 8 Cal.App.4th 1152, 1156 ["A single type of asbestos fiber, chrysotile, was used in all the pads, and the amount of asbestos by weight in the pads varied within a limited range. While the brake pads are not absolutely interchangeable each for one another and hence are not fungible from the standpoint of an auto mechanic, they are fungible for the purposed of Sindell by virtue of containing roughly comparable quantities of the single asbestos fiber, chrystotile"]) Indeed, the FAMC alleges that the lithium-ion batteries are interchangeable only "among devices of the same type" and that such batteries may contain several types of materials, "e.g., lithium, polymers, electrolytes and/or separators." (FAMC ¶ 23.)

In their Opposition Brief, Plaintiffs claim that "[d]iscovery will establish that the Product Defendants or discrete classes of those defendants (e.g., cell phone manufacturers) use identical, dangerous, and highly unstable electrochemical substances in their Li-Ion batteries, which cause or contribute to thermal runaway events." (Pls' Opp., at p. 7.) This statement is telling. Plaintiffs admit that there are likely "discrete classes of … defendants." In other words, Plaintiffs admit that the different products sold by manufacturer or distributor Defendants in this case are not of the same type, and thus that the devices/batteries are not fungible. Moreover, the battery components are alleged to be composed of "unstable electrochemical substances" which, as alleged in the FAMC, consist of several types of materials—again, not a generic substance.

The absence of a generic product that is the alleged cause of Plaintiffs' harm precludes application of market share liability. The court notes as well that, unlike in Sindell, there is not a long latency period of the harm. The alleged harm occurred immediately when the devices/batteries caused or accelerated the fire on September 2, 2019. The devices/batteries thus cannot be analogized to DES taken during a mother's pregnancy that results years later in the daughter developing cancer. Nor can the devices/batteries be analogized to frequent and ongoing exposure to brake pads containing asbestos that later leads to harms. (See Wheeler, supra, 8 Cal.App.4th at p. 1158.)

Moreover, Plaintiffs here cannot allege the absence of other environmental factors that could

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Spring Street Courthouse, Department 12

| | |
|---|---|
| 21STCV08121 | April 22, 2025 |
| **NANCY FIEDLER, et al. vs TRUTH AQUATICS, INC., et al.** | 1:45 PM |

Judge: Honorable Carolyn B. Kuhl                CSR: Baila M. Strauss  CSR# 14251
Judicial Assistant: L. M'Greene                  ERM: None
Courtroom Assistant: M. Miro                     Deputy Sheriff: None

---

have caused or materially contributed to the harm. As noted above, Plaintiffs allege that multiple electrical devices were plugged into an "overburdened shipboard electrical system that had been designed, developed, built, installed, inspected, approved, and refurbished without adequate fire detection, mitigation and protection systems … ." (FAMC, ¶ 115.)

Plaintiffs may plead in the alternative that they may not be able in this case to discover which Defendant's product ignited to cause the fire. But the California courts and courts of other jurisdictions have not held that inability to identify a Defendant is an automatic basis for market share liability. There certainly is no indication that federal maritime law would provide for market share liability under the facts alleged or under facts that Plaintiffs have suggested in briefing they could allege. The Motion to Strike is granted.


The Court and counsel argue the Demurrer to Plaintiffs' Fourth Amended Master Complaint and Related Cases by Defendants Murata Electronics North America, Inc. et al. and the Court orders the tentative to stand.

Court's Ruling: The Demurrer and joinder therein are overruled.


This litigation arises out of a fire aboard the passenger vessel Conception on September 2, 2019, which resulted in the death of multiple passengers. On March 1, 2021, Plaintiff Nancy Fiedler and others filed their Complaint for Wrongful Death, Survival and Punitive Damages. On July 20, 2021, Plaintiffs filed a Master Complaint.

On November 9, 2021, Plaintiffs filed the Amended Master Complaint. On August 31, 2022, Plaintiffs filed the Second Amended Master Complaint (SAMC). The SAMC included allegations against DOE Defendants. The SAMC alleged that certain DOE Defendants "distributed, retailed, rented, and sold the electronic equipment" that was involved with the fire on the Conception. (SAMC, ¶¶ 33, 48.)

On May 20, 2024, Plaintiffs filed their Third Amended Master Complaint. On November 5, 2024, Plaintiffs filed their "Corrected Fourth Amended Master Complaint" (FAMC). The First and Second Causes of Action are alleged against Defendants that were directly involved with the Conception. The Third Cause of Action is brought against all Defendants for "Negligence—Wrongful Death." The Fourth Cause of Action, brought against a large group of Defendants, is for "Strict Products Liability—Wrongful Death." And the Fifth Cause of Action, brought against all Defendants, is a "Survival Action."

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
Civil Division
Central District, Spring Street Courthouse, Department 12

| | |
|---|---|
| 21STCV08121 | April 22, 2025 |
| **NANCY FIEDLER, et al. vs TRUTH AQUATICS, INC., et al.** | 1:45 PM |

Judge: Honorable Carolyn B. Kuhl           CSR: Baila M. Strauss  CSR# 14251
Judicial Assistant: L. M'Greene                ERM: None
Courtroom Assistant: M. Miro                 Deputy Sheriff: None

---

"On the evening of Sunday, September 1, 2019, seventeen passengers made a night dive at Quail Rock on the north side of Santa Cruz Island. That night dive concluded some time before 2200. Once the divers were back onboard CONCEPTION, multiple electronic devices powered by batteries – including but not limited to rechargeable 18650 lithium-ion batteries, non-rechargeable CR 123 lithium batteries, rechargeable Li-90 and Li 90B batteries – were stowed on the tables in the after end of the salon. Many of those devices – including but not limited to underwater flashlights, underwater cameras, GoPro cameras, iPhones, smart phones, cellular phones, headphones, iPads, personal computers, and underwater strobe lights – were plugged into electrical outlets, and left to recharge overnight. There were three electrical outlets located on the port side of the salon with three corresponding electrical outlets on the starboard side. There was also an electrical receptacle in the forward starboard side of the salon, near the stairwell." (FAMC, ¶ 110.)

Plaintiffs allege that the Conception fire "was a lithium-fueled fire … that had been sparked and/or critically accelerated by thermal runaway involving rechargeable lithium-ion batteries, non-rechargeable lithium batteries, and/or defective electronic devices powered by lithium-ion batteries which had been stowed in the [Conception's] salon and plugged into an overburdened shipboard electrical system that had been designed, developed, built, installed, inspected, approved, and refurbished without adequate fire detection, mitigation and protection systems … ." (FAMC, ¶ 115.) "Lithium-fueled fires involving rechargeable lithium-ion batteries and non-rechargeable lithium batteries are subject to the phenomenon of 'thermal runaway' and can quickly generate temperatures more than 1000 degrees Fahrenheit." (FAMC, ¶ 116.)

Once the fire had been discovered by the crew shortly after 3:00 a.m., the crew "realized that the fire had accelerated beyond their control and abandoned ship, taking CONCEPTION's fifteen-foot inflatable skiff with them." (FAMC, ¶ 117, italics in original.) The crew was thus unable or unwilling to save the passengers, all but one of whom were "down below in the bunk room where they died from toxic smoke inhalation and/or their burns after trying to fight the blaze with [a] fire extinguisher … ." (FAMC, ¶ 117.)

The FAMC alleges that DOE Defendants "designed, manufactured, assembled, tested, described, packaged, consigned, distributed, rented, retailed, and sold" the "defective battery powered equipment, lithium batteries, and/or lithium-ion batteries" that were involved in the Conception fire. (FAMC, ¶ 115.)

Certain Doe Defendants (Moving Defendants) now demur to the Third, Fourth, and Fifth Causes of Action of the FAMC on the ground that these claims are improperly before this court. Moving

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
Civil Division
Central District, Spring Street Courthouse, Department 12

| | |
|---|---|
| 21STCV08121 | April 22, 2025 |
| **NANCY FIEDLER, et al. vs TRUTH AQUATICS, INC., et al.** | 1:45 PM |

Judge: Honorable Carolyn B. Kuhl          CSR: Baila M. Strauss  CSR# 14251
Judicial Assistant: L. M'Greene           ERM: None
Courtroom Assistant: M. Miro              Deputy Sheriff: None

---

Defendants argue that there is no jurisdiction to proceed against Moving Defendants in this forum.

Relevant Procedural History and LOLA

Defendants Truth Aquatics, Inc., Glen Fritzler, and Dana Fritzler (Owners), petitioned the United States District Court for the Central District of California for exoneration from or limitation of liability under the federal Limitation of Liability Act (LOLA).

"Enacted in 1851, [LOLA] provides that a shipowner's liability shall not exceed the value of the vessel and pending freight for any loss, damage, or injury by collision, or any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of the owner. [Citation.] Basically, [LOLA] provides that a shipowner is not responsible for losses exceeding the value of the vessel and pending freight. Moreover, to streamline the distribution of losses in one setting, [LOLA] creates a procedure in admiralty to enjoin all pending suits and to compel them to be filed in a special limitation proceeding. [Citation.]. The function of the limitation proceeding is to determine (1) whether the vessel and its owner are liable at all; (2) whether the owner may in fact limit liability to the value of the vessel and pending freight; (3) the amount of just claims; and (4) how the fund should be distributed to the claimants." (In re Live Life Bella Vita LLC (9th Cir. 2024) 115 F.4th 1188, 1196 (Bella Vita), internal citations and quotation marks omitted.)

"[LOLA] and Admiralty Rule F set forth the specifics around the relevant procedure, which begins when the shipowner files a complaint in the district court in admiralty jurisdiction. [Citation.] First, the owner must file the complaint within six months after receiving written notice of a claim. [Citations.] Second, the owner must also deposit with the court the limitation fund—that is, an amount equal to the value of the owner's interest in the vessel and pending freight—or transfer interest in the vessel to a court-appointed trustee. [Citations.] Once both conditions are satisfied, all claims and proceedings against the owner related to the matter in question shall cease. [Citation.] The district court shall enjoin the further prosecution of any action or proceeding against the owner or the owner's property with respect to any claim subject to limitation in the action. [Citation.] The district court therefore has exclusive jurisdiction over the limitation proceeding, regardless of whether a claimant has already filed suit in state court." (Id. at pp. 1196-1197, internal citations, quotation marks, brackets, and ellipses omitted.)

Determining that LOLA was "incapable of execution without further instructions to courts," the United States Supreme Court "designed the procedures that govern a limitation action" and promulgated those procedures in the form of Admiralty Rule F. (Lewis v. Lewis & Clark Marine,

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Spring Street Courthouse, Department 12

| | |
|---|---|
| 21STCV08121 | April 22, 2025 |
| **NANCY FIEDLER, et al. vs TRUTH AQUATICS, INC., et al.** | 1:45 PM |

Judge: Honorable Carolyn B. Kuhl            CSR: Baila M. Strauss  CSR# 14251
Judicial Assistant: L. M'Greene              ERM: None
Courtroom Assistant: M. Miro                 Deputy Sheriff: None

---

Inc. (2001) 531 U.S. 438, 447 (Lewis), internal citations and quotation marks omitted.) These procedures are "intended to facilitate the proceedings of the owners of vessels for claiming the limitation of liability secured by the statute." (Id., internal citations and quotation marks omitted.) Referring to a vessel owner as the "plaintiff" in a limitation action, Admiralty Rule F states:

Upon compliance by the owner with the requirements of subdivision (1) of this rule all claims and proceedings against the owner or the owner's property with respect to the matter in question shall cease. On application of the plaintiff the court shall enjoin the further prosecution of any action or proceeding against the plaintiff or the plaintiff's property with respect to any claim subject to limitation in the action.

(Fed. R. Civ. P. Supp. Rules, rule F, subd. (3).)

On September 11, 2019, federal district court judge Percy Anderson issued an order pursuant to LOLA restraining suits brought against Owners or in rem suits brought against Owners' property. (See Felder Decl., Ex. B.) However, Plaintiffs subsequently informed Judge Anderson that they sought to exercise their right under 28 U.S.C. section 1333(1) to prosecute their claims against Owners "at law, before a jury, in a forum of their choosing." (Felder Decl., Ex. E, at p. 3.)

There is tension between LOLA and 28 U.S.C. section 1333(1), which is referred to as the "saving-to-suitors clause." (See, e.g., Bella Vita, supra, 115 F.4th at pp. 1196-1197.) The saving-to-suitors clause states that the federal district courts have jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." (28 U.S.C.A. § 1333, subd. (1), emphasis added.) "The saving-to-suitors clause preserves remedies and the concurrent jurisdiction of state courts over some admiralty and maritime claims. [Citation.] For instance, federal courts exercising admiralty jurisdiction do not empanel juries, so trial by jury is the classic example of a remedy that the saving-to-suitors clause protects." (Id. at p. 1196, internal citations, quotation marks, brackets, and ellipses omitted.) "The upshot of the saving-to-suitors clause is that admiralty plaintiffs may generally file an action in state court or federal court." (Id.)

In the federal limitation action pertaining to the instant proceeding, Plaintiffs made certain stipulations in order to have Judge Anderson lift the injunction. (Felder Decl., Ex. E.) On January 28, 2021, Judge Anderson ordered as follows:

The injunction prohibiting [Plaintiffs] … from prosecuting any and all suits, actions, or legal

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Spring Street Courthouse, Department 12

| | |
|---|---|
| 21STCV08121 | April 22, 2025 |
| **NANCY FIEDLER, et al. vs TRUTH AQUATICS, INC., et al.** | 1:45 PM |

Judge: Honorable Carolyn B. Kuhl  
Judicial Assistant: L. M'Greene  
Courtroom Assistant: M. Miro  

CSR: Baila M. Strauss  CSR# 14251  
ERM: None  
Deputy Sheriff: None

proceedings in any other forum … shall be lifted as to [Owners] who have expressly entered into the JOINT STIPULATON … .

(Felder Decl., Ex. F, at pp. 1-2.) Plaintiffs then filed their claims in this court.

Judicial Notice

Moving Defendants, relying on documents filed in litigation, seek judicial notice of two factual statements. Plaintiffs have not opposed this request. The court therefore grants the unopposed request and takes judicial notice of the following facts pursuant to Evidence Code section 452, subdivisions (d) and (h):

(1) Plaintiffs do not seek any rights or remedies under California law in these related proceedings, including but not limited to, any California state statute.
(2) Plaintiffs did not advise the federal court overseeing the limitation proceedings of any other parties under Federal Rules of Civil Procedure section 19, subdivision (c), or the potential of filing claims against Defendant Murata Electronics North America, Inc. or other entities.

Discussion

This Court Has Jurisdiction to Hear Plaintiffs' Wrongful Death and Survival Claims

Before addressing LOLA, this court first concludes that, despite Moving Defendants' arguments to the country, Plaintiffs are permitted to bring their federal maritime law claims in this court.

"State courts have concurrent jurisdiction with federal courts to entertain actions governed by admiralty law." (D'aquisto v. Campbell Industries (1984) 162 Cal.App.3d 1208, 1212.) "State courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States. … To give federal courts exclusive jurisdiction over a federal cause of action, Congress must, in an exercise of its powers under the Supremacy Clause, affirmatively divest state courts of their presumptively concurrent jurisdiction." (Garofalo v. Princess Cruises, Inc. (2000) 85 Cal.App.4th 1060, 1080, internal citations, quotation marks, and brackets omitted.) The saving-to-suitors clause "has long been interpreted to mean that state courts have concurrent jurisdiction over in personam maritime claims, i.e., claims against a person; admiralty's jurisdiction is exclusive only as to those maritime causes of action begun and carried on as proceedings in rem, that is, where a vessel or thing is itself treated as the offender and made the defendant by name or description in order to enforce a lien. [Citations.] Thus, California courts have concurrent jurisdiction over in personam maritime and

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
Civil Division
Central District, Spring Street Courthouse, Department 12

| | |
|---|---|
| 21STCV08121 | April 22, 2025 |
| **NANCY FIEDLER, et al. vs TRUTH AQUATICS, INC., et al.** | 1:45 PM |

Judge: Honorable Carolyn B. Kuhl         CSR: Baila M. Strauss  CSR# 14251
Judicial Assistant: L. M'Greene          ERM: None
Courtroom Assistant: M. Miro             Deputy Sheriff: None

---

admiralty claims." (Id., internal citations, quotation marks, and brackets omitted; italics in original.)

Accordingly, both California appellate courts and federal courts acknowledge that California superior courts have jurisdiction to hear wrongful death actions under admiralty law relating to death in territorial waters. (Simmons v. Ware (2013) 213 Cal.App.4th 1035, 1046-1047 [holding that California state courts have jurisdiction over "action involving the death of a nonseafarer within state waters"]; In re Williams Sports Rentals, Inc. (9th Cir. 2024) 90 F.4th 1032, 1036 [noting that maritime causes of action for wrongful death and survivor claims "are maritime claims over which California state courts have concurrent jurisdiction"].)

Judge Anderson Has Not Issued an Order in the Limitation Action that Would Require Dismissal or a Stay of this Litigation

The limitation action concerned a request by Owners to prevent any litigation brought against them or their property in connection with the fire on the Conception. And Judge Anderson entered an injunction staying or restraining "the institution or prosecution of any and all suits, actions or legal proceedings of any nature and description whatsoever, against [Owners], or the CONCEPTION, or any property of [Owners]." (Felder Decl., Ex. B, at p. 2.) But after certain stipulations were entered, Judge Anderson lifted that injunction so that Plaintiffs could bring suit against Owners. (Felder Decl., Ex. F, at pp. 1-2.)

Neither Judge Anderson's injunction, nor his order lifting that injunction prevent Plaintiffs from bringing claims against Moving Defendants. Moving Defendants are not the owners of the Conception. Thus, Plaintiffs were never enjoined from bringing claims against them. And when Judge Anderson lifted the injunction as to claims brought by Plaintiffs against Owners, he did not impose a stay on claims brought against third parties not contemplated in the limitation action.

LOLA Does Not Stay All Admiralty Actions in the Absence of a District Court Injunction Issued Under Admiralty Rule F

As noted above, Admiralty Rule F empowers a federal district court to issue an injunction staying or restraining "the further prosecution of any action or proceeding against the plaintiff or the plaintiff's property with respect to any claim subject to limitation in the action." (Fed. R. Civ. P. Supp. Rules, rule F, subd. (3).) Without this rule, LOLA is "incapable of execution" because there would be no procedure for district courts to determine a vessel owner's entitlement to a stay. (Lewis, supra, 531 U.S. at p. 447.)

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
**Civil Division**
Central District, Spring Street Courthouse, Department 12

| | |
|---|---|
| 21STCV08121 | April 22, 2025 |
| **NANCY FIEDLER, et al. vs TRUTH AQUATICS, INC., et al.** | 1:45 PM |

Judge: Honorable Carolyn B. Kuhl              CSR: Baila M. Strauss  CSR# 14251
Judicial Assistant: L. M'Greene                    ERM: None
Courtroom Assistant: M. Miro                    Deputy Sheriff: None

---

Moving Defendants' Demurrer is based on an inversion of the procedures created by the United States Supreme Court for the enforcement of LOLA. Moving Defendants appear to take the position that, until and unless a federal district court specifically allows admiralty law claims to be filed against a defendant, LOLA automatically stays the litigation of those claims, even when those claims are not brought against the owner of a vessel. Moving Defendants thus suggest that this court lacks jurisdiction until some further order is issued by Judge Anderson addressing whether Plaintiffs may bring claims against Moving Defendants.

Moving Defendants' position is not supported by any authority. LOLA, Admiralty Rule F, and the federal case law applying them, instead support the conclusion that an injunction staying litigation is a form of relief for which a vessel owner applies, and that litigation is not stayed or restrained until and unless a federal court in a limitation action issues such an injunction. As Moving Defendants' authority makes clear, "[t]he [federal] district court … has exclusive jurisdiction over the limitation proceeding, regardless of whether a claimant has already filed suit in state court." (Bella Vita, supra, 115 F.4th at pp. 1196-1197.) Whether this litigation should be stayed because Plaintiffs have brought claims against Moving Defendants, and because Moving Defendants may at some point file cross-claims against Owners, is indisputably a question for a federal district court to determine pursuant to LOLA and Admiralty Rule F. This court has no authority to adjudicate a limitation action and issue a stay under substantive and procedural federal law. Because Judge Anderson has not stayed Plaintiffs' claims against Moving Defendants, those claims may proceed here.

Moving Defendants argue in their Reply that, in order "to prevent inconsistencies and gain judicial efficiency," this court should stay these proceedings pending some future ruling by Judge Anderson in the limitation action. Moving Defendants have failed to demonstrate that Judge Anderson is currently considering the issue of whether to stay this litigation. Judge Anderson ordered the limitation action "administratively closed and removed from the Court's active caseload until further application by the parties or order of [the] Court." (Felder Decl., Ex. F, at p. 2.) Moving Defendants do not claim that they intend to petition Judge Anderson for any relief in the limitation action. An order by this court staying this litigation would thus not be in the interests of justice.

Failure to Join the Coast Guard

Moving Defendants suggest in passing that the Demurrer "may also challenge the failure to include other parties, such as the U.S. Coast Guard." (Defs' Dem., at p. 19.) Moving Defendants note that "Judge Anderson … dismissed [Plaintiffs' separate federal] case against the U.S. Coast

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Spring Street Courthouse, Department 12

| | |
|---|---|
| **21STCV08121** | April 22, 2025 |
| **NANCY FIEDLER, et al. vs TRUTH AQUATICS, INC., et al.** | 1:45 PM |

Judge: Honorable Carolyn B. Kuhl         CSR: Baila M. Strauss  CSR# 14251
Judicial Assistant: L. M'Greene          ERM: None
Courtroom Assistant: M. Miro             Deputy Sheriff: None

---

Guard on August 1, 2024, resulting in an appeal now pending before the Ninth Circuit." (Defs' Dem., at p. 17.) Moving Defendants then suggest in their Reply that, whether Plaintiffs can pursue claims here while also pursuing a separate federal action against the United States Coast Guard is an issue "for a federal court to decide given its exclusive admiralty jurisdiction or under its procedural rules concerning compulsory joinder of causes of action and parties all arising under the same transactions or occurrence and federal rules regarding related proceedings." (Defs' Dem. at p. 12.)

This court declines to stay or dismiss this action in light of a separate federal action against the United States Coast Guard. Apart from mentioning the action in passing, Moving Defendants fail to present any argument for why the separate action would require dismissal or a stay. Plaintiffs' Opposition adequately explains why Plaintiffs have not improperly split their cause of action and why the Coast Guard is not an indispensable party. (Opposition Brief at pp. 7-19.)

The Court and counsel argue the Hearing on Demurrer - with Motion to Strike (CCP 430.10) to Plaintiffs' Fourth Amended Master Complaint for Failure to State a Claim on Behalf of Doe Defendants.

The Court gives an oral tentative that the demurrer is overruled. The Court will issue the ruling in a separate minute order at a later date.

The Further Status Conference is called.

Responsive pleadings are to be filed within 45 days.

The discovery stay will remain in place until the next hearing.

Defendants have until 4/25/2025 to meet and confer with each other and give their position on expected records on the case and post the response on Case Anywhere.

Further Status Conference (All Cases) is scheduled for 05/29/2025 at 09:00 AM in Department 12 at Spring Street Courthouse.

Plaintiff Liaison Counsel is to file a discovery plan prior to the next hearing.

A Joint Status Report is to be filed by 5/27/2025.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
### Central District, Spring Street Courthouse, Department 12

| | |
|---|---|
| **21STCV08121** | April 22, 2025 |
| **NANCY FIEDLER, et al. vs TRUTH AQUATICS, INC., et al.** | 1:45 PM |

| | |
|---|---|
| Judge: Honorable Carolyn B. Kuhl | CSR: Baila M. Strauss  CSR# 14251 |
| Judicial Assistant: L. M'Greene | ERM: None |
| Courtroom Assistant: M. Miro | Deputy Sheriff: None |

Plaintiff's Liaison Counsel is to provide notice.