1  MATTHEW D. DAVIS (State Bar No. 141986)
2  mdavis@walkuplawoffice.com
   SPENCER J. PAHLKE (State Bar No. 250914)
3  spahlke@walkuplawoffice.com
   WALKUP, MELODIA, KELLY & SCHOENBERGER
4  650 California Street, 26th Floor
   San Francisco, CA 94108
5  Telephone:  415-981-7210
   Telecopier:  415-391-6965
6

7  *Attorneys For Respondents/Counterclaimants Nancy Fiedler; Estate Of Lisa
   Fielder; Matthew Guiney, Estate Of Marybeth Guiney; Olga Faynshteyn, Estate Of
8  Yuliya Krashennaya; Katie Osborne, Estate Of Daniel Garcia; Christina Quitasol,
   Estate Of Michael Quitasol; And Sarma Williams, Estate Of Vaidehi Devi Campbell
9  Williams*

10 [Addt'l Csl. for Other Respondents/Counterclaimants listed in the signature block]

11                    **UNITED STATES DISTRICT COURT**
12                    **CENTRAL DISTRICT OF CALIFORNIA**
13                         **WESTERN DIVISION**

14 | IN THE MATTER OF THE | Case No. 2:19-CV-07693 PA (MRWx) |
   COMPLAINT OF TRUTH
15 AQUATICS, INC. AND GLEN       Hon. Percy Anderson
   RICHARD FRITZLER and DANA
16 JEANNE FRITZLER, individually   Related Cases:
   and as Trustees of the FRITZLER  2:21-cv-07065-PA-MRW
17 FAMILY TRUSTS                  2:22-cv-00202-PA-MRW
   DTD 7/27/92 as owners and/or    2:23-cv-00985-PA-MRW
18 owners pro hac vice of the dive
   vessel CONCEPTION, OFFICIAL    **RESPONDENTS' AND COUNTER**
19 NUMBER 638133, FOR            **CLAIMANTS' JOINT**
   EXINERATION FROM OR           **MEMORANDUM IN OPPOSITION**
20 LIMITATION OF LIABILITY        **TO MURATA ELECTRONICS**
                                  **NORTH AMERICA, INC.'s**
21                                **MOTION TO SET ASIDE CLERK'S**
                                  **ENTRY OF DEFAULT;**
22                                **DECLARATION OF GRETCHEN M**
                                  **NELSON FILED CONCURRENTLY**
23
                                  **Date:  June 23, 2025**
24                                **Time:  1:30 p.m.**
                                  **Place: 9A – First Street Courthouse**
25

26

27

28

# TABLE OF CONTENTS

Page

I.    FACTUAL AND PROCEDURAL HISTORY ........................................ 1

II.   MENA'S PRESENT MOTION TO SET ASIDE THE DEFAULT......... 6

III.  ARGUMENT ....................................................................... 7

    A.   MENA Failed to Confer with Counsel for Counter-Claimants as
       Required by L.R. 7-3 ................................................................. 7

    B.   This Case Was Administratively Closed and MENA has Not Applied to
       Have it Restored to the Court's Active Docket. .................................... 8

    C.   This Court Should Reject MENA's Dilatory Effort to Set Aside the
       Default Because Leave to Set Aside a Default and to File a Late Claim is
       Not a Matter of Right But Turns on Equitable Considerations Within the
       Court's Discretion.  Here, MENA has Provided No Credible Justification
       For its Nearly 14 Month Delay in Seeking Relief.................................. 9

    D.   This Court Should Exercise Its Discretion Over MENA's Request in a
       Way That Neither Unseats the Protective Stipulation of Petitioners and
       Counter-Claimants Nor Subjects those Parties to Wasteful and
       Redundant Litigation .......................................................... 12

IV.   CONCLUSION ..................................................................... 20

i

RESPONDENTS' & COUNTER-CLAIMANTS' JT. MEM. IN OPPOSITION TO MURATA'S MOTION TO SET
ASIDE CLERK'S ENTRY OF DEFAULT                          CASE NO.:2:19-cv-07693 PA (MRWx)

1

# TABLE OF AUTHORITIES

2

**Cases**

3

Page No.

4

*American Ass'n of Naturopathic Physicians v. Hayhurst,*
   227 F.3d 1104 (9th Cir. 2000) ........................................................ 11

5

6

*American Commercial Lines, Inc. v. U.S.,*
   746 F.2d 1351 (8th Cir. 1984) ...................................................... 2, 9

7

8

*Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs,*
   398 U.S. 281 (1970) ........................................................................ 16

9

10

*American Dredging Co. v. Miller,*
   510 U.S. 443 (1994) ....................................................................... 18

11

12

*Bussey v. Macon Cnty. Greyhound Park, Inc.,*
   No. 3:10–CV–191–WKW, 2011 WL 1216296
   (M.D. Ala. March 31, 2011) ........................................................... 13

13

14

*Byrd v. Byrd,*
   657 F.2d 615 (4th Cir. 1981) ......................................................... 19

15

16

*Chelentis v. Luckenbach S.S. Co.,*
   247 U.S. 372 (1918) ....................................................................... 18

17

18

*City of Norfolk v. Safe Boats Int'l, LLC,*
   Civil Action 2:17cv159, 2017 WL 4112364
   (N.D. Va. August 25, 2017) ........................................................... 12

19

20

*Eitel v. McCool,*
   782 F.2d 1470 (9th Cir. 1986) .......................................................... 9

21

22

*Evich v. Connelly,*
   759 F.2d 1432 (9th Cir. 1985) ....................................................... 14

23

24

*FOC Fin. Ltd. P'ship v. Nat'l City Commer. Capital Corp.,*
   612 F.Supp.2d 1080 (D. Ariz. 2009) ............................................. 11

25

26

*Franchise Holding II, LLC v. Huntington Rests. Group, Inc.,*
   375 F.3d 922 (9th Cir. 2004) .......................................................... 10

27

28

ii

*In re Complaint & Petition of Williams Sports Rentals, Inc.*
    [*Willis v.* Williams *Sports Rentals, Inc.*],
    No. 2:17-cv-00653-KJM-JDP, 2024 WL 3594609
    (E. D. Cal. July 31, 2024)............................................................... 14,16

*In re Complaint of American Export Lines, Inc.*,
    568 F.Supp. 956 (S.D. N.Y. 1983) ................................................ 12

*In re Exxon Valdez*,
    484 F.3d 1098 (9th Cir. 2007) ...................................................... 19

*In re Holly Marine Towing*,
    270 F.3d 1086 (7th Cir. 2001) ...................................................... 17

*In re Live Life Bella Vita LLC,,*
    115 F.4th 1188 (2024) .................................................................... 7,17

*In re Matter of the Complaint of Hornblower Fleet, LLC*,
    Case No. 16-cv-2468 JM(LL), 2019 WL 2569551
    (S.D. Cal. June 21, 2019) ............................................................. 2

*In Re Miss Belmar II Fishing Inc.*,
    Civil No. 11-4757 (MLC)(LHG), 2014 WL 1217771
    (D. N.J. March 24, 2014)............................................................... 11

*In re the Complaint of Funk*,
    Case No. 21-cv-1046-MMA(RBB), 2021 WL 3472696
    (S.D. Cal. Aug. 6, 2021).............................................................. 2

*In the Matter of the Complaint of Cindia Deng*,
    Case No. C 13-02459 WHA 2014 WL 1347380
    (N.D. Cal. April 3, 2014)............................................................. 10, 11

*In the Matter of the Complaint of Star & Crescent Boat Co. Inc. v. Sunsplash Marina LLC*,
    549 F.Supp.3d 1145 (S.D. Cal. 2021) ......................................... 12

*Madruga v. Superior Court of California*,
    346 U.S. 556 (1954) ...................................................................... 18

iii

*Matter of G&J Fisheries, Inc.,*
　　598 F.Supp.3d, 18 (D. Mass. 2022) .............................................................. 11

*Matter of Redondo Special, LLC,*
　　699 S.Fupp.3d 893 (C.D. Cal. 2023) ............................................................ 11

*Meyer v. New England Fish Co. of Oregon,*
　　136 F.2d 315 (9th Cir. 1943) ...................................................................... 2, 11

*Mire v. Full Spectrum Lending Inc.,*
　　389 F.3d 163 (5th Cir. 2004) ........................................................................... 9

*Moragne v. States Marine Lines, Inc.,*
　　398 U.S. 375 (1970) ................................................................................. 14, 17

*Nancy Fiedler, et al. v. Truth Aquatics, Inc. et al,*
　　Los Angeles Superior Court Case No. 21STCV0812 ..................................... 4

*Negrete v. Allianz Life Ins. Co. of N. Am.,*
　　523 F.3d 1091 (9th Cir. 2008) ...................................................................... 16

*Newton v. Shipman,*
　　718 F.2d 959 (9th Cir. 1983) ........................................................................ 15

*Norfolk Shipbuilding & Drydock Corp. v. Garris,*
　　532 U.S. 811 (2001) ...................................................................................... 14

*Northland Cas. Co. v. HBE Corp.,*
　　160 F. Supp. 2d 1348 (M.D. Fla. 2001) ........................................................ 13

*Offshore Logistics v. Tallentire,*
　　477 U.S. 207 (1986) ...................................................................................... 19

*Paul v. Plank,*
　　Civil Action No. RDB-18-2239, 2023 WL 6290923
　　(D. Md. Sept. 27, 2023) ................................................................................ 12

*Phi Thi Nguyen v. County of Clark,*
　　732 F. Supp. 2d 1190 (W. D. Wa. 2010) ...................................................... 18

iv

*Convergent Wealth Advisors LLC v. Lydian Holding Co.*,
No. 12 Civ. 1199, 2012 WL 2148221 (S. D. N.Y. June 13, 2012).............. 13

*Quinn v. CGR*,
828 F.2d 1463 (10th Cir.1987)................................................................. 8, 9

*Red Cross Line v. Atlantic Fruit Co.*,
264 U.S. 109 (1924) ................................................................................... 18

*SEC v. Halek*,
537 Fed.Appx. 576 (5th Cir. 2013) ............................................................ 8

*Texas v. United States*,
523 U.S. 296 (1998) ................................................................................... 12

*Texas Gulf Sulphur Co. v. Blue Stack Towing Co.*,
313 F.2d 359 (5th Cir. 1963)..................................................................... 10

*Trump v. New York*,
592 U.S. 125 (2020) .................................................................................. 12

*United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*,
615 F.3d 1085 (9th Cir. 2010).................................................................... 10

*VIP Outdoors, Inc. v. Markel Am. Ins. Co.*,
Case No. 21-5132 RJB, 2021 WL 2550564 (W.D. Wash., June 22, 2021). 10

*Wells v. Liddy*,
186 F.3d 505 (4th Cir. 1999)...................................................................... 19

*Williams Sports Rentals, Inc. v. Willis*,
90 F.4th 1032 (9th Cir. 2024)......................................................... 13, 15, 16

*WRS, Inc. v. Plaza Entm't, Inc.*,
402 F.3d 424 (3d Cir. 2005)......................................................................... 9

*Yamaha Motor Corp., U.S.A. v. Calhoun*,
516 U.S. 199 (1996) ................................................................................... 14

RESPONDENTS' & COUNTER-CLAIMANTS' JT. MEM. IN OPPOSITION TO MURATA'S MOTION TO SET
ASIDE CLERK'S ENTRY OF DEFAULT                                    CASE NO.:2:19-cv-07693 PA (MRWx)

# Constitution, Statutes & Rules

U.S. Const. Art. III.......................................................................... 12

U.S. Const. Art. VI, cl. 2 ............................................................... 19

28 U.S.C. § 1333(1) ......................................................... 6, 13, 18

28 U.S.C. § 2283 ............................................................................ 16

Vessel Owners Limitation of Liability Act, 46 U.S.C. §§ 30501-30529 ........ *passim*

Fed R. Civ. P. 55(c) .......................................................... 7, 10, 11

Fed. R. Civ. P. Sup. R. A(2) ......................................................... 2

Fed. R. Civ. P., Supp. R. F(4) ................................................... 2, 9

Local Rules of the Central District of California
      Local Rule 7-3 ...................................................... 8
      Local Rule 7-5(a)................................................... 7

# Treatises and Other Sources

3 Benedict, *Admiralty* § 518, p. 542 (Knauth ed. 1940)……………………………10

1 Schoenbaum, *Admiralty & Maritime Law*§ 4:2, p. 257 (6th ed.)………………...18

*Black's Law Dictionary* 1294 (6th ed. 1990)…………………………………………18

Respondents/Counter-Claimants Nancy Fiedler; Estate of Lisa Fiedler; Matthew Guiney; Estate of Marybeth Guiney; Olga Faynshteyn; Estate of Yuliya Krashennaya; Katie Osborne; Estate of Daniel Garcia; Christina Quitasol; Estate of Michael Quitasol; Sarma Williams; Estate of Vaidehi Devi Campbell Williams; Cheng Leng Tan; Estate of Wei Tan; Chik Ping Yap; Sejay Tan: Yadira Alvarez; Estate of Berenice Felipe; Nina Huttegger; Julia Ahopelto, C.A. (a minor); Jean Anne Allen; Estate of Carol Diana Adamic; Estate of Steven John Salika; Estate of Tia Nicole Adamic Salika; Shirley Salika; James Adamic; Victoria Ellen Moore; Christine Dignam; Jasmine Lord; Yuka Hatashi Merritt; Viikram Singh; Susana Solano Rosas; Shruti Deopuraji; Robert Kurtz; Cherie McDonough; Kaustubh Nirmal; Gregory Krashenny; Seema Sharma; Anthony Beitzinger; Henry Garcia; Margaret Strom; Eric Baltz; Atlee Fritz; Richard X. Liu; Estate of Xiang Lin; Ariel Takvam; Kenneth Takvam; Mary R. Takvam; Mark Adamic; Angelika Adamic; Dominic Micael Selga; Estate of Fernisa June Sison; Nisa Shinagawa; Ryan Sims; Daniel Poh-Hock Chua; and Estate of Kristen Findstad (collectively "Counter-Claimants") respectfully submit this joint opposition to the motion of Murata Electronics North America, Inc. ("MENA") to set aside the Clerk's Entry of Default (ECF No. 157) in this action brought under the Vessel Owners Limitation of Liability Act ("LOLA"), 46 U.S.C. §§30501-30529, in order that MENA may file counter-claims for contribution and indemnity against Petitioners Truth Aquatics, Inc. and Glen Richard Fritzler and Dana Jeanne Fritzler, individually and as Trustees of the Fritzler Family Trusts Dtd. 7/27/92 ("Petitioners").

## I.    FACTUAL AND PROCEDURAL HISTORY

This LOLA action is one of several civil and one criminal case that arose from the September 2, 2019, fire that killed thirty-four people aboard the dive boat *Conception*. (ECF No. 1 at 2:14-18.) It was filed under the Vessel Owners Limitation of Liability Act ("LOLA"), 46 U.S.C. § § 30501-30529, by Conception's owners,

RESPONDENTS' & COUNTER-CLAIMANTS' JT. MEM. IN OPPOSITION TO MURATA'S MOTION TO SET ASIDE CLERK'S ENTRY OF DEFAULT                    CASE NO.:2:19-cv-07693 PA (MRWx)

Petitioners Truth Aquatics, Inc., Glenn Fritzler, and Dana Fritzler (collectively "Petitioners" or the "Fritzlers").  ECF No. 1 at 2:1-13.

"When a vessel owner files a complaint in district court for limitation of liability pursuant to statute, that court is empowered to establish a 'monition period' during which all claimants must file their respective claims under pain of default." *American Commercial Lines, Inc. v. U.S.,* 746 F.2d 1351, 1352 (8th Cir. 1984) (citing Fed. R. Civ. P., Supp. R. F(4)).[1]  On September 11, 2019, this Court issued its Order Directing Execution of Monition and Publication of Notice ("Monition Order"). (ECF No. 15.)  In the Monition Order, the Court ordered that:

> [A]ll persons and entities asserting claims with respect to that which the Complaint herein seeks exoneration from, or limitation of, liability for, to appear and answer the allegations of the Complaint, and to file their claims, with the Clerk of the Court, on or before the July 1, 2020.

(*Id.*, at 3:2-5.)  And on September 11, 2019, this Court issued its Order Restraining All Suits and Direction Monition to Issue in which the Court ordered that:

> [T]he institution or prosecution of any and all suits, actions or legal proceedings of any nature and description whatsoever, against

---

[1] The Federal Rules of Civil Procedure apply generally to proceedings in admiralty "except to the extent that they are inconsistent with [the Supplemental Rules for Admiralty]." Fed R. Civ. P. Supp. R. A(2).  "Federal Rules of Civil Procedure Supplemental Admiralty and Maritime Claims Rule F sets forth the procedure for bringing a limitation action." *In Re Matter of the Complaint of Hornblower Fleet, LLC,* Case No. 16-cv-2468 JM(LL), 2019 WL 2569551, at *3 (S.D. Cal. June 21, 2019).  According to Supplemental Rule F(4): "[T]he court shall issue a notice to all persons asserting claims with respect to which the complaint seeks limitation, admonishing them to file their respective claims with the clerk of the court and to serve on the attorneys for the plaintiff a copy thereof on or before a date to be named in the notice."  A court may "'enlarge the time within which claims may be filed'" under that Rule and give leave to file late claims under that Rule "'[f]or cause shown.'" *In re the Complaint of Funk,* Case No. 21-cv-1046-MMA(RBB), 2021 WL 3472696, *1 (S.D. Cal. Aug. 6, 2021) (quoting Fed. R. Civ. P. Supp. R. F(4)) (citing *Meyer v. New England Fish Co. of Oregon,* 136 F.2d 315, 316 (9th Cir. 1943)).

RESPONDENTS' & COUNTER-CLAIMANTS' JT. MEM. IN OPPOSITION TO MURATA'S MOTION TO SET
ASIDE CLERK'S ENTRY OF DEFAULT                                    CASE NO.:2:19-cv-07693 PA (MRWx)

PLAINTIFFS, or the CONCEPTION, or any property of PLAINTIFFS, whether presently ongoing, filed but unknown, or to be filed in the future, except in this proceeding, with respect to any claims for death, injuries, property loss, or damages, arising out of, resulting from, or in any manner connected with the fire on September 2, 2019, aboard the CONCEPTION which the Complaint in this action seeks exoneration from, or limitation of liability, be, and the same hereby are, stayed and restrained until the hearing and determination of this proceeding.

(ECF 16, 2:7-15.)

Counter-Claimants, who are the heirs, estates and victims of those who were killed in the *Conception* fire, filed and served their answers to Petitioners' First Amended Complaint as well as their counter-claims before that July 1, 2020, deadline. (See, e.g., ECF Nos. 17, 18, 20, 22, 25, 26, 27, 28, 29, 43, 46, 47, 49, 57, 58, 60, 61, 64, 65, 70, 71, 82, 83, 85, 87, 90, 95, 96, 97, 98, 104, 106, 107, 111, 114, 116, 117, 119, 120, 126, 129, 130, 132, 133, 135.)

On August 6, 2020, one month after the deadline expired, the Clerk took the defaults of all those "who have not timely filed and served a claim." (ECF No. 157.)

On January 22, 2021, the Petitioners and the Counter-Claimants executed and filed a "Joint Stipulation to Preserve and Protect Petitioners' Right to Limit Liability" providing, *inter alia,* that:

"(1) The Court shall continue to maintain the exclusive jurisdiction to decide PETITIONERS' rights to limit their liability under the Act;

(2) The injunction prohibiting COUNTER CLAIMANTS from prosecuting any and all suits, actions, or legal proceedings in any other forum (ECF No. 16 at 2:6–15) shall be lifted (and only lifted) as to the COUNTER CLAIMANTS who have expressly entered into this stipulation;

RESPONDENTS' & COUNTER-CLAIMANTS' JT. MEM. IN OPPOSITION TO MURATA'S MOTION TO SET ASIDE CLERK'S ENTRY OF DEFAULT                    CASE NO.:2:19-cv-07693 PA (MRWx)

(3) The instant action shall be stayed. COUNTER CLAIMANTS shall then file all their claims against PETITIONERS as related actions in the Stanley Mosk Courthouse of the Superior Court of Los Angeles and shall move, jointly and severally, to have them assigned to a single judge in the Complex Litigation Program under Cal. Court Rule 3.400 and Local Rule 3.3(k)."

(ECF No. 177 at 3:15-26.)

On January 28, 2021, this Court accepted that stipulation and issued its Order lifting the injunction barring Counter-Claimants "from prosecuting any and all suits, actions or legal proceedings in any other forum" and allowing Counter-Claimants to re-constellate their claims in the Complex Litigation Division of the Los Angeles Superior Court. (ECF No. 179.) The Court further stayed the present LOLA action pending the outcome of that re-constellated state court action and further ordered this case to be "administratively closed and removed from the Court's active caseload until further application by the parties or order of this Court." (ECF No. 179, 1:26-2:22.)

Thereafter, commencing on March 1, 2021, Counter-Claimants filed individual complaints against Petitioners, eight other named defendants, and 100 Doe Defendants in the Los Angeles Superior Court. (Declaration of Gretchen M. Nelson ("Nelson Decl."), ¶ 3.) Those Complaints were all related and assigned to the Hon. Carolyn Kuhl and consolidated in Complex Litigation Program under the lead case, *Nancy Fiedler, et al. v. Truth Aquatics, Inc. et al,* Case No. 21STCV0812 (the "State Court Actions"). (Nelson Decl., ¶ 3.) Judge Kuhl issued an Order directing the filing of a Master Complaint on November 1, 2021, along with short form complaints. (Nelson Decl., ¶¶ 3-4.) The Master Complaint and subsequent amendments to the Master Complaint named Petitioners, and various defendants involved in the construction or reconstruction of the *Conception*. (*Id.*)

4

Commencing in February 2024 after being permitted leave by the Department of Justice, through the U.S. Attorney for the Central District of California (the "DOJ") to visually inspect electronic devices and equipment that were recovered from the *Conception* and held by DOJ from shortly after the fire, Counter-Claimants filed amendments to their State Court complaints identifying additional defendants as DOE defendants. (Nelson Decl., ¶ 5.)  MENA was named as Doe Defendant 34.  (*Id.*) Thereafter, the DOE defendants located in the United States were served with the Summons and Complaints.  (Nelson Decl., ¶ 6.)[2]  MENA and the other DOE defendants then proceeded to defend the State Court Actions by filing, among other things, motions to quash, demurrers, and a motion to strike.  (Nelson Decl., ¶ 7.)[3]

Since at least April 14, 2024, MENA and the other DOE Defendants have known of the LOLA Action.  Among other things, counsel for MENA and the other DOE Defendants signed a Joint Status Conference Report in the State Court Actions, filed April 15, 2024, that identified this action and its status as follows

> Originally, Truth Aquatics Defendants filed an action in the United States District Court, Central District of California, seeking relief under the Vessel Owners Limitation of Liability Act (the "LOLA Action"), 46 U.S.C. § 30501-30511. See *In the Matter of Truth Aquatics, Inc. and Glen Richard Fritzler and Dana Jeanne Fritzler*, Docket No. 2:19-cv-07693-PA-MRW. After Plaintiffs answered Truth Aquatics Defendants' pleadings and the parties exchanged initial disclosures, the parties to the federal action reached a stipulation that permitted Plaintiffs to collectively file the instant action under the "savings to suitors" clause set forth in the

---

[2] Counter-Claimants are in the process of serving DOE defendants located outside of the United States through the processes of the Hague Convention.  (*Id.*)

[3] Counter-Claimants filed a Fourth Amended Master Complaint in the State Court Action on November 5, 2024 identifying the fifty-nine Doe Defendants by name and their Doe designation.  Nelson Decl., ¶ 6.)

RESPONDENTS' & COUNTER-CLAIMANTS' JT. MEM. IN OPPOSITION TO MURATA'S MOTION TO SET
ASIDE CLERK'S ENTRY OF DEFAULT                                    CASE NO.:2:19-cv-07693 PA (MRWx)

Federal Judiciary Act of 1789, 28 U.S.C. § 1333(1). Thereafter, Plaintiffs filed various Complaints, asserting claims against Truth Aquatics as well as the other Defendants named herein. As set forth below, Plaintiffs have alleged claims against Defendants under the General Maritime Law of the United States, as well as the Merchant Marine Act of 1920, commonly called the Jones Act.

Nelson Decl., ¶ 8, Exhibit 1, pp. 3-4, 15-27.)

And yet knowing full well of the existence of the LOLA action, MENA did nothing to pursue any claimed right in this action waiting instead to see how it might do in the State Court Actions.  MENA filed a lengthy demurrer in the State Court Actions seeking a dismissal on the grounds that (i) Counter-Claimants are purportedly barred from pursuing maritime claims in state court even under the Savings to Suitors clause, 28 U.S.C. § 1331(1), and (ii) the State Court Actions are barred because of the existence of this LOLA Action and MENA's alleged right to have any claim for contribution or indemnity heard in this action.  (Nelson Decl., ¶ 9; Exhibit 2.)  Certain of the other DOE Defendants filed two other demurrers, that MENA joined in, alternatively seeking dismissal of the claims based on the statute of limitations and the failure to state a claim as well as a motion to strike market share allegations.  (*Id.,* ¶ 10.)

Counter-Claimants opposed those demurrers.  The motions were heard on March 17, and April 22, 2025.  (Nelson Decl., ¶ 11.) The demurrers were overruled in their entirety and the motion to strike was granted.  (*Id..*)[4]

## II.    MENA'S PRESENT MOTION TO SET ASIDE THE DEFAULT

It was only after MENA's demurrer and the two other demurrers filed by the DOE Defendants (one of which was joined in by MENA) were overruled in their

---

[4] Certain of the Doe Defendants (although not MENA) have filed a petition for a writ of mandamus to the California Court of Appeal for the Second Appellate District. (Nelson Decl., ¶ 11.)

RESPONDENTS' & COUNTER-CLAIMANTS' JT. MEM. IN OPPOSITION TO MURATA'S MOTION TO SET
ASIDE CLERK'S ENTRY OF DEFAULT                                    CASE NO.:2:19-cv-07693 PA (MRWx)

entirety, that MENA launched this effort to lift the default, approximately 15 months after it was served with the State Court Actions, and at least 13 months after it was aware of the existence of this LOLA Action.[5]

MENA never met or conferred with counsel for Counter-Claimants prior to filing this motion. (ECF 193, 3:7-13.)  Nor did it apply to reopen this action and put it back on the Court's active calendar.  Rather, it just launched the motion under Fed. R. Civ. P., Rule 55(c) and Local Rule 7-5(a) seeking to set aside the August 6, 2020, Default Order the Clerk entered in this case, (ECF No. 157), claiming it should be permitted to file a late claim for contribution against the Petitioners, providing little, if any, justification for its delay.  (ECF No. 193-1 at 1:24-27.)

For these reasons alone the motion should be denied, but independent of MENA's counsels' failure to comply with this Court's Local Rules, the motion should be denied because of MENA's unjustified over 13 month delay in seeking relief.

Notwithstanding, should the Court decide to grant the requested relief, Counter-Claimants respectfully urge it to require MENA to accede to the "Joint Stipulation to Preserve and Protect Petitioners' Right to Limit Liability" that the parties to this action executed on January 21, 2021.  (ECF No. 177.)

## III.    ARGUMENT

### A. MENA Failed to Confer with Counsel for Counter-Claimants as Required by L.R. 7-3

According to L.R.7-3, "counsel contemplating the filing of any motion must first contact opposing counsel to discuss thoroughly, preferably in person, the

---

[5] MENA's counsel cannot argue that he was unaware of the opinion in *In Re Live Life Bella Vita LLC,* 115 F.4th 1188 (2024), since he was one of the counsel for defendants/appellees in that case.  Moreover, that opinion was issued September 12, 2024, more than 8 months prior to the filing of the present motion and three months prior to MENA filing its demurrer in the State Court Actions.

RESPONDENTS' & COUNTER-CLAIMANTS' JT. MEM. IN OPPOSITION TO MURATA'S MOTION TO SET
ASIDE CLERK'S ENTRY OF DEFAULT                                    CASE NO.:2:19-cv-07693 PA (MRWx)

substance of the contemplated motion and any potential resolution." MENA's motion

certifies that:

> This Motion is made following many conferences of counsel pursuant to
> L.R. 7-3 that took place on various dates as the issues were raised in state
> court with counsel for the Counter Claimants, along with Petitioners'
> counsel including on May 9, 2025, as well as on May 19, 2025 when
> counsel for Petitioners, who did not provide legal or factual basis for not
> stipulating to the relief requested or in opposition to the motion, agreed to
> set the hearing for this motion on June 23, 2025, provided filing was made
> on or before May 26, 2025

(ECF No. 193 at 3:7-13.) But that certification is inaccurate. MENA and its attorneys

never contacted counsel for the Counter-Claimants, in person or otherwise, to discuss

the substance of the present motion. Had MENA done so, Counter-Claimants would

have offered it the same accommodation being urged here, acquiescence in a

contribution claim despite the August 6, 2020 Default Order, (ECF No. 157), in return

for accession to the January 22, 2021, Protective Stipulation. (ECF No. 177.). The

first that Counter-Claimants' counsel knew of the motion was when they received

notice through the Pacer ECF filing and service system on May 23, 2025. (Nelson

Decl., ¶¶ 13-14.)

### B. This Case Was Administratively Closed and MENA has Not Applied to Have it Restored to the Court's Active Docket.

As noted above, the Court ordered this case administratively closed and

removed from its active caseload on January 28, 2021, (ECF No. 179 at 2:17-19).

Neither MENA nor anyone else has applied to reopen it.

When a court administratively closes a case, the closure generally operates as

"the practical equivalent of a stay." *Quinn v. CGR*, 828 F.2d 1463, 1465 & n. 2 (10th

Cir. 1987). "Unlike a stay however, an administratively closed case is not counted as

active although it remains on the docket...." *SEC v. Halek*, 537 Fed.Appx. 576, 579

(5th Cir. 2013). Use of the administrative-closure mechanism allows district courts "to remove from their pending cases suits which are temporarily active elsewhere (such as before an arbitration panel) or stayed (such as where a bankruptcy is pending)." *Mire v. Full Spectrum Lending Inc.*, 389 F.3d 163, 167 (5th Cir.2004); see e.g., *Quinn*, 828 F.2d at 1465 (administrative closure due to pending arbitration); *WRS, Inc. v. Plaza Entm't, Inc.*, 402 F.3d 424, 426 (3d Cir. 2005) (administrative closure due to the initiation of bankruptcy proceedings); *Halek*, 537 Fed.Appx. at 578 (administrative closure due to conditional settlement). Because an administratively closed case "still exists on the docket of the district court," it "may be reopened upon request of the parties or on the court's own motion." *Mire*, *supra,* 389 F.3d at 167.

Here, no request to reopen the case has been filed and accordingly the pending motion is procedurally deficient.

**C. The Court Should Reject MENA's Dilatory Effort to Set Aside the Default Because Leave to Set Aside a Default and to File a Late Claim Is Not a Matter of Right but Turns on Equitable Considerations within the Court's Discretion. Here, MENA has Provided No Credible Justification for its Nearly 14 Month Delay in Seeking Relief.**

"When a vessel owner files a complaint in district court for limitation of liability pursuant to statute, that court is empowered to establish a 'monition period' during which all claimants must file their respective claims under pain of default." *American Commercial Lines, Inc*., *supra,* 746 F.2d at 1352 (citing Fed. R. Civ. P., Supp. R. F(4)).  Although it has been held "that default judgments are ordinarily disfavored" *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986), when confronted with a motion to set aside a default, factors that the court may consider include the possibility of prejudice to the plaintiff, the merits of the claim, the sufficiency of the complaint, the possibility of a dispute concerning material facts, the amount of money at stake, whether the default was due to excusable neglect, and the strong policy

9

favoring decisions on the merits.  Thus, "it must be remembered that relief from a tardy claim is not a matter of right.  It depends upon an equitable showing." *Texas Gulf Sulphur Co. v. Blue Stack Towing Co.*, 313 F.2d 359, 363 (5th Cir. 1963).

Admiralty courts have handed down their own requirements for that showing; the older cases held that courts may grant permission to file late claims "'so long as the limitation proceeding is pending and undetermined, and the rights of the parties are not adversely affected[.]" *Id.* at 362 (quoting 3 Benedict, *Admiralty* § 518, p. 542 (Knauth ed. 1940)).  But cases handed down after the adoption of Fed.R.Civ.P. 55 and the merger of admiralty and law in 1966, hold that:

> Pursuant to Fed R. Civ. P. 55(c), the 'court may set aside an entry of default for good cause.' 'To determine good cause, a court must consider three factors: (1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether it had no meritorious defense; or (3) whether reopening the default judgment would prejudice the other party.' *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) (internal quotation marks and citations omitted).

*VIP Outdoors, Inc. v. Markel Am. Ins. Co.*, Case No. 21-5132 RJB, 2021 WL 2550564, *2 (W.D. Wash., June 22, 2021); see also see e.g. *In the Matter of the Complaint of Cindia Deng ("Matter of Deng")*, Case No. C 13-02459 WHA 2014 WL 1347380, *8 (N.D. Cal. April 3, 2014) (FRCP 55(c) allows a district court to "set aside an entry of default for good cause" in a LOLA case).

The three-part test is "disjunctive, such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default." *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010); see also *Franchise Holding II, LLC v. Huntington Rests. Group, Inc.*, 375 F.3d 922, 926 (9th Cir. 2004) ("As these factors are disjunctive, the district court was free to deny the motion 'if any of the three factors was true.'")

10

(quoting *American Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1108 (9th Cir. 2000)).

The burden of satisfying all three factors rests with the party seeking to set aside the default – in this case MENA.  *FOC Fin. Ltd. P'ship v. Nat'l City Commer. Capital Corp.*, 612 F.Supp.2d 1080, 1082 (D. Ariz. 2009); *Matter of G&J Fisheries, Inc.,* 598 F.Supp.3d, 18, 21 (D. Mass. 2022) ("burden of establishing good cause rests with the defaulted party" but recognizing also that the court should "resolve doubts in favor of a party seeking relief from entry of default").  Thus, when all is said and done, "'the granting or withholding of permission to file claims after the expiration of the monition period is discretionary with the trial court.'" *Matter of Deng*, *supra,* 2014 WL 1347380 *8 (quoting *Meyer v. New England Fish Co. of Oregon*, 136 F.2d 315, 316 (9th Cir. 1943)).

Given that MENA intentionally delayed more than 13 months before seeking to set aside the default, this Court should exercise its discretion and deny the motion. See, e.g., *Matter of Redondo Special, LLC,* 699 S.Fupp.3d 893, 898 (C.D. Cal. 2023) (refusing to set aside a default for a claimant in a LOLA action because the claimant had actual notice of the LOLA case and failed to provide any justification the delay in bringing the motion); *Matter of G&J Fisheries, supra,* 598 F.Supp.3d at 21-22 (argument by claimant seeking to set aside default to file claim in LOLA case did not satisfy the "good cause" standard under Fed.R.Civ.P. 55 because claimant only claimed it had no reason to seek indemnification or contribution until petitioner filed a claim against the claimant, finding that the "failure of [claimant] to pursue its interests in the pending litigation until this late hour weighs heavily against it"); *In Re Miss Belmar II Fishing Inc.,* Civil No. 11-4757 (MLC)(LHG), 2014 WL 1217771 ** 9-10 (D. N.J. March 24, 2014) (denying motion to set aside default in LOLA action where claimant had constructive notice of the action and took no action to join the suit "despite the passage of many months").

**D. This Court Should Exercise Its Discretion Over MENA's Request in a Way That Neither Unseats the  Protective Stipulation of Petitioners and Counter-Claimants Nor Subjects those Parties to Wasteful and Redundant Litigation.**

MENA seeks leave "to file a contribution claim." (ECF No. 193-1 at 10:14-15.)  The general principle "that an action for contribution and indemnity does not accrue until a party has paid out a claim for damages" has long been applied in admiralty. *City of Norfolk v. Safe Boats Int'l, LLC*, Civil Action 2:17cv159, 2017 WL 4112364 *3 (N.D. Va. August 25, 2017); see also *In re Complaint of American Export Lines, Inc.*, 568 F.Supp. 956, 960 (S.D. N.Y. 1983).

As the court explained in *In the Matter of the Complaint of Star & Crescent Boat Co. Inc. v. Sunsplash Marina LLC*, 549 F.Supp.3d 1145 (S.D. Cal. 2021), where a plaintiff-in-limitation tried to file a contribution claim against the builders of a 72-foot tour boat in a LOLA action it filed after one of that vessel's passengers was injured "during a high-speed turning maneuver," *id.* at 1152, "claims for equitable indemnity and contribution accrue once the party seeking indemnification or contribution incurs the loss of payment for the underlying claim or judgment not when the underlying injury occurs." *Id.* at 1169 (interior quotation marks and citations omitted).  It follows that MENA's claim for contribution is "not yet ripe." *Id.* MENA's motion thus presents the "complex" issue of whether a contribution claim that is "'dependent on "contingent future events that may not occur as anticipated, or indeed may not occur at all"'" comprises a justiciable case or controversy within the meaning of Article III of the United States Constitution. *Id.* at 1169, n. 14 (quoting *Trump v. New York*, 592 U.S. 125, 131 (2020) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).  Counter-Claimants are unaware of any circuit court of appeal considering that question in this context.[6]

---

[6] *Cf. Paul v. Plank*, Civil Action No. RDB-18-2239, 2023 WL 6290923 ** 5-6 (D.

12

Quite apart from the ripeness issue, our concerns are also directed at the Joint Stipulation the Petitioners and Counter-Claimants executed to protect Petitioners and Counter-Claimants' competing rights under LOLA and the saving-to-suitors clause. (ECF No. 177.)  As the Ninth Circuit made clear in *Williams Sports Rentals, Inc. v. Willis* ("*Willis*"), 90 F.4th 1032 (9th Cir. 2024):

> Although the Limitation Act gives vessel owners the right to limit their liability in an exclusive proceeding in federal court, claimants have a competing right to bring certain maritime claims in a forum of their choice. Under 28 U.S.C. § 1333(1), federal courts have exclusive jurisdiction over 'any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.'  The saving-to-suitors clause 'preserves remedies and the concurrent jurisdiction of state courts over admiralty and maritime claims' that are brought *in personam*, that is, against a person rather than a vessel. Trial by jury is the classic example of a remedy that limitation actions lack and that the saving-to-suitors clause protects.

90 F.4th at 1036 (internal brackets, citations, and ellipses omitted).  That admonition is instructive here.

---

Md. Sept. 27, 2023) ("This Court does not have subject matter jurisdiction over Plaintiffs' federal contribution claim as the contribution claim is not ripe."); *Convergent Wealth Advisors LLC v. Lydian Holding Co.*, No. 12 Civ. 1199, 2012 WL 2148221 *5 (S. D. N.Y. June 13, 2012) ("There is no ripe case or controversy as to common law indemnification or contribution, because there has not yet been a payment to a third party, which is required for the claim to accrue."); *Bussey v. Macon Cnty. Greyhound Park, Inc.*, No. 3:10–CV–191–WKW, 2011 WL 1216296 * 8 (M.D. Ala. March 31, 2011) ("typically, contribution and indemnity suits brought in anticipation of liability are not ripe until the obligation to pay in the underlying separate suit has been established by a judgment or settlement'"); *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1363 (M.D. Fla. 2001) (holding defendant's obligation to indemnify plaintiff "is not ripe for adjudication" while underlying lawsuit remains pending).

RESPONDENTS' & COUNTER-CLAIMANTS' JT. MEM. IN OPPOSITION TO MURATA'S MOTION TO SET ASIDE CLERK'S ENTRY OF DEFAULT                    CASE NO.:2:19-cv-07693 PA (MRWx)

The *Willis* case is a wrongful-death action that arose from a fatal jet-ski accident. *Id.* at 1034-1035. After the jet-ski owner filed a LOLA complaint seeking a limitation in admiralty, the decedent's personal representative, Latasha Willis, filed a counter claim under the general maritime remedies handed down in *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 409 (1970), *Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 820 (2001), *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 210 n.7 (1996), and *Evich v. Connelly*, 759 F.2d 1432, 1434 (9th Cir. 1985) – just as Counter-Claimants have done in this case. See, e.g. ECF No. 117 at 6:12-16.

> As permitted by the saving-to-suitors clause, Willis also filed a lawsuit in California state court. As with the claim she filed in the limitation proceeding, her state-court lawsuit asserted wrongful-death and survival claims, both of which are maritime claims over which California state courts have concurrent jurisdiction.

*Willis*, 90 F.4th at 1036. After the jet-ski's owner, Williams Sports Rentals, persuaded the district court to enjoin Willis' state court action, Willis appealed those injunctions to the Ninth Circuit, and the Ninth Circuit vacated them. To quote that court's third interlocutory opinion in part:

> Willis asked the district court to dissolve its injunction so she could add WSR to her state-court lawsuit. The district court denied the motion, and Willis appealed.
>
> In [the first] appeal, we held that '[t]he district court abused its discretion by failing to consider whether Williams Sports Rentals' limitation right would be prejudiced if the injunction were lifted.' *In re Williams Sports Rentals, Inc.*, 770 F. App'x 391, 392 (9th Cir. 2019) (*per curiam*). When the proceedings outside a limitation action involve 'a single claim,' we explained, a court's discretion to enjoin them is 'narrowly circumscribed and the injunction must be dissolved unless the

14

owner can demonstrate that his right to limit liability will be prejudiced.' *Id.* (quoting *Newton v. Shipman*, 718 F.2d 959, 961 (9th Cir. 1983) (*per curiam*)]). We vacated the judgment and remanded 'for the district court to conduct the proper prejudice inquiry in the first instance.' *Id.*

On remand, the district court did not conduct a prejudice inquiry, so Willis appealed again. In the second appeal, we reversed and remanded with instructions to dissolve the injunction. *Williams Sports Rentals Inc. v. Willis,* 786 Fed. Appx. 105, 106 (9th Cir. 2019) (*per curium*). We held that the district court must allow the state-court lawsuit to proceed because '[t]he record reflects that this is a single claim case; Willis has entered formal stipulations protecting WSR's right to limit liability; and WSR has not demonstrated prejudice to its right to limit liability.' *Id.*

*Willis*, 90 F.4th at 1036-1037 (internal ellipsis omitted).

Willis' state court lawsuit, like the pending State Court Actions before Judge Kuhl, pursued claims against tortfeasors other than the vessel owner. On remand, Willis invited those other tortfeasors to co-sign the protective stipulation she had filed in the LOLA action so they could press cross claims for contribution against WSR in state court, *id.* at 1037, just as Counter-Claimants would have done in this case had MENA met and conferred with them before filing the Motion at bar. But those tortfeasors declined her invitation in the mistaken belief that their refusal would permit the district court to enjoin her state court suit on the ground that it had "morphed into a multiple claimant action." *Id.* Unfortunately, the Eastern District made the same mistake; when those tortfeasors moved to lift the default order against late claims, that court not only granted their motion but at WSR's insistence also entered a sweeping new "injunction barring 'the continued prosecution of any legal proceedings of any nature, except in the present proceeding, in respect to any claim arising from' the accident." *Id.* at 1037 (brackets omitted).

Willis took yet another appeal, and after holding that "the non-party-specific injunction that the district court awarded exceeds its authority," the Ninth Circuit reversed and remanded the case for a third time, instructing the lower court "to narrow the injunction to proceedings against WSR, the only plaintiff in the limitation action." *Id.* at 1042.[7]  In the wake of that ruling, the non-vessel-owning tortfeasors quickly co-signed the previously proffered stipulation, and the Eastern District "dissolve[d] the narrowed anti-suit injunction" and "abate[d] all further proceedings in admiralty." *In re Complaint & Petition of Williams Sports Rentals, Inc*. [*Willis v. Williams Sports Rentals, Inc.]*, No. 2:17-cv-00653-KJM-JDP, 2024 WL 3594609, *5 (E. D. Cal. July 31, 2024).

Counter-Claimants respectfully urge the Court to consider the lessons of the *Willis* case when deciding whether to grant MENA's motion to set aside the default so that it might file a late claim.[8]  If MENA is allowed to file an inchoate contribution claim without acceding to the Protective Stipulation, we are concerned it might invite the same errors that produced three interlocutory appeals in *Willis*.

As things stand, this is a "single-claim case" similar to *Willis*.  That was the whole point of the Protective Stipulation the Petitioners and Counter-Claimants co-signed in January 2021.  (ECF No. 177.)  When the Ninth Circuit issued its opinion

---

[7] According to the Anti-Injunction Act: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. That Act lays down "an absolute prohibition against enjoining state court proceedings, unless the injunction falls within" one of the narrow exceptions authorized by Congress. *Negrete v. Allianz Life Ins. Co. of N. Am*., 523 F.3d 1091, 1100 (9th Cir. 2008) (quoting *Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970)). Although LOLA comprises such an injunction, it "authorizes an injunction only of proceedings 'against the owner,'" *Willis*, 90 F.4th at 1040 (quoting 46 U.S.C. § 30529(c)) (emphasis supplied by the court), and the only owners here are the Fritzlers.

[8] As it happens, MENA is represented by the same attorney who represented William Sports Rentals in *Willis*.

RESPONDENTS' & COUNTER-CLAIMANTS' JT. MEM. IN OPPOSITION TO MURATA'S MOTION TO SET
ASIDE CLERK'S ENTRY OF DEFAULT                    CASE NO.:2:19-cv-07693 PA (MRWx)

in *In re Live Life Bella Vita, LLC*, 115 F.4th 1188 (9th Cir. 2024), it joined its sister Circuits in holding that where, as here, "'all the claimants stipulate that their claims will not subject the shipowner to liability beyond the limitation amount, then he is fully protected and, even if there are multiple claimants, the suits can continue in state court without endangering any interest that the Act protects.'" *Id.* at 1201 (internal brackets omitted) (quoting *In re Holly Marine Towing*, 270 F.3d 1086, 1090 (7th Cir. 2001)).  But even though the "[c]ourts of appeals have disagreed over whether parties seeking indemnity or contribution count as separate claimants," *Willis,* 90 F.4th at 1038, *Bella Vita* decided that parties seeking contribution should be so counted.  115 F.4th at 1198.

Counter-Claimants' concern is that MENA is seeking leave to file a late claim not to vindicate its inchoate right to contribution but to morph this litigation back into a multi-claimant case in the hope that such a development will prejudice Counter-Claimants' saved rights to choose their forum and try their claims in state court.[9]

MENA supports that hope with the assertion that "there is a serious question of error and collusion among the Petitioners and Counter Claimants in that the basis for seeking to pursue the purely federal maritime claims in state court no longer exists with Counter Claimants acknowledging and the [state court] taking judicial notice that they do not seek any rights or remedies under California law, which would include their purported claim to a jury trial only available to them under state law and not in admiralty."  (ECF No. 193-1 at 11:21-26.)  MENA's argument that Counter-Claimants have no right to a jury trial in state court is just wrong.  That argument ignores the holding in *Willis* that "California state courts have concurrent jurisdiction" over the general maritime causes of action for wrongful-death and survival damages which the Supreme Court handed down in *Moragne.*  90 F.4th at 1036.  And, MENA's charge of "error and collusion" among the Petitioners and Counter-Claimants also

_____

[9] MENA's more than a one year delay in filing this motion supports that inference.

RESPONDENTS' & COUNTER-CLAIMANTS' JT. MEM. IN OPPOSITION TO MURATA'S MOTION TO SET ASIDE CLERK'S ENTRY OF DEFAULT                                    CASE NO.:2:19-cv-07693 PA (MRWx)

misconceives the saving-to-suitors clause, muddles the distinction between "rights" and "remedies," and overlooks the "reverse-*Erie* doctrine." In short, MENA's arguments that this Court is the only one capable of resolving the claims is incorrect.

One of the stated purposes of the Protective Stipulation is to preserve Counter-Claimants' "saved" remedies under California law. (ECF No. 177 at 3:2-3.) The First Judiciary Act granted admiralty jurisdiction to the nation's newly formed district courts, "saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it[.]" Judiciary Act of 1789, § 9, 1 Stat. 77 (1789) (emphasis added).[10] "Since the common law is competent in all cases where the suit is *in personam*," the cases and commentators agree that "a plaintiff in such cases may elect either to proceed in admiralty or to bring an ordinary civil action, with trial by jury, either at law in state court or in federal district court under federal diversity jurisdiction." 1 Schoenbaum, *Admiralty & Maritime Law* § 4:2, p. 257 (6th ed.) (emphasis added) (parenthetical comment omitted). In exercising its concurrent jurisdiction under the saving clause, "a state court may '"adopt such remedies, and attach to them such incidents, as it sees fit' so long as it does not attempt to make changes in the "substantive maritime law."'" *American Dredging Co. v. Miller*, 510 U.S. 443, 447 (1994) (quoting *Madruga v. Superior Court of California*, 346 U.S. 556, 561 (1954) (quoting *Red Cross Line v. Atlantic Fruit Co*., 264 U.S. 109, 124 (1924)) (internal ellipsis omitted). A remedy is "the means by which a right is enforced, whereas a right is a well-founded or acknowledged claim." *Black's Law Dictionary* 1294 (6th ed. 1990); see also *Chelentis v. Luckenbach S.S. Co.*, 247 U.S. 372, 384 (1918); *Phi Thi Nguyen v. County of Clark*, 732 F. Supp. 2d 1190, 1193 (W. D. Wa. 2010). As we saw earlier: "Trial by jury is the classic example of a remedy

---

[10] That so-called "saving-to-suitors clause" is currently codified with slightly different language in 28 U.S.C. § 1333(1), but the Supreme Court has declared that the recodified clause has the same meaning as the original clause in the 1789 Act. *Madruga v. Superior Court of California*, 346 U.S. 556, 560, n.12 (1954).

that limitation actions lack and that the saving-to-suitors clause protects." *Willis*, 90 F.4th at 1036.

The parties' substantive rights, on the other hand, will be governed by federal maritime law wherever this case is tried. Federal maritime law is the "supreme Law of the Land" under Article VI of the U.S. Constitution, *In re Exxon Valdez* (9th Cir. 2007) 484 F.3d 1098, 1101 (citing U.S. Const. Art. VI, cl. 2), and is therefore binding in a maritime tort action like this one whether the action is "'brought under federal admiralty jurisdiction, in state court under the saving-to-suitors clause, or in federal court under diversity jurisdiction.'" *Wells v. Liddy*, 186 F.3d 505, 524 (4th Cir. 1999) (quoting *Byrd v. Byrd*, 657 F.2d 615, 617 (4th Cir. 1981)).

In sum, "the 'saving-to-suitors' clause allows state courts to entertain *in personam* maritime causes of action, but in such cases the extent to which state law may be used to remedy maritime injuries is constrained by a so-called 'reverse-*Erie*' doctrine which requires that the substantive remedies afforded by the States conform to governing federal maritime standards." *Offshore Logistics v. Tallentire,* 477 U.S. 207, 222-223 (1986). It is thus difficult to understand why MENA believes "the basis for seeking to pursue the purely federal maritime claims in state court no longer exists." ECF No. 193-1 at 11:21-26. But it is easy to understand the profoundly prejudicial impact MENA's inchoate contribution claim could have on this litigation.

Judge Kuhl has been sedulously and capably administering this constelled action in a Complex Litigation Department of the Los Angeles Superior Court for more than four years now. (See, e.g., Nelson Decl., ¶ 12, Exhibit 3.). If MENA is allowed to file a late claim without acceding to the Protective Stipulation, this Court may next be called upon to reopen the LOLA proceedings and reinstate the anti-suit injunction. Because LOLA empowers federal courts to enjoin state court claims only against the vessel owner, *Willis*, 90 F.4th.at 1042, such a request would be profoundly disruptive. It would unseat the Protective Stipulation and destroy all the efficiencies and economies that Stipulation secured. It would also compel any other state court

19

defendants with potential contribution claims against the Fritzlers to prosecute those claims in the instant LOLA action. That in turn would re-constellate this still expanding litigation into two separate nebulae – one here, where this Court would have to convene a concursus over any claims filed against the Fritzlers, and one in the Los Angeles Superior Court where a jury would be called upon to enter a verdict on all the other parties' claims and defenses. Such a result would threaten both courts and all the litigants with untoward expense, disjointed discovery, redundant proceedings, and the prospect of inconsistent judgments.

## IV.    CONCLUSION

For all of the foregoing reasons, Counter-Claimants respectfully request that the Court deny MENA's motion, or in the alternative direct MENA to accede to the "Joint Stipulation to Preserve and Protect Petitioners' Right to Limit Liability" the parties filed, (ECF No. 177), as a condition precedent of lifting the August 6, 2020, Default Order, (ECF No. 157). Only then will the Court be able to simultaneously indulge MENA's desire to file an inchoate contribution claim while simultaneously preserving Counter-Claimants' constitutional right to try their claims to a state court jury and protecting the Petitioners' competing rights under the saving clause and the Limitation Act.

Dated:  June 2, 2025          Respectfully submitted,

NELSON & FRAENKEL, LLP

*/s/Gretchen M. Nelson*
Gretchen M. Nelson
gnelson@nflawfirm.com
Carlos F. Llinás Negret
cllinas@nflawfirm.com
601 South Figueroa Street, Suite 2050
Los Angeles, CA 90017
*Counsel for: Cheng Leng Tan, Estate of Wei Tan, Chik Ping Yap, Sejay Tan, Yadira Alvarez, Estate of Berenice Felipe, Nina Huttegger, Julia Ahopelto, C.A. (a minor),*

20

Jean Anne Allen, Estate of Carol Diana
Adamic, Estate of Steven John Salika, Estate
of Tia Nicole Adamic Salika, Shirley Salika,
James Adamic.

MCGUINN HILLSMAN AND PALEFSKY

/s/John R. Hillsman
John R. Hillsman
jrhillsman@mhpsf.com
220 Jackson Street, Suite 350
San Francisco, CA 94111
Counsel for: Victoria Ellen Moore, Christine
Dignam, Jasmine Lord, Yuka Hatashi Merritt,
Viikram Singh, and Susana Solano Rosas.

SALTZ MONGELUZZI AND BENDESKY
PC

/s/ Ernest D. DiSandro, Jr.
Jeffrey P Goodman (Pro Hac Vice)
jgoodman@smbb.com
Ernest D. DiSandro, Jr. (Pro Hac Vice)
ddisandro@smbb.com
1650 Market Street 52nd Floor
Philadelphia, PA 19103

PANISH SHEA AND BOYLE LLP

/s/Robert Samuel Glassman
Robert Samuel Glassman
11111 Santa Monica Boulevard Suite 700
Los Angeles, CA 90025
glassman@panish.law
Counsel for: Shruti Deopuraji, Robert Kurtz,
Cherie   McDonough,   Kaustubh   Nirmal,
Gregory Krashenny, Seema Sharma, Cherie
McDonough,   Anthony   Beitzinger,   Henry
Garcia, Margaret Strom, Eric Baltz, Atlee
Fritz.

KREINDLER & KREINDLER
NELSON & FRAENKEL LLP

*/s/Kevin Mahoney*
Kevin J. Mahoney (Pro Hac Vice)
kmahoney@kreindler.com
485 Lexington Avenue, 28th Floor
New York, NY 1001
*Attorneys for: Nina Hutteger*

GALINE FRYE FITTING AND FRANGOS

*/s/Ilya Demetrios Frangos*
Ilya Demetrios Frangos
ifrangos@gff-law.com
411 Borel Avenue Suite 500
San Mateo, CA 94402
*Counsel for: Richard X. Liu, Estate of Xiang
Lin.*

FIORE ACHERMANN ALC

*/s/Jennifer L Fiore*
Jennifer L Fiore
jennifer@thefafirm.com
Sophia M Acherman
sophia@thefafirm.com
340 Pine Street Suite 503
San Francisco, CA 94104
*Counsel for: Ariel Takvam, Kenneth Takvam,
Mary R. Takvam, Mark Adamic, Angelika
Adamic.*

RESPONDENTS' & COUNTER-CLAIMANTS' JT. MEM. IN OPPOSITION TO MURATA'S MOTION TO SET
ASIDE CLERK'S ENTRY OF DEFAULT                    CASE NO.:2:19-cv-07693 PA (MRWx)

WALKUP MELODIA KELLY WECHT AND SCHOENBERGER

/s/*Matthew D. Davis*
Matthew D. Davis
mdavis@walkuplawoffice.com
650 California Street, 26th Floor
San Francisco, CA 94108
*Counsel for: Christina Quitasol, Katie Osborne, Olga Faynshteyn, Sarma Williams, Nancy Fiedler, Matthew Guiney.*

LAW OFFICE OF W RUSSELL FIELDS

/s/*Aurelio Edward Fields*
Aurelio Edward Fields
ed@russfieldslaw.com
1792 Tribute Road Suite 400
Sacramento, CA 95815
*Counsel for: Dominic Micael Selga, Estate of Fernisa June Sison, Nisa Shinagawa.*

ARNOLD AND ITKIN LLP

/s/*Cory Itkin*
Cory Itkin
citkin@arnolditkin.com
Roland T Christensen
6009 Memorial Drive
Houston, TX 77007
*Counsel for: Ryan Sims.*

Todd M. Abbott, Esquire

/s/ *Todd M. Abbott*
Todd M. Abbott
tmabbottlaw@gmail.com
2127 Olympic Parkway, Suite 1006, No. 348
Chula Vista, California 91915
*Counsel for: Daniel Poh-Hock Chua; Estate of Kristen Findstad.*

23

## **FILER'S ATTESTATION**

The filing attorney attests that the filing attorney has obtained permission regarding the filing of this document from the signatories of this document. All parties authorize the filing attorney to affix their CM/ECF electronic signatures to this document.

Dated:  June 2, 2025                    NELSON & FRAENKEL

By: /s/  *Gretchen M. Nelson*
                    Gretchen M. Nelson

*Attorneys for Plaintiffs*

RESPONDENTS' & COUNTER-CLAIMANTS' JT. MEM. IN OPPOSITION TO MURATA'S MOTION TO SET ASIDE CLERK'S ENTRY OF DEFAULT                    CASE NO.:2:19-cv-07693 PA (MRWx)

# WORD COUNT ATTESTATION

In accordance with Local Rule 11-6.1, the undersigned attests that the foregoing brief, excluding the caption, the table of contents, the table of authorities, the signature block, the certification required by L.R. 11-6.2, and any indices and exhibits, contains 6,694 words, including the footnotes, as calculated by the Word operating system.  This attestation further notes that the Court's Standing Civil Order provides that supporting or opposing memorandum must be no more than 25 pages in length and this brief also complies with that Order.

*/s/ Gretchen M. Nelson*

Gretchen M. Nelson

RESPONDENTS' & COUNTER-CLAIMANTS' JT. MEM. IN OPPOSITION TO MURATA'S MOTION TO SET ASIDE CLERK'S ENTRY OF DEFAULT          CASE NO.:2:19-cv-07693 PA (MRWx)