B. Otis Felder (CSB 177628)
Otis.Felder@wilsonelser.com
*CSB Certified Admiralty*
 *& Maritime Law Specialist*
**WILSON, ELSER, MOSKOWITZ,**
  **EDELMAN & DICKER LLP**
555 South Flower Street, Suite 2900
Los Angeles, California 90071
Telephone:   (213) 443-5100
Facsimile:    (213) 443-5101

Attorneys for Claimant
MURATA ELECTRONICS NORTH AMERICA, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

IN ADMIRALTY

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF TRUTH AQUATICS, INC. AND GLEN RICHARD FRITZLER and DANA JEANNE FRITZLER, individually and as Trustees of the FRITZLER FAMILY TRUSTS DTD 7/27/92 as owners and/or owners pro hac vice of the dive vessel CONCEPTION, OFFICIAL NUMBER 638133, FOR EXINERATION FROM OR LIMITATION OF LIABILITY<br><br>Petitioners,<br><br>AND RELATED COUNTERCLAIMS | Case No.: 2:19-CV-07693 PA (MRWx)<br><br>Hon. Percy Anderson<br><br>Related Cases:<br>2:21-cv-07065-PA-MRW<br>2:22-cv-00202-PA-MRW<br>2:23-cv-00985-PA-MRW<br><br>**REPLY IN SUPPORT OF CLAIMANT MURATA ELECTRONICS NORTH AMERICA, INC.'S MOTION TO SET ASIDE CLERK'S ENTRY OF DEFAULT UNOPPOSED BY PETITIONING OWNERS WHO REQUESSTED IT AND IN REPLY TO COUNTER CLAIMANTS' OPPOSITION**<br><br>Hearing Date: Monday, June 23, 2025<br>Hearing Time: 1:30 p.m.<br>Hearing Dept.: Courtroom 6A<br><br>Action Filed: 9/5/2019<br>Trial Date: TBD |

### I. REPLY INTRODUCTION

Petitioning Owners sought (ECF No. 156) and obtained a Clerk's Entry of Default (ECF No. 157) on August 6, 2020. They did so without actual notice to Claimant MURATA ELECTRONICS NORTH AMERICA, INC. ("MENA") or

1  others they planned to sue on the express representation to the Court that they
2  "have complied with every commandment placed upon them," including notifying
3  all persons who *may* have claims so as to effectuate the primary purpose of this
4  Limitation of Liability Act ("LOLA") proceeding in aggregating all claims in an
5  admiralty concursus that "resolves every dispute in one action." (Owners' Memo at
6  p. 6, ln. 25-27 ("6:25-27") & 8:8-9 (ECF No. 156-1) (*citing In re Paradise*
7  *Holdings*, 795 F.2d 756, 761, 1987 AMC 104 (9th Cir. 1986)). Although
8  Petitioning Owners attested to mailing notice to Counter Claimants (Dec. of
9  Owners' Counsel at ¶8 (ECF No. 156-2), they did not attest to any effort at all to
10 determine if MENA or any others *may* have claims and certainly did not mail any
11 notice of these proceedings then or since to MENA, even though they and others
12 were contemplating and have now sued them for causing the tragic loss.
13     In taking the position they cannot be sued for contribution in state court as
14 this Court maintains exclusive admiralty jurisdiction over its LOLA proceedings
15 (*Ex parte Green,* 286 U.S. 437 (1932)), Petitioning Owners make no argument
16 opposing MENA's motion (ECF No. 193) to set aside the default so as to file a
17 claim. Recognizing the Clerk's Default is void *ab initio* due to insufficient notice
18 to all and there is good cause for setting it aside, Petitioning Owners' lack of
19 opposition amounts to consent under L.R. 7-17 to grant MENA's motion. *See also*
20 *Willis ex. rel. Estate of Williams v. Williams Sports Rentals, Inc.,* Case No. 2:17-
21 cv-00654-KJM-JDP, 2023 WL 3344092, 2023 U.S. Dist. LEXIS 81992, *3, 2023
22 AMC 280 (E.D. Cal. May 10, 2023)(setting aside default in LOLA proceedings).
23     In addition, there being no opposition to MENA's Request for Judicial
24 Notice (ECF No. 193-2), it is undisputed that Counter Claimants no longer seek
25 any rights or remedies under California law either here or in their related state
26 court cases, and no one ever advised this Court they planned to sue MENA or
27 others. *See id*. With this concession, there is no basis for proceeding in state court
28 or agreeing to stipulations Counter Claimants now demand to set aside the default.



1    Despite there being no argument or evidence submitted (1) that MENA had
2  notice before the default and intentionally ignored it (*Willis*, 2023 U.S. Dist.
3  LEXIS 81992, *6), (2) that MENA did not produce any products that caused the
4  fire establishing that it has a meritorious defense (*id.* at *7), and (3) there is no
5  prejudice to any party in setting aside the default (*id.*), Counter Claimants' novel
6  opposition asserts that MENA waited too long after the state court finally
7  considered Counter Claimants' fourth attempt to name it on April 2025 to seek
8  relief (Counter Claimants' Memo. at 9:13-17 (ECF No. 194). They also say this
9  while at the same time arguing "MENA's claim for contribution is 'not yet ripe.'"
10 *Id.* at 12:18. What is not ripe are their demands for stipulations and conditions for
11 the Court to set aside a clerk's default. Thus, MENA requests for the Court to set
12 aside the default so to hear these other issues in this important case.

## II. REPLY ARGUMENT

**A.     Good Cause Under Rules 1 & 55(c) Supports Setting Aside the Clerk's Default Obtained by Owners.**

Rule 1 of the Federal Rules of Civil Procedure provides that all the rules, which include Rule 55(c) as well as Supplemental Admiralty Rule F, should be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P., Rule 1. While the Petitioning Owners raise no objection in following this rule so as to set aside the default, Counter Claimants seek unnecessary delay.

While "[a]dmiralty law is considered one of the most complex areas of American law" (*Calhoun v. Yamaha Motor Corp., U.S.A.*, 216 F.3d 338, 340, 2000 AMC 1863 (3rd Cir. 2000), the admiralty rules "were not promulgated as technicalities restricting the parties as well as the admiralty court in the adjudication of relevant issues before it." *British Transport Com. v. United States*, 354 U.S. 129, 136, 157 AMC 1151 (1957). In setting aside a clerk's default in LOLA & Rule F proceedings, the same considerations under Rules 1 and 55(c)



MENA'S REPLY IN SUPPORT OF SETTING ASIDE CLERK'S DEFAULT - 3
313378883v.2

apply, with a presumption that a default is a drastic step only appropriate in extreme circumstances, which should be set aside especially considering much more liberality than setting aside a default judgment. See *Willis*, 2023 U.S. Dist. LEXIS 81992, *5 (*citing United States v. Signed Pers. Check No. 730 of Yubran S. Mesle,* ("*Mesle*"), 615 F.3d 1085, 1091, n.1 (9th Cir. 2010).

To delay setting aside the default obtained by the Petitioning Owners, Counter Claimants, who do not make any motion to strike MENA's motion as that would require a L.R. 7-3 meeting, argue that MENA failed to confer with each and every one of more than 35 attorneys representing the families and appear to assert that they would not oppose the motion if MENA agrees to their stipulation to shove this multi-claimant case into the "single claimant exception." While Counter Claimants' counsel, Attorney Nelson, attests that she was unaware of when MENA was going to file this motion (see Nelson Decl. at ¶ 14 (ECF No. 194-1), she does not and cannot attest she was unaware of the "substance of the contemplated motion" as directed by L.R. 7-3 as the issue raised here had been repeatedly discussed on the record before her and the Los Angeles Superior Court ("LASC").[1]

Disregarding a motion, especially one that merely seeks to set aside a default, based on a dispute in interpreting the Local Rule 7-3 meet and confer process, and not upon the merits of the motion, is an extreme outcome, one that this Court has consistently found entirely inappropriate, particularly when the spirit

---

[1] Indeed, as shown in their own Exhibit 2 (ECF 194-3), the issue of MENA needing to seek a contribution claim against Petitioning Owners, should the LASC overrule MENA's demurrer regarding jurisdiction, was raised multiple times before and at the April 22, 2025 hearing. In fact, the April 17, 2025 Joint Report submitted days before the hearing, which Counsel Nelson co-authored, notes to the LASC: "Counsel for Murata Electronics North America, Inc. and other Doe Defendants are meeting and conferring with Counsel for Truth Aquatics with respect to stipulation, or alternatively, motion to file claims in LOLA proceedings for contribution." MENA's Rebuttal Exhibit B at Sec. 3, 3:26-4:2 to Felder Decl. *See also* MENA's Rebuttal Exhibit C at 12:9-20; 15:8-16, 16:13-17.



of the Rule is followed and the party complaining has suffered no actual prejudice. *See Stewart v. Wachowski,* Case No. CV 03-2873 MMM (VBKx), 2004 U.S. Dist. LEXIS 26607, *1, 2004 WL 5618386, *1 fn. 2 (C.D. Cal. Sept. 28, 2004) (Because there was "some" attempt to comply, plaintiff's request to deny defendants' motion for failure to satisfy L.R. 7-3 is rejected).[2] *But see Lewis v. Heritage Auctions,* Case No. 2:25-cv-00748-AH-(PDx), 2025 U.S. Dist. LEXIS 100335, *4 (C.D. Cal. May 27, 2025)(where parties agree that there remains an issue as to which test to use, refiling after parties meet and confer is appropriate). Not only is there no showing of prejudice, but also Counter Claimants do not proffer any disagreement as to the criteria to set aside a default (Oppo at 11:3-12), and accordingly, no delay in violating of Rule 1 is necessary to hear the motion to set aside the default.

Likewise, Counter Claimants, although having filed an opposition in a case that was conditionally and administratively closed along with eight previous joint status reports (ECF No. 180, ECF No. 182, ECF No. 183, ECF No. 186, ECF No. 187, ECF No. 188, ECF No. 189, and ECF No. 192,), never once reported to the Court that either they or Petitioning Owners had provided MENA (or any other defendant they added in their state court case) notice of the default or an invitation to file a contribution claim in these proceedings so that this Court can follow the mandate by the Ninth Circuit presented by *In re Live Life Bella Vita LLC*, 115 F.

---

[2] *See also Santos v. TWC Admin., LLC*, Case No. CV 13-04799 MMM (CWx) 2014 U.S. Dist. LEXIS 200712, *6, 2014 WL 12703021, *6 (C.D. Cal. Sept. 15, 2014) ("The court has held, on several occasions, that striking an untimely motion filed in violation of Local Rule 7-3 is inappropriate where the non-movant suffered no prejudice…."); *Wilson-Condon v. Allstate Indem. Co.*, 2011 WL 3439272, *1 (C.D. Cal. Aug. 4, 2011) (Plaintiff did not meet and confer with defendant within the time period required by L.R. 7-3 but defendant suffered no prejudice as defendant was able to prepare and submit an opposition.); *Thomas v. U.S. Foods, Inc.*, No. 12-CV-1221 JST (JEMx), 2012 U.S. Dist. LEXIS 165307, 2012 WL 5634847, *1 n. 1 (C.D. Cal. Nov. 14, 2012) (denying request to deny motion for failure to comply with LR 7-3 due based on nature of motion).



4th 1188, 2024 AMC 517 (9th Cir. 2024). Petitioning Owners have no objection for the Court to do so. Even so, Counter Claimants, without any authority, argue that MENA should first file a motion to reopen the case before seeking to set aside the default creating further unnecessary delay contrary to Rule 1. Counter Claimants' form over substance argument is not a basis to delay the requested relief that the Court itself directed is available in administratively closing the case.[3]

### B. MENA Did Not Unreasonably Delay Seeking to Set Aside the Clerk's Default So as to File a Claim Against Petitioning Owners When MENA Was Not Required to Answer Until June 5, 2025, and Serve Its Cross-Claims Against Others.

In the April 22, 2025 hearing on its Demurrer raising issues of jurisdiction, MENA pointed out to the LASC that setting a deadline to answer Counter Claimants' Forth Amended Master Complaint would also under state court procedures require it to file it cross-complaint. MENA's Rebuttal Exhibit C at 40:1-9; *see also* MENA Exhibit A at 16 (ECF No. 193-3) (noting "Responsive Pleading are to be filed within 45 days"). Last Friday upon the 45-day deadline set by the LASC, MENA not only answered but also brought claims for contribution against other defendants, except Petitioning Owners, which can only be brought here. As such, it sought relief to bring a claim against Petitioning Owners well before, not after, it was due. Of course, had the LASC sustained MENA's demurrer, no answer or cross-complaint would have been due at all.

It should be recalled that in their Rule 26 Joint Report at 5:17-19 (ECF No.164) filed Aug. 28, 2020, just days after the clerk's default was entered, Petitioning Owners and Counter Claimants reported to this Court that it should set out deadlines as to joining parties after the anticipated release of the NTSB

---

[3] In its Order (ECF No. 179), the Court noted that it "orders this action administratively closed and removed from the Court's active caseload *until* further application by the parties *or order of this Court*." *Id.* (emphasis added). Implicit in MENA's request to set aside the default is for such an order allowing it to file a claim once the default is set aside which would then reopen the case.



report(s) in November 2020 in which they anticipated they would then be able to "identify potentially culpable third-parties (e.g. lithium-ion battery defendants)." *See also id.* at 16:18-20 ("Petitioners believe that there are third-party defendants (e.g., lithium ion battery defendants) who may be brought into the action pursuant to Fed. R. Civ. P. 14(c)"). Yet instead of doing that, and without leave of this Court or advising if of the impact in their annual reports and the need to consider the possibility of claims for contribution as required under *In re Live Life Bella Vita LLC*, *supra*, 115 F. 4th at 1199 (*citing Langnes v. Green*, 282 U.S. 531, 540, 1931 AMC 511 (1931)), they simply went ahead an added MENA and others to the state court action, eventually after four amended pleadings finding a sustainable claim, except for their market share theory which the LASC struck in April 2025.

      While also ignoring the most recent and applicable case to the issue of allowing late claims in LOLA proceeding to be added by setting aside a clerk's default (*i.e. Willis, supra,* 2023 WL 3344092) where Counter Claimants' counsel made similar but unconvincing objections, Counter Claimants, as they did there, direct this Court to three cases that have no application here. First, they point to *Matter of Redondo Special, LLC*, 660 F.Supp.3d 893, 898 (C.D. Cal. 2023), where the petitioning vessel owner sent certified mail notice of the claim deadline to all claimants, including passenger Briana Brittain, who returned a signed certified mail return receipt showing she had actual notice of the dealine. The vessel owner then filed a motion for default judgment (after obtaining a clerk's default) when no claim was filed. Claimant Brittain then filed a Rule 60(b)(4) motion to set aside the judgment, which the Court denied. *Id*. at 895. It did so because she had failed to show a lack of either subject matter jurisdiction or personal jurisdiction (*id.* at 898) as well as did not demonstate "a substantial likelihood of success on the merits" (*id.*), criteria not applcable to the Rule 55(c) inquiry here.

      Next, Counter Claimants direct the Court to non-binding, out of circuit authority, *Matter of G&J Fisheries*, 598 F. Supp.3d 18, 21-22 (D. Mass 2022),



where the court denied to set aside a default because the claimant, which again like Brittain, had notice of the application for default *before* it was made, neither sought "leave to file a late claim" (*id*. at 21), nor provided any explanation as to why it did not seek permision to submit a late claim (*id*.) Had it done so, as MENA does here, according to that court, it "would have faced more forgiving standards" under Rule 55(c). *Id.* at 22. Unlike that claimant, MENA, which was not provided actual notice before the default, proffered an explanation supporting good cause under Rule 55(c) as to its waiting to see if a viable claim survived LASC review.

       Finally, Counter Claimants refer the Court to anohter out-of-circuit case, *In Re Miss Belmar II Fishing Inc.*, Civil Case No. 11-4767, 2014 U.S. Dist. LEXIS 38233 *12-13 (D. N.J. March 14, 2014), where the court noted the various standards among circuits as to the reasons for a late filed claim, noting that a lack of actual notice amounted to sufficient cause in some circuits. *Id.* (*citing In re River City Towing Serv. Inc.,* 420 F.3d 385, 388 (5th Cir. 2005)). Ultimately, as that case had advanced, with settlements having been made (*id.* at *23) amounting to nearly four dozen stipulations of dimissal (*id*. at *24), the Magistate Judge concluded there would be prejudice both to the petitioning vessel owners and the remaining claimants by allowing a late claim. In contrast here, neither the LOLA proceedings before this Court nor the state court action have substantially advanced beyond the pleading stages (in fact, the state court case is not even at issue). The LASC action remains stayed because evidence under the control of this Court and the U.S. Attorney cannot be reviewed. See <u>MENA Exhibit C</u>. Accordingly, Counter Claimants' arguments are not persusaive in disallowing MENA's claim to be submitted and resolved on the merits, which first requires setting aside the default.

       **C.**    **Counter Claimants' Pre-Conditions Are Premature**.

       In addition to saying anything to prevent determination of the merits, Counter Claimants incredibly further assert they are unaware of any appellate



decision considering the issue of MENA's contribution rights and the Court's need to consider them despite repeated references in MENA's motion to the Ninth Circuit's ruling *In re Live Life Bella Vita LLC*, 115 F. 4th 1188, 2024 AMC 517 (9th Cir. 2024). Their demands that MENA and others stipulate that the matter falls under the single claimant exception is particularly problematic because Counter Claimants have waived seeking any claim under California state law, the necessary predicate for proceeding in state court under the saving to suitors clause. See *Bella Vita, supra*, 115 F.4th at 1196. While MENA asserts that this is not, nor ever was a proper case to be resolved in state court as it does not involve a single claimant or fit the criteria for such, Counter Claimants' forfeiture of state rights and remedies confirms the state court action is proper and that this Court should resume its exclusive admiralty jurisdiction. See MENA's Request for Judicial Notice (ECF No. 193-2), & Counter Claimants' Exhibit 2 (ECF 194-3). Until the Court considers these primary issues, the request for MENA and other to join their stipulation is premature.

### III. CONCLUSION

For the reasons set forth in its moving papers and discussed above, MENA requests the Court grant its request for judicial notice and set aside the default so that it may file a claim.

Respectfully submitted,

Dated: June 9, 2025

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**

By: _____
B. Otis Felder
*CSB Certified Admiralty & Maritime Law Specialist*
Attorneys for Claimant
MURATA ELECTRONICS NORTH AMERICA, INC.



## L.R. 11-6.2. Certificate of Compliance

The undersigned, counsel of record for Defendant MURATA ELECTRONICS NORTH AMERICA, INC. moving party, certifies that this brief contains 2803 words, which complies with the word limit of L.R. 11-6.1.

Dated: June 9, 2025

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**

By: _/s/ B. Otis Felder_

B. Otis Felder

