MATTHEW D. DAVIS (State Bar No. 141986)
mdavis@walkuplawoffice.com
SPENCER J. PAHLKE (State Bar No. 250914)
spahlke@walkuplawoffice.com
WALKUP, MELODIA, KELLY & SCHOENBERGER
650 California Street, 26th Floor
San Francisco, CA 94108
Telephone:  415-981-7210
Telecopier:  415-391-6965

*Attorneys For Respondents/Counterclaimants*
*Nancy Fiedler; Estate Of Lisa Fielder;*
*Matthew Guiney, Estate Of Marybeth Guiney;*
*Olga Faynshteyn, Estate Of Yuliya Krashennaya;*
*Katie Osborne, Estate Of Daniel Garcia;*
*Christina Quitasol, Estate Of Michael Quitasol;*
*And Sarma Williams, Estate Of Vaidehi Devi Campbell Williams*

*[Addt'l Csl. for Other Respondents/Counterclaimants listed in the signature block ]*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF TRUTH AQUATICS, INC. AND GLEN RICHARD FRITZLER and DANA JEANNE FRITZLER, individually and as Trustees of the FRITZLER FAMILY TRUSTS DTD 7/27/92 as owners and/or owners pro hac vice of the dive vessel CONCEPTION, OFFICIAL NUMBER 638133, FOR EXINERATION FROM OR LIMITATION OF LIABILITY | Case No. 2:19-CV-07693 FLA (MRWx)<br>Hon. Fernando L. Aenlle-Rocha<br>Related Cases:<br>2:21-cv-07065-PA- FLA<br>2:22-cv-00202-PA- FLA<br>2:23-cv-00985-PA- FLA<br><br>**RESPONDENTS' AND COUNTER-CLAIMANTS JOINT MEMORANDUM IN RESPONSE TO CLAIMANTS' JOINT MOTION TO SET ASIDE CLERK'S ENTRY OF DEFAULT**<br><br>**DECLARATION OF JOHN R. HILLSMAN AND REQUEST FOR JUDICIAL NOTICE FILED CONCURRENTLY**<br><br>**Date:**  October 24, 2025<br>**Time:**  1:30 p.m.<br>**Place:**  6B – First Street Courthouse |

# TABLE OF CONTENTS

Page

I.    FACTUAL AND PROCEDURAL HISTORY . . . . . . . . . . . . . . . . .  7

II.   SUMMARY OF OPPOSITION. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

III.  STANDARD OF DECISION . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

IV.   QUESTION FOR DETERMINATION . . . . . . . . . . . . . . . . . . . . .  14

V.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ... 14

   A. The Good-Cause Requirements in Federal Rule 55(c) and Admiralty
      Rule F 'Should Be Construed, Administered, and Employed by the
      Court and the Parties to Secure the Just, Speedy, and Inexpensive
      Determination of Every Action and Proceeding' . . . . . . . . . . . . . .  14

   B. Movants Cannot Evade those Good-Cause Requirements by Arguing
      That They Would Have Had the Right to Withhold Their Stipulation
      to Proceeding in State Court if They Had Only Been before This
      Court at the Outset . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

   C. Movants Have No Good Cause at This Juncture for Filing Claims for
      Indemnity and Contribution That Are Not Justiciable. . . . . . . . . .  19

   D. Movants Seek Only to Delay, Disrupt, and Undo Our Long-Running
      State Court Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

I.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25


FILERS' ATTESTATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . .  30

i

RESPONDENTS' & COUNTER-CLAIMANTS' JT. MEM. IN RESPONSE TO OCA'S, MENA'S, AND THE OTHER
DOE DEFENDANTS' MOTION TO SET ASIDE CLERK'S ENTRY OF DEFAULT
CASE NO.:2:19-cv-07693 FLA (MRWx)

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*American Commercial Lines, Inc.*,
    746 F.2d 1351 (8th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C11

*Bensch v. Estate of Umar*,
    2 F.4th 70 (2d Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

*Daimler Chrysler Corp. v. Cuno*
    547 U.S. 332 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Delta Country Ventures v. Magana*,
    986 F.2d 1260 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Eitel v. McCool*
    782 F.2d 1470 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Esta Later Charters, Inc. v. Ignacio*
    875 F.2d 234 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Exxon Shipping Co. v. Baker*
    554 U.S. 471 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*FOC Fin. Ltd. P'ship v. Nat'l City Commer. Capital Corp.*
    612 F.Supp.2d 1080 (D. Ariz. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Barracuda Tanker Corp.*
    409 F.2d 1013 (2d Cir. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 17

*In re Complaint of American Export Lines, Inc.*
    568 F. Supp. 956 (S. D. N. Y. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Live Life Bella Vita LLC*
    115 F. 4th 1188 (9th Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Williams Sports Rentals, Inc.*
    2023 U.S. Dist. LEXIS 81992, 2023 WL 3344092 (E.D. Cal. 2023) . . . . . . 23

ii

*In re Williams Sports Rentals, Inc.*
    770 F. App'x 391 (9th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*ITT Rayonier, Inc. v. Southeastern  Mar. Co.*
    620 F.2d 512 (5th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Lake Tankers Corp. v. Henn*
    354 U.S. 147 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Lewis v. Lewis & Clark Marine*
    531 U.S. 438 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Matter of Deng,*
    2014 U.S. Dist. LEXIS 46997, 2014 WL 1347380 (N.D. Ca. 1024) . . . . . . . 12

*Norwich & N.Y. Transp. Co. v. Wright*
    80 U.S. (13 Wall.) 104 (1871) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Odeco Oil and Gas Co., Drilling Div. v. Bonnette*
    74 F.3d 671 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

See *In re Live Life Bella Vita LLC*
    115 F.4th 1188 (9th Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Skyline Wesleyan Church v. California Dep't of Managed Health Care*
    968 F.3d 738 (9th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Sonner v. Premier Nutrition Corp.*
    971 F.3d 834 (9th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Star & Crescent Boat Co. Inc. v. Sunsplash Marina LLC*
    549 F.Supp.3d 1145 (S. D. Cal. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*TCI Group Life Ins. Plan v. Knoebber*
    244 F.3d 691 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Texas Gulf Sulphur Co. v. Blue Stack Towing Co.*
    313 F.2d 359 (5th Cir. 1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Texas v. United States*
    523 U.S. 296 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

iii

*Trump v. New York*
   141 S. Ct. 530 (2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Cassel*
   408 F.3d 622 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Kirilyuk*
   29 F.4th 1128 (9th Cir. 2022). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Ped*
   943 F.3d 427 (9th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Pepe*
   895 F.3d 679 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*
   615 F.3d 1085 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*VIP Outdoors, Inc. v. Markel Am. Ins. Co.*
   2021 U.S. Dist. LEXIS 116585, 2021 WL 2550564 (W.D. Wash., 2021). . . 12

*Virginia Int'l Terminals, Inc. v. Ceres Marine Terminals, Inc.*,
   879 F. Supp. 31, 33 (E. D. Va. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Volkswagen of Am. v. Superior Court*
   94 Cal. App. 4th 695 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Williams Sports Rentals Inc. v. Willis*
   786 Fed. Appx. 105 (9 Cir. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Williams Sports Rentals, Inc. v. Willis*
   90 F.4th 1032 (9th Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19, 23

## **Statutes**

28 U.S.C. § 1331(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 15

46 U.S.C. § 30501-29   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   7, 18

Cal. R. Ct. 3.400(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Fed. R. Civ. P. Supp. R. A(1)(a)(iv) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Fed. R. Civ. P. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16

Fed. R. Civ. P. 12(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Fed. R. Civ. P. 55(c),. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fed. R. Civ. P. 81(a)(1)-(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Admiralty Rule F. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

U.S. Const. Art., III, § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## **Other Authorities**

S. Rep. No. 94, 101st Cong., 1st Sess. at 4 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . 16

## I.    FACTUAL AND PROCEDURAL HISTORY

This action concerns the September 2, 2019, fire that killed thirty-four people aboard the dive boat *Conception*.  As Judge Anderson explained last June when he ruled on Murata Electronics of North America, Inc.'s ("MENA's") Motion to Set Aside the August 5, 2020, Default:

> The Petition commencing this action pursuant to the Vessel Owners Limitation of Liability Act ('LOLA'), 46 U.S.C. §§ 30501-29, was filed by the *Conception's* owners, Truth Aquatics, Inc., Glen Richard Fritzler, and Dana Jeanne Fritzler ('Petitioners'), on September 5, 2019.  The Court issued a Monitions Order on September 11, 2019, as provided by Rule F of the Supplemental Rules for Admiralty or Maritime Claims, requiring any claims against the vessel owners be filed before July 1, 2020.  (See *Docket No. 15*.)  The Court also issued an order enjoining all suits, actions or legal proceedings of any nature against the Petitioners or the vessel relating to Conception fire, whether known or unknown, filed or not yet filed.  (*Docket No. 16*.)  On August 5, 2020, the Clerk took the defaults of all those who have not timely filed and served a claim.  (*Docket No. 157.*)  On January 22, 2021, the Petitioners and Counter-Claimants filed a stipulation lifting the injunction to permit the Counter-Claimants to file and pursue their claims against Petitioners in state court ('Stipulation').  (*Docket No. 177.*)  Because the Counter-Claimants elected to pursue claims in state court against Petitioners and others under the saving-to-suitors clause, 28 U.S.C. § 1331(1), the parties sought to stay this action pending resolution of the state court proceedings.  The Stipulation also contained certain provisions to protect the rights of Petitioners to limit their liability under LOLA.  The Court issued an order accepting the

1

parties' Stipulation and also stayed this action pending further application by the parties or order of Court. (*Docket No. 179*.)

Commencing on March 1, 2021, Counter-Claimants filed individual complaints against Petitioners, eight other named defendants,[1] and 100 Doe defendants in Los Angeles County Superior Court. The complaints were related and consolidated under the lead case, *Nancy Fiedler, et al. v. Truth Aquatics, Inc. et al*., Case No. 21STCV0812 ('State Court Actions'). Counter-claimants filed a Fourth Amended Master Complaint ('MC') on November 5, 2024, identifying 59 of the previous Doe defendants, including MENA, by name. MENA and other Doe defendants responded to the MC by filing demurrers among other motions. On April 22, 2025, the demurrers were overruled and the Doe defendants, including MENA, were ordered to respond to the MC by June 6, 2025. MENA then filed its Motion to be relieved from the clerk's entry of default in this action so that it could file a counter-claim against Petitioners in this action for indemnity and contribution.

(*ECF No. 199* at 1-2.)

This Court denied MENA's Motion, without prejudice, on June 17, 2025. Olympus Corporation of the Americas ("OCA"), MENA, and nineteen other "Doe Defendants" (collectively "Movants") renewed it on September 19, 2025.

## II.    SUMMARY OF OPPOSITION

LOLA is a shield, not a sword. It protects "shipowners charged with wrongdoing committed without their privity or knowledge," *Exxon Shipping Co. v. Baker,* 554 U.S. 471, 517 (2008), not manufactures or distributors facing products

---

[1] Seaway Boat Co., Robert Stapp, Roy Hauser, Russel Izor, Daniel Bader, Ventura Harbor Boatyard, Langkilde Fire Protection Services, and Langkilde's Fire Protection.

claims.  The Act should never be used – least of all by Movants like these – as "'an offensive weapon'" to "'deprive suitors of their common-law rights'" to proceed in state court.  *Lake Tankers Corp. v. Henn*, 354 U.S. 147, 152 (1957).  Our opponents are misusing LOLA when they urge this Court to undo four years of state court litigation just so they can assert indemnity-and-contribution claims that are not yet justiciable.

"[I]n determining whether to set aside entry of default or default judgment, a district court must consider three factors: (1) whether the moving party's own culpable conduct led to the default; (2) whether the nonmoving party would be prejudiced by setting aside the default; and (3) whether the moving party has no meritorious defense." (*ECF No. 199* at 3.)  As this Court ruled last June:

> Here, the factor that weighs against granting MENA's Motion at this time is the potential prejudice to Counter-Claimants.  MENA's Motion and Reply speak only to the lack of prejudice to Petitioners, and ignore or minimize the prejudice Counter-Claimants would suffer if relieving MENA of its default triggers a resumption of the proceedings here.  The Ninth Circuit has held that in LOLA actions, district courts must consider both actual and potential third-party claims – including claims for indemnity and contribution – in determining whether to permit state court litigation against the vessel owners to proceed.  See *In re Live Life Bella Vita LLC,* 115 F.4th 1188, 1200 (9th Cir. 2024). In granting the Stipulation allowing Counter-Claimants to pursue their state court claims against Petitioners as an exception to the monition injunction, the Court agreed to a process whereby Counter-Claimants' claims could be litigated in a consolidated proceeding in state court prior to returning to this Court to finally adjudicate the LOLA issues. Permitting MENA and other potential claimants to proceed without the

protections afforded to Petitioners by the stipulated conditions would involve undoing the four years the Counter-Claimants have spent litigating on not just their claims against Petitioners in state court in a manner consistent with the savings to suitors clause and their right to a jury trial, but also their state law claims against MENA and the other defendants named in the operative complaint in the state court action.

Given MENA's failure to properly address the prejudice to Counter-Claimants that would be caused by the Court granting MENA's Motion, and MENA's refusal to abide by the terms of the Stipulation, as  Counter-Claimants suggested in their Opposition, the Court concludes that MENA has not established the "good cause" necessary to justify relief from the default.  The Court therefore denies MENA's Motion without prejudice. In light of the Court's denial of MENA's Motion without prejudice, the number of similarly-situated newly-added defendants in the state court action, and the potential inefficiency of those defendants separately seeking relief similar to that sought by MENA, the Court orders Counter-Claimants to provide a copy of this Order to all defendants they have named in the state court action by no later than July 7, 2025.  Counter-Claimants shall also notify the defendants named in the state court action that this Court has set a deadline of October 20, 2025, for hearing any Motions for Relief from the Default entered on August 5, 2020.  Any Motion for Relief from Default shall be filed in accordance with Local Rule 6-1 in advance of the October 20, 2025, deadline for hearing such Motions. The Court also orders that prior to filing any such Motions for Relief from Default, the moving party must meet and confer in accordance

4

with Local Rule 7-3 with all parties involved in the state court action, including Counter-Claimants.

(*Id.* at 3-4.)

As we wrote opposing counsel on September 9, 2025, we "will not oppose your motion provided you join the protective stipulation the parties signed back in 2021." (*Exhibit 1* at 9.)  They replied that they could "not accede" to that stipulation. (*Id.* at 7.)   After Petitioners confirmed that they "would object to any relief that would lift the current stay of the LOLA action"   (*id.* at 9.), we reminded our opponents:

> [Your clients'] claims are derivative and will not accrue much less be ripe for determination until some or all of those [clients] have been adjudged liable to the families.  Since Judge Anderson has no power to make that adjudication, if you [] won't sign the protective stip., the families will ask Judge Anderson to keep [] *ECF No. 179* in place until we get a verdict or a settlement in state court.

> With that in mind, [we] will stipulate to your good faith and accede to the filing of your derivative cross claims if your clients will agree, in turn, to leave *ECF No. 179* in place until those cross claims become justiciable by virtue of a judgment or settlement in state court.

(*Id.* at 2.)   Opposing counsel declined, responding: "We believe it is premature to discuss whether the stay (*ECF No. 179*) would remain in place, as that goes beyond the substance of and relief requested in our motion."  (*Id.* at 1.)

The belief that it is premature to discuss whether our stay should remain in place is wrong.  Judge Anderson stayed the LOLA proceedings so the parties could resolve their underlying dispute in state court.  (*ECF No. 179* at 2:3-7.)  By refusing to sign the Stipulation, Movants clearly hope not just to set aside the Default but also to disrupt the process by which this Court preserved Counter-Claimants' jury

5

rights and Petitioners' LOLA rights.  It is axiomatic that all the Federal Rules, including Admiralty Rule F, "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.  Movants' request for leave to file non-justiciable claims is an affront to that axiom.

## III.  STANDARD OF DECISION

"When a vessel owner files a complaint in district court for limitation of liability pursuant to statute, that court is empowered to establish a 'monition period' during which all claimants must file their respective claims under pain of default." *American Commercial Lines, Inc*., *supra,* 746 F.2d at 1352.  Although "default judgments are ordinarily disfavored" *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986), "it must be remembered that relief from a tardy claim is not a matter of right. It depends upon an equitable showing."  *Texas Gulf Sulphur Co. v. Blue Stack Towing Co.*, 313 F.2d 359, 363 (5th Cir. 1963).

Before the merger of law and admiralty, LOLA courts allowed late claims "so long as the limitation proceeding is pending and undetermined, and the rights of the parties are not adversely affected[.]" *Id.* at 362.  But cases handed down since the merger hold that:

> Pursuant to Fed R. Civ. P. 55(c), the 'court may set aside an entry of default for good cause.' 'To determine good cause, a court must consider three factors: (1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether it had no meritorious defense; or (3) whether reopening the default judgment would prejudice the other party.'

*VIP Outdoors, Inc. v. Markel Am. Ins. Co.*, 2021 U.S. Dist. LEXIS 116585, 2021 WL 2550564, *2 (W.D. Wash. 2021).  That test is "disjunctive, such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default."  *United States v. Signed Pers. Check No. 730 of Yubran S.*

*Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010). The burden of persuasion rests on the moving party, *FOC Fin. Ltd. P'ship v. Nat'l City Commer. Capital Corp*., 612 F.Supp.2d 1080, 1082 (D. Ariz. 2009), and the decision to grant or deny relief is discretionary. *Matter of Deng*, 2014 U.S. Dist. LEXIS 46997, 2014 WL 1347380 * 8 (N.D. Ca. 1024). As this Court ruled last June:

> Here, the factor that weighs against granting MENA's Motion at this time is the potential prejudice to Counter-Claimants. MENA's Motion and Reply speak only to the lack of prejudice to Petitioners, and ignore or minimize the prejudice Counter-Claimants would suffer if relieving MENA of its default triggers a resumption of the proceedings here.

*ECF No. 199* at 3.

## IV.   THE QUESTION FOR DETERMINATION

Now Movants have renewed MENA's Motion, the question for determination is not whether any culpability on their part led to the Default, or whether a meritorious claim for indemnity or contribution might accrue to some or all of them once the state court action has been concluded, but whether setting aside the Default at this juncture would prejudice Counter-Claimants, Petitioners, and the original state court Defendants by undoing years of litigation in Los Angeles Superior Court and overturning the stipulated process by which this Court streamlined the case and preserved the parties' conflicting rights.

## V.   ARGUMENT

### A. The Good-Cause Requirements in Federal Rule 55(c) and Admiralty Rule F(4) Should Be Construed, Administered, and Employed by the Court and the Parties to Secure the Just, Speedy, and Inexpensive Determination of Every Action and Proceeding

Since the merger of law and admiralty, the Federal Rules of Civil Procedure – and Fed. R. Civ. P. 1 in particular – have applied to all federal proceedings including "actions for exoneration from or limitation of liability." Fed R. Civ. P.

7

RESPONDENTS' & COUNTER-CLAIMANTS' JT. MEM. IN RESPONSE TO OCA'S, MENA'S, AND THE OTHER DOE DEFENDANTS' MOTION TO SET ASIDE CLERK'S ENTRY OF DEFAULT
CASE NO.:2:19-cv-07693 FLA (MRWx)

Supp. R. A(1)(a)(iv). Indeed, Rule 1 was amended in 1966 to dictate that "'these rules govern the procedure in the district courts of the United States of all suits of a civil nature whether cognizable as cases at law or in equity or in admiralty.'" *Bensch v. Estate of Umar,* 2 F.4th 70, 76 (2d Cir. 2021) (quoting Fed. R. Civ. P. 1 (1966)) (brackets omitted). That last clause was removed as surplus in 2007. *Id.* Today, Rule 1 simply reads:

> These rules govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81.[2] They should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.

That admonition is especially resonant in cases, like ours, involving "the complex interaction of federal and state jurisdiction arising from what the Supreme Court has called the 'tension' between the Limitation of Liability Act and the Saving-to-Suitors clause in 28 U.S.C. § 1331(1), which preserves to admiralty plaintiffs all remedies, including trial by jury, to which they are otherwise entitled." *Bensch,* 2 F.4th at 73.

LOLA was passed in 1851 to encourage investment in clipper ships, *Norwich & N.Y. Transp. Co. v. Wright*, 80 U.S. (13 Wall.) 104, 121 (1871), and is a "vestige of a time gone by." *Esta Later Charters, Inc. v. Ignacio*, 875 F.2d 234, 235 (9th Cir. 1989). It "provides shipowners a generous measure of protection not available to any other enterprise in our society", *id.* at 239, and can be misused in cases like ours "to delay prosecution of claims not covered by the statute[.]" *In re Barracuda Tanker Corp.*, 409 F.2d 1013, 1015 (2d Cir. 1969). Although Congress acknowledges the courts' suggestion that LOLA be repealed, see S. Rep. No. 94,

---

[2]    (1) Prize Proceedings, (2) Bankruptcy Proceedings, (3) Citizenship Proceedings, (4) Special Writs, and (5) Proceedings Involving a Subpoena. Fed. R. Civ. P. 81(a)(1)-(5).

101st Cong., 1st Sess. at 4 (1989), "the statute remains on the books, a sad reminder of the power of legislative inertia." *Delta Country Ventures v. Magana*, 986 F.2d 1260, 1267 (9th Cir. 1993) (Kozinski J. dissenting).

LOLA, moreover, "is not a model of clarity" – it was "badly drafted even by the standards of the time" and failed to specify the procedures for administering the remedy it codified. *Lewis*, 531 U.S. at 447. The Supreme Court spelled out those procedures in Admiralty Rule F. According to Rule F(4), "the court shall issue a notice to all persons asserting claims with respect to which the complaint seeks limitation, admonishing them to file their respective claims with the clerk of the court and to serve on the attorneys for the plaintiff a copy thereof on or before a date to be named in the notice." Rule F(4) further provides that "[f]or cause shown,'" a district "'court may enlarge the time within which claims may be filed." Although Movants contend that they have satisfied Rule F(4) (*ECF No. 203-1* at 12-19), the Rule "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination" of cases like this one. Fed. R. Civ. P. 1.

### B. Movants Cannot Evade those Good-Cause Requirements by Arguing That They Would Have Had the Right to Withhold Their Stipulation to Proceeding in State Court If They Had Only Been before This Court at the Outset

Relying on *In re Live Life Bella Vita LLC*, 115 F. 4th 1188, 1201-1202 (9th Cir. 2024) and *Odeco Oil and Gas Co., Drilling Div. v. Bonnette*, 74 F.3d 671, 675 (5th Cir. 1996), Movants argue that "this matter never would have been allowed to proceed in state court in the first instance, and there would not have been four years of state court litigation to 'undo,' if all claimants to the limitation fund had been before this Court at the outset." (*ECF No. 203-1* at 8:17-20). They hope to evade the good-cause requirement by insisting that "any one or more of them would have had the right to withhold its stipulation to proceeding in state court" had they been

party to the LOLA action when this Court lifted the injunction against state court suits.   (*Id.* at 11:4-5.)  But Movants were ***not*** parties to the LOLA action when this Court lifted the injunction against state court suits, so their reliance on *Bella Vita* and *Odeco* is misplaced.

None of the parties with a putative indemnity-and-contribution claim in *Bella Vista* or *Odeco* had to set aside a default or request leave to file a late claim.  The situation here is very different.  This Court set July 1, 2020, as the deadline for all claims arising out of the fire (*ECF No. 15*), and on August 5, 2020,  took the defaults of all those who had not complied.  (*ECF No. 157.*)  At that point, neither Petitioners nor Counter-Claimants had any reasonable grounds for believing Movants were involved in the case.  As the Honorable Carolyn Kuhl decided when she overruled Movants' Demurrers to Counter-Claimants' state court Complaint, "this court cannot conclude, as a matter of law, that Plaintiffs could have reasonably discovered before early 2021 that [the Doe] Defendants' products were a cause of the fire." (*Exhibit 4* at 6.)[3]  Movants' attempts to parlay *Bella Vista* and *Odeco* into an excuse for disrupting the State Court Action make no mention of that conclusion.

But *Bella Vista* and *Odeco* are inapplicable.  It was not the claimants in those cases who insisted on proceeding in admiralty – they had no right to do so – it was the petitioners. The instant Petitioners wish to keep the admiralty stay in place.  As the Ninth Circuit explained in *Williams Sports Rentals, Inc. v. Willis*, 90 F.4th 1032 (9th Cir. 2024), LOLA was designed to protect only vessel owners:

[I]t provides for an injunction whereby 'all claims and proceedings

---

[3]  The United States Attorneys' Office for the Central District of California ("DOJ") prevented Counter-Claimants from discovering Movants' role in the *Conception* fire when it sequestered all the electronic devices it salvaged from the wreck until the criminal prosecution of *Conception's* captain, Jerry Boylan, was complete. (*Exhibit 4* at 2-3 (citing MC at Pars 121-133).)  Boylan was not convicted until November 6, 2023, and Counter-Claimants' were not allowed to inspect any of those sequestered electronic devices until January 3, 2024. (*Id.* (citing FAMC, Pars. 135-136).)

*against the owner* related to the matter in question shall cease.' 46 U.S.C. § 30529(c) (emphasis added); see also Fed. R. Civ. P. Supp. R. F(3) ('On application of the plaintiff the court shall enjoin the further prosecution of any action or proceeding *against the plaintiff or the plaintiff's property* with respect to any claim subject to limitation in the action.' (emphasis added)). Thus, the Limitation Act authorizes an injunction only of proceedings 'against the owner[.]'

*Id.* at 1040 (emphasis by the court). "The statute defines 'owner' to 'include a charterer that mans, supplies, and navigates a vessel at the charterer's own expense or by the charterer's own procurement.'" *Id.* (quoting 46 U.S.C. § 30501(2)). Neither that definition nor the right to enjoin state court suits extends to entities like our Movants.

It is thus difficult to understand why those Movants will not accede to the protective Stipulation. They cannot avoid or even delay the state court claims *Conception's* victims brought against them. In *Barracuda Tanker Corporation, supra*, for example, the owner of the *Torrey Canyon* petitioned the Southern District of New York for LOLA relief after that vessel spilled crude oil into the Atlantic. 409 F.2d at 1013-1014. When that court issued an injunction prohibiting actions at law not only against the *Torrey Canyon's* owner but also against her time charterer, Union Oil, the spill's victims moved to strike the "portion enjoining independent proceedings against Union, on the ground that Union was neither a 'charterer' nor an 'owner' within the meaning of the Limitation Act." *Id.* at 1014. The Southern District denied their motion, but the Second Circuit reversed, admonishing that "it is hard to see how it would foster the purposes of the limitation of liability statutes to allow Union, only incidentally in the shipping industry through Barracuda, to delay prosecution of claims not covered by the statutes." *Id.* at 1015. It is harder to see how those purposes would be fostered by letting Movants revive the instant

proceedings and delay the State Court Action.  Such a result would only duplicate proceedings, complicate discovery, increase costs, and offend Rule 1.

> In granting the Stipulation allowing Counter-Claimants to pursue their state court claims against Petitioners as an exception to the monition injunction, the Court agreed to a process whereby Counter-Claimants' claims could be litigated in a consolidated proceeding in state court prior to returning to this Court to finally adjudicate the LOLA issues. Permitting MENA and other potential claimants to proceed without the protections afforded to Petitioners by the stipulated conditions would involve undoing the four years the Counter-Claimants have spent litigating on not just their claims against Petitioners in state court in a manner consistent with the savings to suitors clause and their right to a jury trial, but also their state law claims against MENA and the other defendants named in the operative complaint in the state court action.

*ECF No. 199* at 4.

### C. Movants Have No Good Cause at This Juncture for Filing Claims for Indemnity and Contribution That Are Not Justiciable

Our opponents' Motion for leave to set aside the Default begs the question: why now?  "It is generally held that a cause of action for indemnity based on tort is separate and distinct from a cause of action for the underlying tort; the indemnity cause of action accrues not when the tort is committed, but when the underlying claim, a judgment on that claim, or a settlement of that claim is paid or discharged." *In re Complaint of American Export Lines, Inc.*, 568 F. Supp. 956, 962 (S. D. N. Y. 1983).  The same is true of contribution claims.  *Virginia Int'l Terminals, Inc. v. Ceres Marine Terminals, Inc.*, 879 F. Supp. 31, 33 (E. D. Va. 1995).  It follows that "any limitations period in a cause of action for indemnity or contribution does not begin to run until judgment against defendant has been entered or payment of the primary liability payment has been made." *ITT Rayonier, Inc. v. Southeastern  Mar.*

12

*Co.*, 620 F.2d 512, 515 (5th Cir. 1980)).

In *Star & Crescent Boat Co. Inc. v. Sunsplash Marina LLC*, 549 F.Supp.3d 1145 (S. D. Cal. 2021), a tour boat owner filed a LOLA action after one of its passengers was injured. *Id.* at 1152. When that owner tried to allege a claim for indemnity and contribution against the vessel's builders, those builders moved to dismiss it, under Fed. R. Civ. P. 12(b)(2), on the ground *inter alia* that "the statute of limitations for Plaintiff's indemnity action against the Moving Defendants does not start to run until Plaintiff is found liable to the Claimant for her injuries." *Id.* at 1169. As the Southern District of California explained when it granted that motion:

> Article III of the United States Constitution limits the subject-matter jurisdiction of federal courts to justiciable 'cases' and 'controversies.' U.S. Const. Art., III, § 2. The United States Supreme Court has held that for a case to meet the justiciability requirement, a plaintiff must show (1) standing; (2) that the case is ripe; (3) the case is not moot; and (4) the case does not involve a political question. *Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006). For a case to qualify as ripe, it 'must not be dependent on 'contingent future events that may not occur as anticipated or indeed may not occur at all.'" *Trump v. New York*, 141 S. Ct. 530, 535 (2020) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). This is because the role of federal courts 'is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution.' *Skyline Wesleyan Church v. California Dep't of Managed Health Care*, 968 F.3d 738, 746 (9th Cir. 2020).

*Id.* at 1169 n.14.

The instant Motion seeks an advisory opinion; the claims it requests leave to

file will not become justiciable unless some or all Movants are found liable for the products claims Counter-Claimants' brought in state court. *Id.* This Court cannot remove that contingency – it can neither stay nor decide those products claims. *Williams,* 90 F.4th at 1040. Movants' assertion that the foreign Doe Defendants Counter-Claimants are trying to serve through the Hague Convention might have similarly unripe indemnity-and-contribution claims does not alter the case. Neither does *Bella Vista* or *Odeco*. The parties in those cases never raised the issue of justiciability, so the Fifth and Ninth Circuits never addressed it.

> Prior precedent that does not 'squarely address' a particular issue does not bind later panels on the question. *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993). As we have repeatedly stated, 'questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.' *United States v. Ped*, 943 F.3d 427, 434 (9th Cir. 2019) (simplified). Thus, cases are 'not precedential for propositions not considered,' *United States v. Pepe*, 895 F.3d 679, 688 (9th Cir. 2018), or for matters that are 'simply assumed,' *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 842 n.5 (9th Cir. 2020). Indeed, if a prior case does not 'raise or consider the implications' of a legal argument, it does 'not constrain our analysis.' *United States v. Cassel,* 408 F.3d 622, 633 n.9 (9th Cir. 2005).

*United States v. Kirilyuk*, 29 F.4th 1128, 1134 (9th Cir. 2022). Movants' claims are not justiciable, and nothing in *Bella Vista* or *Odeco* suggests otherwise.

### D. Movants Seek Only to Disrupt, Delay, and Undo Our Long-Running State Court Case

As the undersigned advised opposing counsel: "[T]he LOLA Counter Claimants [] will not oppose your motion provided you join the protective stipulation the parties signed back in 2021." (*Exhibit 1* at 9.) After Movants

14

declined that overture, we offered to "accede to the filing of your derivative cross claims if your clients will agree, in turn, to leave *ECF No. 179* in place[.]"  (*Id.* at 2.) Movants rejected that offer too.  (*Id.* at 1.)  It is impossible to understand why they would do that unless they wished to disrupt our State Court Action.

Movants insist that disrupting that suit will prejudice no one because "no trial date has been set" and the "action has not advanced beyond the pleadings stage." (*ECF No. 203-1* at 13:26-28, 15:9-10, 16:8-9, 18:13-17 and 20:8-12 *Id.* at 9:2-3 and 19:18-22).  Movants are mistaken.  "In granting the Stipulation allowing Counter-Claimants to pursue their state court claims against Petitioners as an exception to the monition injunction, the Court agreed to a process whereby Counter-Claimants' claims could be litigated in a consolidated proceeding in state court prior to returning to this Court to finally adjudicate the LOLA issues." (*ECF No. 199* at 4.) If that State Court Action does not have a trial date, it is because it has been deemed "complex."   Complex cases require "exceptional judicial management to avoid placing unnecessary burdens on the court or the litigants and to expedite the case, keep costs reasonable, and promote effective decision making by the court, the parties, and counsel." Cal. R. Ct. 3.400(a). It is well settled "that courts have the authority to take whatever exceptional management actions are necessary to accomplish that result." *Volkswagen of Am. v. Superior Court*, 94 Cal. App. 4th 695, 704-705 (2001).   Judge Kuhl has been exercising such management since March of 2021.  She has: denied Defendants' June 15, 2021 Motion for Relief from Paying Complex Fees, (*Exhibit 9.*); denied Defendant Bader's July 12, 2023 Motion for Summary Judgment (*Exhibit 8.*); granted Counter-Claimants' July 17, 2023 Motion to Compel the Production of Subpoenaed Documents, (*Exhibit 7.*); granted MENA's July 17, 2023 Motion to Quash Service, (*Exhibit 6.*); granted Defendant Alibaba Group's November 4, 2024 Motion for Summary Judgment, (*Exhibit 5.*); overruled Defendant Amazon's March 18, 2025 Demurrer (*Exhibit 4.*); granted the

Doe Defendants' April 22, 2025 Motion to Strike the Market-Share Allegation from the FAMC, (*Exhibit 3.*); overruled MENA's April 22, 2025 Demurrer, (*Exhibit* 10.); and overruled Apple's May 12, 2025 Demurrer. (*Exhibit 2.*)

But the State Court Action has progressed well beyond the pleading stage. The parties have: deposed fourteen witnesses, (*Exhibit 13* at 1.); served and responded to seventeen Sets of Production Requests (*id.* at 4-19.); exchanged and answered fifteen Sets of Admission Requests (*id.*); and sent and responded to fifteen sets of Form Interrogatories and thirteen sets of Special Interrogatories. (*Id.*) Counter-Claimants have likewise prepared thirty-four verified Fact Sheets (*id.* at Par. 2), and served twenty-three discovery subpoenas. (*Id.* at 20-23.) Movant's assertion that discovery has been "stayed" (*ECF No. 203-1* at 20:13-15) is false. While Judge Kuhl paused discovery involving Movants until the parties complete their joint inspection of the sequestered electronic equipment this Fall (*Exhibit 14* at 2-4.), she is permitting Counter-Claimants to proceed with whatever discovery they need to oppose Langklide's pending Motion for Summary Judgment. (*Id.*)

The Docket for the State Court Action lists 533 filings to date (*Exhibit 11*), and that Action's Case Anywhere Docket records the service of 2,484 case-related documents. (*Exhibit 12.*) Permitting "a resumption of the proceedings here" would thus "involve undoing the four years the Counter-Claimants have spent litigating not just their claims against Petitioners in state court in a manner consistent with the savings to suitors clause and their right to a jury trial, but also their state law claims against MENA and the other defendants named in the operative complaint in the state court action." (*ECF No. 199* at 4.) Such a result would impact not just Petitioners and Counter-Claimants but also the original State Court Defendants (none of whom sought leave to file what everyone other than Movants recognizes as unripe claims). Movants try to downplay such havoc by arguing that:

'To be prejudicial, the setting aside of a [default] judgment must result

in greater harm than simply delaying resolution of the case.' 'Only tangible harm, such as the loss of evidence, complication of discovery, or the risk of fraud, will support the denial of a motion to set aside the entry of default.' 'A party is not prejudiced if forced only to litigate the merits of his case.'

(*ECF No. 203-1* at 18:7-12 (quoting *In re Williams Sports Rentals, Inc.*, 2023 U.S. Dist. LEXIS 81992, *8, 2023 WL 3344092 (E.D. Cal. 2023) (**citation omitted**).  But that argument is unavailing.  Quite apart from the facts that reviving the instant LOLA action would complicate discovery, duplicate proceedings, increase costs, and offend Rule 1, the district court's decisions in *In re Williams Sports Rentals,* were repeatedly reversed by the Ninth Circuit.  See *Willis*, 90 F.4th at 1036-1037; *Williams Sports Rentals Inc. v. Willis*, 786 Fed. Appx. 105, 106 (9 Cir. 2019) (*per curium*); *In re Williams Sports Rentals, Inc.*, 770 F. App'x 391, 392 (9th Cir. 2019) (*per curiam*).  What is more, a review of the citation Movants omitted from the *Willis* decision they quoted – *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001) – reveals that it did not arise in admiralty or Rule F(4) but involved an "intra-family dispute over the proceeds of a $50,000 life insurance policy." *Id.* at 693.  Unlike the instant Movants, who are trying to assert claims that are not yet ripe, the party who was moving to set aside the default in *Knoebber* faced the irretrievable loss of a justiciable claim.  244 F.3d at 694.  Likening that case to this one is like comparing apples to three o'clock in the afternoon.

Our opponents should not be permitted to disrupt the stipulated process this Court approved on January 28, 2021.  (*ECF No. 179.*)  Nor should they be permitted to undo four-and-a-half years of state court litigation.

1    **I.    CONCLUSION**

2    WHEREFORE the Court should deny the Motion at bar, without

3    prejudice, until Movants either accede to the protective Stipulation (*ECF No. 177*),

4    or come to possess claims that are ripe for determination.

5

6    Dated:  October 1, 2025    Respectfully submitted,

7    **MCGUINN HILLSMAN AND PALEFSKY**
     */s/John R. Hillsman*

8    John R. Hillsman
     jrhillsman@mhpsf.com

9    220 Jackson Street, Suite 350

10   San Francisco, CA 94111
     *Counsel for: Victoria Ellen Moore, Christine*

11   *Dignam, Jasmine Lord, Yuka Hatashi Merritt,*
     *Viikram Singh, and Susana Solano Rosas.*

12

13   **NELSON & FRAENKEL, LLP**

14   */s/Gretchen M. Nelson*

15   Gretchen M. Nelson
     gnelson@nflawfirm.com

16   601 South Figueroa Street, Suite 2050

17   Los Angeles, CA 90017
     *Counsel for: Cheng Leng Tan, Estate of Wei*

18   *Tan, Chik Ping Yap, Sejay Tan, Yadira*
     *Alvarez, Estate of Berenice Felipe, Nina*

19   *Huttegger, Julia Ahopelto, C.A. (a minor),*

20   *Jean Anne Allen, Estate of Carol Diana*
     *Adamic, Estate of Steven John Salika, Estate*

21   *of Tia Nicole Adamic Salika, Shirley Salika,*

22   *James Adamic.*

23   **SALTZ MONGELUZZI AND BENDESKY**

24   **PC**
     */s/ Ernest D. DiSandro, Jr.*

25   Jeffrey P Goodman (Pro Hac Vice)

26   jgoodman@smbb.com

27   Ernest D. DiSandro, Jr. (Pro Hac Vice)

                                    18
28

ddisandro@smbb.com
1650 Market Street 52nd Floor
Philadelphia, PA 19103

**PANISH SHEA AND BOYLE LLP**
*/s/Robert Samuel Glassman*
Robert Samuel Glassman
11111 Santa Monica Boulevard Suite 700
Los Angeles, CA 90025
glassman@panish.law
*Counsel for: Shruti Deopuraji, Robert Kurtz, Cherie McDonough, Kaustubh Nirmal, Gregory Krashenny, Seema Sharma, Cherie McDonough, Anthony Beitzinger, Henry Garcia, Margaret Strom, Eric Baltz, Atlee Fritz.*

**KREINDLER & KREINDLER NELSON & FRAENKEL LLP**
*/s/Kevin Mahoney*
Kevin J. Mahoney (Pro Hac Vice)
kmahoney@kreindler.com
485 Lexington Avenue, 28th Floor
New York, NY 1001
*Attorneys for: Nina Hutteger*

**GALINE FRYE FITTING AND FRANGOS**
*/s/Ilya Demetrios Frangos*
Ilya Demetrios Frangos
ifrangos@gff-law.com
411 Borel Avenue Suite 500
San Mateo, CA 94402
*Counsel for: Richard X. Liu, Estate of Xiang Lin.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FIORE ACHERMANN ALC**
*/s/Jennifer L Fiore*
Jennifer L Fiore
jennifer@thefafirm.com
Sophia M Acherman
sophia@thefafirm.com
340 Pine Street Suite 503
San Francisco, CA 94104
*Counsel for: Ariel Takvam, Kenneth Takvam,*
*Mary R. Takvam, Mark Adamic, Angelika*
*Adamic.*

**WALKUP MELODIA KELLY WECHT**
**AND SCHOENBERGER**
*/s/Matthew D. Davis*
Matthew D. Davis
mdavis@walkuplawoffice.com
650 California Street, 26th Floor
San Francisco, CA 94108
*Counsel for: Christina Quitasol, Katie*
*Osborne, Olga Faynshteyn, Sarma Williams,*
*Nancy Fiedler, Matthew Guiney.*

**LAW OFFICE OF W RUSSELL FIELDS**
*/s/Aurelio Edward Fields*
Aurelio Edward Fields
ed@russfieldslaw.com
1792 Tribute Road Suite 400
Sacramento, CA 95815
*Counsel for: Dominic Micael Selga, Estate of*
*Fernisa June Sison, Nisa Shinagawa.*

**ARNOLD AND ITKIN LLP**
*/s/Cory Itkin*
Cory Itkin
citkin@arnolditkin.com
Roland T Christensen
6009 Memorial Drive
Houston, TX 77007
*Counsel for: Ryan Sims*

20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TODD M. ABBOTT, ESQ.**
_/s/ Todd M. Abbott_
Todd M. Abbott
tmabbottlaw@gmail.com
2127 Olympic Parkway, Suite 1006, No. 348
Chula Vista, California 91915
_Counsel for: Daniel Poh-Hock Chua; Estate of Kristen Findstad._

21

# FILER'S ATTESTATION

The filing attorney attests that the filing attorney has obtained permission regarding the filing of this document from the signatories of this document. All parties authorize the filing attorney to affix their CM/ECF electronic signatures to this document.

Dated: October 1, 2025                                    **McGUINN, HILLSMAN & PALEFSKY**

                                                    By:  */s/John R. Hillsman*

                                                    *Counsel for: Victoria Ellen Moore, Christine Dignam, Jasmine Lord, Yuka Hatashi Merritt, Viikram Singh, and Susana Solano Rosas.*

RESPONDENTS' & COUNTER-CLAIMANTS' JT. MEM. IN RESPONSE TO OCA'S, MENA'S, AND THE OTHER DOE DEFENDANTS' MOTION TO SET ASIDE CLERK'S ENTRY OF DEFAULT
CASE NO.:2:19-cv-07693 FLA (MRWx)

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel of record certifies that this brief contains 6,997 words, which complies with the word limit of L.R. 11-6.1.

Dated:  October 1, 2025                    **McGUINN, HILLSMAN & PALEFSKY**

By:  */s/John R. Hillsman*

*Counsel for: Victoria Ellen Moore, Christine Dignam, Jasmine Lord, Yuka Hatashi Merritt, Viikram Singh, and Susana Solano Rosas*